**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 08-CV-2412 |
| v. | ) ) | Honorable Judge John W. Darrah |
| LEHMAN BROTHERS HOLDINGS INC., and LEHMAN BROTHERS INC., | ) ) ) ) | Magistrate Judge Keys |
| Defendants. | ) ) ) | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO BIFURCATE PATENT
INVALIDITY AND UNENFORCEABILITY FROM INFRINGEMENT AND DAMAGES**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 1

III.   THE COMPLAINT STATES FOUR COUNTS OF PATENT INFRINGEMENT AND MEETS THE NOTICE PLEADING REQUIREMENTS ...................................... 2

     A.    The Complaint States Four Counts Of Patent Infringement .................................. 2

     B.    The Law Does Not Require Edge To Identify The Infringing Systems And Methods By Name When That Information Is Confidential ............................... 4

IV.   THE COURT SHOULD NOT BIFURCATE THE CASE .......................................... 5

     A.    Assuming There Were Claims And Defenses To Bifurcate, The Law Disfavors Bifurcating Patent Infringement Cases .................................................. 5

     B.    Claim Construction Is Shaped By Issues Of Infringement, Validity, And Even Enforceability, Making Bifurcation Improper .............................................. 6

     C.    Bifurcation Will Not Promote Judicial Economy ................................................. 8

          1.    There Is No Reason To Assume That Lehman Will Prove That The Claims Of The '833 And '629 Patents Are Invalid And Unenforceable ............................................................................................ 8

          2.    Bifurcation Will Not Simplify Discovery ............................................... 12

          3.    Bifurcation Will Discourage Early Resolution Of The Case .................... 13

     D.    Bifurcation Is Unfair And Will Result In Prejudice To Edge ............................. 13

          1.    Bifurcation Will Cause Undue Delay And Increase Expenses ............... 13

          2.    Different Juries Could Prejudice Edge .................................................. 15

V.    CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

Page

## Cases

*Agfa Corp. v. Creo Prods. Inc.*,
    451 F.3d 1366 (Fed. Cir. 2006)..................................................................7, 8

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001)..................................................................7

*Asip v. Nielsen Media Research, Inc.*,
    No. 03 Civ. 5866, 2004 WL 315269 (S.D.N.Y. Feb. 18, 2004) ........................4

*Autry v. Northwest Premium Servs., Inc.*,
    144 F.3d 1037 (7th Cir. 1998) ..................................................................2

*Bell Atlantic Corp. v. Twombly*,
    127 S.Ct. 1955 (2007)..............................................................................2

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*,
    267 F.3d 1370 (Fed. Cir. 2001)..................................................................11

*Brown v. 3M*,
    265 F.3d 1349 (Fed. Cir. 2001)..................................................................7

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
    No. 93 C 4788, 1994 WL 362186 (N.D. Ill. Jul. 11, 1994) ..............................6

*Clipco, Ltd. v. Ignite Design, LLC*,
    No. 04 C 5043, 2005 WL 2861032 (N.D. Ill. Oct. 28, 2005)......................6, 14

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
    418 F.3d 1225 (Fed. Cir. 2005)..................................................................10

*Conley v. Gibson*,
    355 U.S. 41 (1957)..................................................................................2

*Cybor Corp. v. FAS Techs., Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998)..................................................................6

*Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*,
    501 F.3d 1254 (Fed. Cir. 2007)..................................................................7, 9

*Digigan, Inc. v. Ivalidate, Inc.*,
    No. 02 Civ. 420, 2004 WL 203010 (S.D.N.Y. Feb. 3, 2004) ............................4

i

## TABLE OF AUTHORITIES
(continued)

Page

*Elec. Assistance Corp. v. City of New York*,
　362 F. Supp. 755 (S.D.N.Y. 1973).................................................................................12, 14

*Engelhard Minerals & Chems. Corp. v. Anglo-Am. Clays Corp.*,
　212 U.S.P.Q. 668 (M.D. Ga. 1981)....................................................................................14

*Gen. Patent Corp. v. Microcomputer*,
　No. SA CV 97-429-GLT, 1997 WL 1051899 (C.D. Cal. Oct. 20, 1997).........................14

*Gen-Probe, Inc. v. Amoco Corp, Inc.*,
　926 F. Supp. 948 (S.D. Cal. 1996)......................................................................................5

*Graham v. John Deere Co.*,
　383 U.S. 1 (1966)............................................................................................................7, 12

*Hewlett-Packard Co. v. Intergraph Corp.*,
　No. C 03-2517, 2003 WL 23884794 (N.D. Cal. Sept. 6, 2003) .........................................5

*Home & Nature Inc. v. Sherman Specialty Co., Inc.*,
　322 F. Supp. 2d 260 (E.D.N.Y. 2004) ................................................................................4

*Interdigital Tech. Corp. v. OKI America, Inc.*,
　845 F. Supp. 276 (E.D. Pa. 1994) ......................................................................................4

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
　430 F.3d 1377 (Fed. Cir. 2005)...........................................................................................8

*Jackson v. Illinois Bell Tel. Co.*,
　No. 01 C 8001, 2002 WL 1466796 (N.D. Ill. Jul. 8, 2002) ...............................................4

*KSR Int'l Co. v. Teleflex, Inc.*,
　127 S.Ct. 1727 (2007)..............................................................................................2, 7, 9, 14

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
　445 F.3d 1348 (Fed. Cir. 2006)........................................................................................6, 7

*Life Techs., Inc. v. Clontech Labs., Inc.*,
　224 F.3d 1320 (Fed. Cir. 2000)..........................................................................................10

*McZeal v. Sprint Nextel Corp.*,
　501 F.3d 1354 (Fed. Cir. 2007)........................................................................................3, 5

*Molins PLC v. Textron, Inc.*,
　48 F.3d 1172 (Fed. Cir. 1995)...........................................................................................10

-ii-

## TABLE OF AUTHORITIES
(continued)

Page

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005).................................................................6

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*,
203 F.3d 790 (Fed. Cir. 2000)...................................................................3

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004)............................................................7, 8

*Real v. Bunn-O-Matic Corp.*,
195 F.R.D. 618 (N.D. Ill. 2000).................................................................6

*Robotic Vision Sys., Inc. v. View Eng'g, Inc.*,
189 F.3d 1370 (Fed. Cir. 1999).................................................................8

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
927 F.2d 1565 (Fed. Cir. 1991).................................................................7

*Stratoflex, Inc. v. Aeroquip Corp.*,
713 F.2d 1530 (Fed. Cir. 1983)...............................................................14

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
431 F. Supp. 2d 834 (N.D. Ill. 2006) .........................................................6

*Tritec Indus., Inc. v. Top-U.S.A. Corp.*,
295 F.3d 1292 (Fed. Cir. 2002).................................................................7

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
813 F.2d 1207 (Fed. Cir. 1987)...............................................................12

*Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*,
412 F.3d 1319 (Fed. Cir. 2005).................................................................7

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
442 F.3d 1322 (Fed. Cir. 2006).................................................................6

**Statutes**

35 U.S.C. § 1338(a) ...................................................................................3

35 U.S.C. § 101 et seq................................................................................3

35 U.S.C. § 282 .........................................................................................8

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fed. R. Civ. P. 84 ........................................................................................3

Fed. R. Civ. P. Form 18 ...............................................................................2

Fed. R. Civ. P. 1 ..........................................................................................5

Fed. R. Civ. P. 26 .......................................................................................12

Fed. R. Civ. P. 8 ..........................................................................................2

Fed. R. Civ. P. 11 .........................................................................................5

Fed. R. Civ. P. 42(b) ....................................................................................6

## I.     INTRODUCTION.

Defendants' motion should be denied.  First, as to the motion to dismiss, Plaintiffs' complaint states four counts of patent infringement and satisfies the notice pleading requirement.

Second, there is no basis to bifurcate the entire case.  Plaintiffs filed this action, and are entitled to have their infringement claims heard.  Although Lehman has not yet answered, it improperly seeks to gain a substantive advantage through a procedural ploy by attempting to bifurcate its expected counterclaims and have those heard first, in order to avoid any discovery.  There is no support for such a bifurcation, which, in reality, would result in a stay of the action filed by Plaintiffs in favor of proceeding on counterclaims that Lehman has yet to assert.  The overlapping issues in the case should not be split and handled in a piecemeal fashion, and Edge will need discovery from Lehman regardless of bifurcation.  Moreover, Lehman will not prevail in the case; its arguments regarding the prior art and Edge's patents lack merit.  No reason exists to cause unnecessary delay, increase expense for all involved, and deny Edge access to justice.

## II.     BACKGROUND.

This patent infringement suit between Plaintiffs Edge Capture L.L.C. and Edge Specialists, L.L.C. (collectively "Edge") and Defendants Lehman Brothers Holdings Inc. and Lehman Brothers Inc. (collectively "Lehman") involves two patents owned by Edge that cover fully automated trading systems and methods for derivatives trading.  The derivatives trading world operates on a first come, first served basis.  Accordingly, speed is absolutely essential to survival and profitability.  Today, milliseconds can be the difference between a profitable business and bankruptcy.  The technology covered by Edge's patents teach and enable fully automated trading systems and methods that receive real-time market information about derivatives and their underlying securities, make accurate buy-sell decisions, and safely execute trade orders of derivatives and/or their underlying securities within milliseconds.

United States Patent No. 7,177,833 ("the '833 patent") covers automated derivatives trading technology that calculates real-time transaction values for derivatives while United States Patent No. 7,251,629 ("the '629 patent") covers automated derivatives trading technology that uses pre-calculated transaction values stored in a data structure.  The patents underwent rigorous examination before the United States Patent and Trademark Office ("U.S.P.T.O.") – the application that issued as the '833 patent underwent examination for over six years; meanwhile, the application that issued as the '629 patent underwent examination for nearly eight years.  And

although the U.S.P.T.O. issued a notice of allowance for the '629 patent pre-*KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007), the patent issued post-*KSR*.  The notice of allowance was not withdrawn based on the *KSR* decision.

Edge Capture L.L.C. ("Edge Capture") is the assignee of the patents-in-suit and Edge Specialists, L.L.C. ("Edge Specialists") is the exclusive licensee to those patents.  Edge Specialists exercises its rights under the patents by developing proprietary trading software, licensing that software to customers, loading the software on computer systems that enable performance of automated trading in the derivatives market, and maintaining those systems on behalf of their customers.  Edge's proprietary trading software is marked with the patents-in-suit, as Edge is an active participant in the marketplace.

Lehman has engaged and continues to engage in automated trading of derivatives and their underlying securities through internal systems in a manner that infringes one or more claims of the '833 and/or '629 patents.  Lehman's infringing actions have harmed Edge, who seeks both money damages and an injunction.

## III.    THE COMPLAINT STATES FOUR COUNTS OF PATENT INFRINGEMENT AND MEETS THE NOTICE PLEADING REQUIREMENTS.

### A.    The Complaint States Four Counts Of Patent Infringement.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint satisfies this notice pleading rule if it "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  When considering a motion to dismiss, this Court views all facts alleged in the complaint, as well any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff.  *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998).  A complaint is subject to dismissal only if the plaintiff cannot allege enough facts to demonstrate a plausible entitlement to relief.  *See Twombly*, 127 S.Ct. at 1964-68.

In a patent infringement case, Fed. R. Civ. P. Form 18 sets forth a sample complaint that includes only the following elements: (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that the defendant has been infringing the patent "by making, selling, and using [the device] that embod[ies] the patented invention"; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.  The form pleadings contained in the Appendix of Forms are sufficient

under the rules and are intended to "illustrate the simplicity and brevity" of statement which the rules contemplate.  *See* Fed. R. Civ. P. 84; *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007) (citing the relevant form and holding that "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend").[1]  To satisfy the notice pleading requirements for direct patent infringement or indirect patent infringement, a complaint need only plead: (1) an allegation of ownership of the asserted patents; (2) the names of each individual defendant; (3) a citation to the allegedly infringed patent; (4) a description of the manner in which the defendants allegedly infringe; and (5) an identification of the specific sections of the patent law involved.  *See Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).

Edge's complaint provides sufficient notice to Lehman by pleading the following:

(1)     "This Court has jurisdiction over Plaintiff's patent infringement claims (Counts I-IV) under 28 U.S.C. § 1338(a), in that the claims arise under the Acts of Congress relating to patents, 35 U.S.C. § 101 et seq."  (D.E. 1, ¶ 5);

(2)     Edge Capture is the owner of the asserted patents and Edge Specialists is the exclusive licensee to those patents (D.E. 1, ¶¶ 7-12);

(3)     Lehman Brothers Holdings Inc. and Lehman Brothers Inc. are the defendants in the case (D.E. 1, ¶¶ 3-4);

(4)     United States Patent Nos. 7,177,833 and 7,251,629 are the patents that Lehman infringes (D.E. 1, ¶¶ 7-31);

(5)     Lehman infringes the patents-in-suit by entering (directly or through one or more wholly-owned subsidiaries) into derivative transactions on electronic exchanges both in a trading capacity and as an end-user using and/or directing the use of technology to perform automated/algorithmic trading of derivatives and/or underlying securities, and the use of that "technology and methods of automated trading . . . infringe directly or indirectly one or more claims of the '833 patent and/or one or more claims of the '629 patent" (D.E. 1, ¶¶ 16-18); Lehman has made, used, sold, offered to sell, supplied, or caused to be supplied in this judicial district and elsewhere in the United States technology and methods that directly, contributorily, and by inducement infringe one or more claims of the patents-in-suit (D.E. 1, ¶¶ 20-31);

(6)     Lehman received notice of patent infringement with at least the filing and service of the complaint;

(7)     The counts of the complaint arise under the Acts of Congress relating to patents, 35 U.S.C. § 101 et seq. (D.E. 1, ¶ 1);

---

[1]     According to the Federal Circuit, the *Bell Atlantic* decision does not suggest that the decision "changed the pleading requirement of <u>Federal Rule of Civil Procedure 8</u> as articulated in <u>Conley</u>."  *See McZeal*, 501 F.3d at 1357, n. 4. (emphasis in original).

(8)     Plaintiffs are entitled to damages from Lehman, as well as a temporary and permanent injunction (D.E. 1, ¶¶ a-h).

Edge has plead the necessary elements to satisfy the federal notice pleading requirements.

**B.     The Law Does Not Require Edge To Identify The Infringing Systems And Methods By Name When That Information Is Confidential.**

The governing legal standard does not require a plaintiff to identify, by name, specific products in its complaint, so long as such products are sufficiently identified in some manner. *See Interdigital Tech. Corp. v. OKI America, Inc.*, 845 F. Supp. 276, 283 (E.D. Pa. 1994). Applying the limited notice pleading standard, this Court found the following allegation sufficient to satisfy the notice pleading standard: "'[e]ach of the defendants has infringed the patent in suit either directly or through acts of contributory infringement or inducement.'" *Jackson v. Illinois Bell Tel. Co.*, No. 01 C 8001, 2002 WL 1466796, at *2 (N.D. Ill. Jul. 8, 2002). The same complaint also stated merely that the defendant "'provides voice mail systems,'" and "'sells answering machines.'"  *See id.*; *see also Home & Nature Inc. v. Sherman Specialty Co., Inc.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004) (holding that a complaint sufficiently pleaded the manner in which a competitor allegedly infringed patents by stating that the competitor infringed upon its patents by "'importing, causing to be manufactured, selling and/or offering for sale unauthorized tattoo-like jewelry items'"); *Asip v. Nielsen Media Research, Inc.*, No. 03 Civ. 5866, 2004 WL 315269, at *3 (S.D.N.Y. Feb. 18, 2004) (holding that the complaint provided defendant with fair notice of infringement even though the complaint did not identify which of the defendant's television monitoring devices infringed the patent, wherein the complaint specifically stated that defendant "'infringed, induced and/or contributed'" to infringement of the patent by "'importing, making, using and/or selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so'"); *see also Digigan, Inc. v. Ivalidate, Inc.*, No. 02 Civ. 420, 2004 WL 203010, at *4 (S.D.N.Y. Feb. 3, 2004).

Edge's complaint identifies sufficiently the systems and methods that Lehman uses to infringe the patents-in-suit.  The complaint describes the systems and methods by their functions, operations, and effects, as described in bullet point five (5) above under Section III.A.  No system or method names, models, numbers, or other identifiers are alleged because that information, to the extent it exists, is proprietary and kept confidential by Lehman.  Edge cannot walk into a store, for example, and purchase an infringing system.  For these reasons, Lehman's

demand for such information is patently unreasonable. Edge has described the accused systems and methods with sufficient detail to enable Lehman to discern which of its systems and methods are accused of infringement. Edge alleges, for example, that Lehman is a market maker for the Chicago Board Options Exchange and the International Securities Exchange – exchanges where Lehman engages in automated trading of derivatives and/or their underlying securities. (D.E. 1, ¶ 15). Additional specifics about the accused systems and methods "is something to be determined through discovery." *See McZeal*, 501 F.3d at 1357-58.

The case law relied upon by Lehman does not compel a different result. This is not a situation akin to *Hewlett-Packard Co. v. Intergraph Corp.* where defendants produced 150 products that were implemented in over 4,000 publicly available, end-user application products. No. C 03-2517, 2003 WL 23884794, at *1 (N.D. Cal. Sept. 6, 2003). Indeed, unlike in *Hewlett-Packard*, none of Lehman's accused systems are publicly available, much less publicly available in a hundred plus different commercial embodiments. This case is also distinguishable from *Gen-Probe, Inc. v. Amoco Corp, Inc.*, where the complaint alleged in one conclusory sentence that five defendants infringed directly and indirectly two separate patents, identifying the accused products as merely "'products and/or kits.'" 926 F. Supp. 948, 960 (S.D. Cal. 1996). Here, the complaint alleges four separate counts of patent infringement – one for each patent against each defendant – and describes with specificity the infringing systems and methods.

Edge's complaint provides fair notice to Lehman of patent infringement, and the Court should deny Lehman's Motion to Dismiss for Failure to State a Claim. To the extent, however, the Court believes that Edge should plead with more specificity, the Court should grant Edge leave to file an amended complaint in light of the Court's guidance, or allow Edge to engage in limited discovery of Lehman to obtain the necessary information, rather than dismiss Edge's patent infringement claims.

## IV.     THE COURT SHOULD NOT BIFURCATE THE CASE.

### A.     Assuming There Were Claims And Defenses To Bifurcate, The Law Disfavors Bifurcating Patent Infringement Cases.[2]

The Federal Rules of Civil Procedure discourage piecemeal litigation, and instead direct courts to resolve cases in a "just, speedy, and inexpensive" manner. Fed. R. Civ. Proc. 1. It logically follows that bifurcating patent cases, as in other types of cases, is the exception and not

---

[2]     The motion should be denied because there is nothing to bifurcate. Lehman has not answered the Complaint with affirmative defenses or counterclaims under Rule 11 certification.

the rule. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 836 (N.D. Ill. 2006); *see also Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

Under Rule 42(b), a movant advocating for bifurcation must show that judicial economy would be served and that no party would be prejudiced by the bifurcation. *See Trading Tech. Int'l*, 431 F. Supp. 2d at 836-37. This Court weighs prejudice, such as unnecessary delay or additional expense, above other considerations and refuses to grant bifurcation on the basis of judicial economy alone. *See Clipco, Ltd. v. Ignite Design, LLC*, No. 04 C 5043, 2005 WL 2861032, at *3 (N.D. Ill. Oct. 28, 2005). Bifurcation, furthermore, is generally reserved for trial, not the entire case; the majority of Lehman's authority is consistent with this proposition.

Lehman fails to show that bifurcation of the entire case would result in judicial economy and no prejudice. As explained below, bifurcation along the lines that Lehman requests would divide overlapping issues, lead to a longer and more expensive case, remove the incentives for settlement, and prejudice Edge. What Lehman is asking this Court to do is stay Edge's claims in favor of Lehman's not yet filed counterclaims. This is not proper. If bifurcation occurs in the case, it should be limited to trial with infringement going first. *See, e.g., C.R. Bard, Inc. v. M3 Sys., Inc.*, No. 93 C 4788, 1994 WL 362186, at *3 (N.D. Ill. Jul. 11, 1994).

### B.    Claim Construction Is Shaped By Issues Of Infringement, Validity, And Even Enforceability, Making Bifurcation Improper.

A proper infringement analysis involves two essential steps: (1) construction and interpretation of the patent claims, a question of law; and (2) a determination of whether any of the construed claims "read on" the accused product or process, a question of fact. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-56 (Fed. Cir. 1998) (*en banc*). The claims are construed from the perspective of one of ordinary skill in the art in light of the intrinsic evidence (*i.e.*, the claim language, written description, drawings, and prosecution history) and, at times, in light of extrinsic evidence (*e.g.*, dictionaries, treatises, and expert testimony). *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1319 (Fed. Cir. 2005) (*en banc*). It is fundamental to claim construction that knowledge and discussion of the accused systems and methods are necessary to provide the full and proper context for claim construction. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1327 (Fed. Cir. 2006) (noting that failure to supply the court "with any information about the accused products" denies the ability to "assess the accuracy of any infringement or validity determination" and removes "the complete context for accurate claim construction"); *see also Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445

F.3d 1348, 1350 (Fed. Cir. 2006) (explaining that "[w]ithout knowledge of the accused products, this court cannot assess the accuracy of the infringement judgment under review and lacks a proper context for an accurate claim construction").  This is because the accused products and processes often define and narrow the claim construction disputes between the parties, focusing the claim construction issues on only those limitations that are material to resolution of the infringement dispute.

Issues relating to validity also impact claim construction.  In the context of anticipation, it is the claims that must be anticipated.  *Tritec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1294 (Fed. Cir. 2002).  To anticipate, there must be no difference between the claimed invention and the prior art, as viewed by a person of ordinary skill in the art.  *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991).  The first step in any invalidity analysis is to construe the claims.  *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004).  The trier of fact then must compare the prior art against the properly construed claims to determine if each and every limitation is in the prior art.  *See Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001).  The claims must be interpreted for purposes of both validity and infringement.  *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).  Like infringement, the prior art may define and narrow the claim construction disputes to those limitations that are material to resolving anticipation issues.  It is further black-letter law that that which infringes if later anticipates if earlier.  *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (citations omitted).  Put simply, issues of infringement and anticipation overlap and should not be considered separately.

Claim construction is also relevant to an obviousness inquiry.  Obviousness is a question of law based on underlying questions of fact.  *Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).  The obviousness inquiry involves consideration of: (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) objective indicia of non-obviousness.  *KSR*, 127 S.Ct. at 1729-1731; *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).  The third element of this four-part test requires proper construction of the patent claims at issue.  Thus, issues surrounding obviousness and the prior art can further shape claim construction issues in the case.

Even issues relating to inequitable conduct can turn on claim construction.  *See, e.g., Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1375 (Fed. Cir. 2006) ("To reach inequitable

conduct, the trial court necessarily construed the claims.").

The claim construction issues in this case should be shaped and decided only once, which necessarily involves full consideration of infringement and validity disputes, as well as enforceability issues. It is therefore not logical, nor helpful, to bifurcate the case to divide the issues of validity and enforceability from the issues of infringement, as Lehman urges. To do so invites revisiting claim construction findings or considering new claim construction issues in the second phase of the case. The Court and the parties may be forced to commit additional time and expense to a second *Markman* proceeding at the trial level and to a second appeal of claim construction issues to the Federal Circuit. In addition, Lehman might try to take a second bite at the apple in the second phase by pursuing additional invalidity arguments against the presently challenged claims or against claims that presently stand unchallenged, as well as by advancing new enforceability arguments. It is, therefore, in everyone's interest to consider, advance, argue, and resolve all of the claim construction issues in the case simultaneously.

**C.    Bifurcation Will Not Promote Judicial Economy.**

**1.    There Is No Reason To Assume That Lehman Will Prove That The Claims Of The '833 And '629 Patents Are Invalid And Unenforceable.**

The patents are presumed valid and enforceable, and Lehman carries the high burden of proving by clear and convincing evidence that the opposite is true. 35 U.S.C. § 282; *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999). In contravention to the law, however, Lehman urges this Court to presume that certain patent claims are invalid on mere allegations of purported prior art and sweeping conclusions of invalidity, without satisfying — or even presenting the required analysis demanded by — the law governing prior art, anticipation, and obviousness. In a similar fashion, Lehman also asks this Court to presume that the patents were procured by fraud on bare allegations that the Applicants intended to deceive the U.S.P.T.O., again without satisfying the legal standards governing inequitable conduct.

As an initial matter, Lehman does not even attempt to advance a claim construction analysis, which is the first step in any invalidity analysis. *See Power Mosfet Techs.*, 378 F.3d at 1406. Nor does Lehman present a detailed analysis explaining how each limitation of each claim in the patents-in-suit is disclosed in the purported prior art. *See IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1381 (Fed. Cir. 2005). Lehman further fails to present the requisite analysis under each of the four factors governing an obviousness inquiry, such as defining a person of ordinary skill in the art or discerning the applicable level of ordinary skill in

the art. *See KSR*, 127 S.Ct. at 1741; *see also Daiichi Sankyo,* 501 F.3d at 1256-59.

While the parties will likely enlist the aid of experts to analyze the inventions and prior art from the perspective of one of ordinary skill in the art, a preliminary review of the purported prior art cited by Lehman demonstrates that the art, even assuming that it qualifies as prior art, is fundamentally different from the inventions claimed in Edge's patents. For example:

- **STRIP** purports to disclose a trading system that is designed to be *slow*: "For our experiment, it is clear that the gains due to increasing the delay window seem to taper off beyond 3 seconds. Since many stock market applications can accept delays in this range, the ideal delay window for our application is between 2 and 3 seconds." *See* Def. Ex. 8 (D.E. 20-10) at 17. In addition, Lehman has failed to supply a claim chart alleging that the purported prior art renders invalid claims 2-26, 28-35, 37-46 of the '629 patent or claims 2-23, 25-33, 35-39 of the '833 patent.

- **Nimble/Alotta** purports to disclose a system that supported open outcry trading (traders shouting their orders on the floor). In addition, Lehman has failed to supply a claim chart alleging that the purported prior art alone or in combination renders invalid claims 1-26, 28-35, 37-46 of the '629 patent or claims 1-23, 25-33, and 35-39 of the '833 patent.

- **Swiss SWX** is not an automated system. Human traders decide what to trade, and at what price to trade: "Black would like to cover a short position of 200 S Holding in case the price starts to rise. In order to avoid having to keep looking at the inside price of S Holding, he enters an *On Stop Order* with a *Trigger price* of 503.00." Def. Ex. 18 (D.E. 21-10) at 2. In addition, Lehman has failed to supply a claim chart alleging that the claimed inventions in the '833 patent "read on" or are otherwise rendered invalid by Swiss SWX. Lehman also has failed to supply a claim chart alleging that the purported prior art renders invalid claims 1-26, 28-35, 37-46 of the '629 patent.

- **Kosaka** does not mention derivatives, nor is the disclosed system automated. Lehman has failed to even make an attempt to show that this reference is analogous, non-cumulative, or renders invalid any of the claimed inventions in the '833 patent or the '629 patent by claim chart or other manner. And contrary to Lehman's contentions, "look-up tables" alone were not the novel point of invention, and Hartheimer (U.S. Patent No. 5,258,908), a reference cited by the examiner, disclosed "look-up" tables. *See* Def. Ex. 3 (D.E. 21-5) at 4.

- **Pang** was before the U.S.P.T.O during the prosecution of both of the patents-in-suit and is cited on the face of the patents as a considered reference. In addition, Lehman has failed to supply a claim chart alleging that the purported prior art alone or in combination renders invalid claims 1-26, 28-35, and 37-46 of the '629 patent or claims 2-23, 25-33, and 35-39 of the '833 patent.

- **Hull Group** states that it used an "automated equity [stocks] trading system." Def. Ex. 26 (D.E. 21-28) at 42. There is no evidence that the Hull Group had automated *derivatives* trading capability. Indeed, Lehman's single citation in its brief relates to stocks only. *See* Defendants' Brief (D.E. 21) at 12. In addition, Lehman has failed to

9

even make an attempt to show that the reference is analogous, non-cumulative, or renders invalid any of the claimed inventions in the '833 patent or the '629 patent by claim chart or other manner.

Lehman's charts, where they purport to present an element-by-element comparison between the claims and the prior art, furthermore, merely raise disputed issues, such as whether the references qualify as prior art, the scope and content of the alleged prior art, claim construction, and whether one of ordinary skill would have combined the references in the manner claimed.

Moreover, the majority of the claims stand unchallenged, and it is well settled that liability may be established by showing that a single valid claim is infringed (independent or dependent). *See, e.g., CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1236 (Fed. Cir. 2005). Thus, even assuming *arguendo* that Lehman's presented arguments have merit — and they do not — it would be erroneous to conclude that Lehman will avoid liability in this case.

It is also erroneous to assume, much less conclude, that the patents-in-suit are unenforceable, as Lehman argues. For inequitable conduct to attach, there must be an affirmative misrepresentation of a material fact, a failure to disclose material information, or a submission of false material information, with an intent to deceive or mislead the Patent Office. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). Each element must be proved separately by clear and convincing evidence. *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1324 (Fed. Cir. 2000).

Lehman's purported four grounds of inequitable conduct fall well short of satisfying the clear and convincing evidence standard and lack support in the record. First, with respect to inventorship, Mr. Marynowski, Mr. Voinescu, and Mr. Puscasu each represented that he is an inventor of the patents-in-suit, and the correction made during prosecution of the patents to add Mr. O'Donnell as a named inventor to the patents does not intimate an intent to deceive the U.S.P.T.O. In fact, it shows the opposite — that the Applicants acted with candor before the U.S.P.T.O. and took measures to ensure that the invention records were complete and accurate.

Second, Lehman's allegation that the Applicants committed inequitable conduct when prior art disclosed during the prosecution of the '833 patent went undisclosed during the prosecution of the '629 patent lingers unsupported and is conclusory. Lehman does not show that any such reference was non-cumulative of prior art already before the examiner or was material to patentability of the '629 patent claims. (For example, prior art, such as Hartheimer, disclosed "look-up" tables and was already considered by the examiner. *See* Def. Ex. 3 (D.E.

21-5) at 4.)  Nor does Lehman present any evidence of an intent to deceive.[3]

Third, with respect to the Joubert and Rogers article, Lehman mischaracterizes the events and discussions that occurred between the Applicants and the examiner to create its inequitable conduct argument out of thin air.  Lehman contends that the Applicants withheld the Joubert article after the examiner "specifically requested it" and after making a promise to "submit the article"; then, according to Lehman, Applicants made a misrepresentation regarding its submission.  Not so.  A different discussion took place:

> The Examiner stated that he was considering U.S. Patent Nos. 6,317,728, 6,236,321, and 5,884,286, and an article by Joubert and Rogers, which were not of record in the application.  The Examiner stated that he did not have a copy of the Joubert and Rogers article.  Applicants note that the Examiner has not cited these references in connection with the application.  It appears that upon further consideration, the Examiner did not consider these references to be relevant.  In any event, Applicants cite these references in an Information Disclosure Statement filed herewith.

Def. Ex. 21 (D.E. 21-23) at 10-11.[4]

Thus, contrary to Lehman's fanciful allegations, no promise was made to find and submit the article.  The Applicants further excluded the Joubert article from the above discussion by noting that the "Examiner stated that he did not have a copy of [it]."  The record is utterly devoid of any request that the Applicants find and submit a copy of the article.  In addition, the case Lehman relies on, *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1382-85 (Fed. Cir. 2001), sails wide of the mark.  There, inequitable conduct stemmed from a plethora of facts supporting the conclusion that the prosecuting attorney's refusal to investigate facts surrounding an on-sale bar event by the Applicants, a highly material event, was committed in bad faith.  *Id.* Here, there is no evidence of bad faith.  Lehman has not shown that the Applicants had a copy of the Joubert article, or had knowledge of it other than what the examiner shared with them.  No reason exists to conclude that: (1) the Applicants had knowledge of the content of the article; (2) they knew that the examiner was not going to acquire a copy of the article himself; and (3) they were deliberately avoiding consideration of the article.

Fourth, there is no evidence that Mr. O'Donnell or Mr. Griffith[5] withheld information

---

[3]     In addition, the two patents do not stand and fall together.  They are unrelated, deriving from different patent families.

[4]     Lehman's representation that the above statement is from the '629 patent file wrapper (*see* Defendants' Brief (D.E. 21) at 5-6) is wrong.  It comes from the '833 patent file wrapper.

regarding allegedly material prior public uses (*e.g.,* the Nimble system).  Trading practices and strategies are considered highly proprietary trade secrets in the industry and are generally not disclosed publicly.  The Applicants, furthermore, acknowledged that "[a]ttempts have been made to implement trading systems that automate decision-making so that orders may be submitted with limited trader interaction."  Complaint (D.E. 1) at Ex. B at 1:49-51.  There is no showing that the Applicants withheld material information with the intent to deceive the U.S.P.T.O.

Lehman has failed to show by clear and convincing evidence that all of the claims of the patents-in-suit are invalid or that the patents themselves are unenforceable.  It thus follows that Lehman will not escape liability under its current arguments, and judicial economy is best served by denying bifurcation.  If Lehman is as confident in its arguments as it advertises, it should answer the complaint and move for early summary judgment, rather than seek bifurcation.

### 2.     Bifurcation Will Not Simplify Discovery.

Lehman contends that bifurcation would promote judicial economy because it would eliminate the most costly and litigious discovery in the case — that of Lehman.  Not true.  Even were the case bifurcated to consider only the issues of validity and enforceability first, Edge would still need discovery from Lehman regarding the accused systems and methods.  First, Lehman may choose to rely on its own systems and methods as prior art to attack the validity of the patents-in-suit.  Second, Edge is entitled to rebut Lehman's obviousness arguments by showing that objective indicia of non-obviousness — such as long-felt need, failure of others, copying, and commercial success — exist.  *John Deere Co.*, 383 U.S. at 17.  Edge is entitled to know Lehman's failed attempts to develop the accused systems and methods, its copying of the patented inventions, and any commercial success experienced as a result of utilizing the patented technology.  Much of this information undoubtedly overlaps with discovery relevant to infringement and damages.[6, 7]

---

[5]     Lehman has produced no evidence that Mr. Griffith, who is not an inventor to either patent, was involved in the prosecution of the patent applications.  Lehman's attempt to bootstrap him into the discussion demonstrates the weakness of its arguments.

[6]     Discovery of Lehman on the issues of validity, enforceability and infringement at the same time will also allow Edge to give Lehman more specifics regarding infringement.

[7]     Any concerns regarding trade secrets and proprietary information can be addressed with an adequate protective order.  Fed. R. Civ. Proc. 26.  *See also Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc*., 813 F.2d 1207, 1211 (Fed. Cir. 1987); *Elec. Assistance Corp. v. City of New York*, 362 F. Supp. 755, 758 (S.D.N.Y. 1973) (noting trade secrets do not warrant bifurcation).  This case is no different from the myriad of other patent infringement cases involving trade secrets and proprietary information.

Next, Lehman's analysis ignores the fact that the majority of the discovery will pertain to Lehman's defenses.   Through its arguments, Lehman has made clear that it intends on relying on systems and methods employed by third parties to build its invalidity arguments.  These third parties are likely to be competitors of Lehman and Edge and, with high probability, will resist discovery, as discovery would interfere with business operations and invade trade secrets and proprietary information.  There is no reason to believe that third parties would consider their information less sensitive than Lehman's.  In addition, Lehman could take the parties on a fishing expedition by seeking discovery from any person who might have traded in the market.  Bifurcation will not lead to a more "convenient and efficient" discovery schedule.

Lastly, Lehman's hints that it will make discovery litigious if its motion is denied does not justify bifurcation.  Threats to obstruct discovery should not be rewarded.

### 3.	Bifurcation Will Discourage Early Resolution Of The Case.

The parties would be less inclined to resolve their disputes by settlement if the case is bifurcated.  Were bifurcation to occur, Edge would vigorously defend the validity and enforceability of its patents, and Lehman would have no incentive to consider settlement options until it exhausted all of its invalidity and unenforceability arguments.  Early resolution of the case by the parties would be more likely if Edge were permitted to prosecute its patent infringement claims from the beginning.  Edge suspects that Lehman is zealously advocating for bifurcation of the entire proceeding, not just trial, because it knows that it infringes the patents-in-suit and that the resulting damages are large.  Judicial economy is best served by denying bifurcation of the case, not granting it.

### D.	Bifurcation Is Unfair And Will Result In Prejudice To Edge.

### 1.	Bifurcation Will Cause Undue Delay And Increase Expenses.

Lehman's motion is nothing more than a litigation tactic designed to disadvantage Edge by foisting a *de facto* stay on its claims.  However, Edge is the complainant and its claims should be heard first.  Edge actively participates in the market and seeks damages and an injunction for Lehman's infringing activities.  A delay will prejudice Edge.  Justice delayed is justice denied.

Bifurcation will delay final disposition of the case and cause Edge to incur added expenses.  It should be presumed, as the law requires, that Edge will prevail on the issues of validity and enforceability.  Assuming this occurs, Lehman would undoubtedly argue that it should be allowed to appeal any findings of validity and enforceability to the Federal Circuit

before turning to issues of infringement and damages.  An appeal, however, could delay the proceedings for up to eighteen months.  The parties could find themselves starting over again in two years, conferring about a schedule for discovery and trial for infringement and damages. The Court could have the case on its docket for twice as long, dealing with discovery and trial disputes on two separate occasions.

In addition, the intertwined legal issues of validity and infringement may require visitation of the same witnesses and exhibits twice, increasing the burden and expenses on all. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540-41 (Fed. Cir. 1983).  As the *Stratoflex* court noted, evidence for both issues largely overlaps, necessitating an unwarranted expenditure of time if bifurcation were granted.  *See id.*; *see also Clipco, Ltd.*, 2005 WL 2861032, at *3 (noting that infringement and validity evidence are "intertwined to the extent that many of the same documents and witnesses would be presented at two different trials"); *Elec. Assistance Corp.*, 362 F. Supp. at 757-58.  Courts, recognizing these dilemmas, have preferred trying both validity and infringement together.  *See, e.g.*, *Clipco, Ltd.*, 2005 WL 2861032, at *3.[8]

The concerns expressed in the above cases apply here, as the same witnesses and exhibits may be used in both phases of the case.  The parties may call on the same experts to opine on infringement and validity issues.  The same fact witnesses of Lehman may have to be deposed and called to testify at trial twice to discuss Lehman's systems and methods and commercial success for both purposes of validity, and infringement and damages.  In a similar fashion, persons at Edge may have to present testimony twice on issues relating to priority and validity and later relating to Edge's damages.  Many of the same technical and commercial documents likely will be used in both phases.

Delay also runs the risk that evidence might spoil.  Witnesses may become unavailable or memories might fade.  Evidence from third parties could become inaccessible; third parties could dissolve, change electronic systems, or dispose of their documents and other things under their normal document retention policies.

---

[8]     The cases that Lehman cites to support its bifurcation request are distinguishable.  In *Gen. Patent Corp. v. Microcomputer*, No. SA CV 97-429-GLT, 1997 WL 1051899, at *1-2 (C.D. Cal. Oct. 20, 1997), there were four defendants where infringement was specific to each defendant and the plaintiff did not participate in the relevant market.  And the rationale in *Engelhard Minerals & Chems. Corp. v. Anglo-Am. Clays Corp.*, 212 U.S.P.Q. 668, 668 (M.D. Ga. 1981) does not apply here because, even if bifurcated, Edge will still need discovery from Lehman to explore objective indicia of non-obviousness, a factor recently affirmed by the United States Supreme Court in *KSR*.

### 2.       Different Juries Could Prejudice Edge.

Employing two different juries, which would happen if the Court bifurcates the entire case, could result in unequal treatment of the patents and prejudice Edge.  Under such a scenario, neither jury would have the full context of the case, as they would be denied the opportunity to hear all the facts.  They might view the claims of the patents inconsistently.  This holds true even if both juries are given the same claim constructions.  This danger, however, could easily be averted if the same jury considers both infringement and validity issues.

## V.       CONCLUSION.

For the above reasons, Lehman's motion should be denied in its entirety.

Respectfully submitted,

EDGE CAPTURE L.L.C.
EDGE SPECIALISTS, L.L.C.


Dated: July 1, 2008                    By:     /s/ Christopher J. McGeehan
                                       Ronald J. Schutz (admitted *pro hac* vice)
                                       Munir R. Meghjee (admitted *pro hac* vice)
                                       Sang Young A. Brodie (admitted *pro hac* vice)
                                       Glenna L. Gilbert (ARDC No. 6286244)
                                       ROBINS, KAPLAN, MILLER & CIRESI,
                                       L.L.P.
                                       800 LaSalle Avenue, Suite 2800
                                       Minneapolis, MN 55402
                                       Phone: (612) 349-8500

                                       Patrick G. Burns (ARDC No. 3122589)
                                       Christopher J. McGeehan (ARDC No. 6279619)
                                       GREER, BURNS & CRAIN, LTD.
                                       300 South Wacker Drive, Suite 2500
                                       Chicago, Illinois  60606
                                       Telephone:  (312) 360-0080

                                       *Attorneys for Plaintiffs Edge Capture L.LC. and*
                                       *Edge Specialists, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2008, I caused PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO BIFURCATE PATENT INVALIDITY AND UNENFORCEABILITY FROM INFRINGEMENT AND DAMAGES to be served upon the following counsel for Defendants Lehman Brothers Holdings Inc. and Lehman Brothers Inc. via the CM/ECF system maintained by the Clerk of the U.S. District Court for the Northern District of Illinois:

>    Albert Lee Hogan, III
>    Skadden, Arps, Slate, Meagher & Flom LLP
>    333 West Wacker Drive
>    Chicago, IL  60606
>    ahogan@skadden.com, chdocket@skadden.com

I further certify that I caused a copy of the foregoing documents to be mailed by first class mail, postage paid, to the following non-ECF participants:

>    Jeffrey G. Randall
>    Skadden, Arps, Slate, Meagher & Flom LLP
>    525 University Avenue, Suite 1100
>    Palo Alto, CA  94301
>
>    Allan M. Soobert
>    Skadden, Arps, Slate, Meagher & Flom LLP
>    1440 New York Avenue NW
>    Washington, DC  20005

Dated: July 1, 2008                              /s/ Christopher J. McGeehan

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., )<br><br>Plaintiffs, )<br><br>v. )<br><br>LEHMAN HOLDINGS INC., and LEHMAN INC., )<br><br>Defendants. ) | Civil Action No. 08-CV-2412<br><br>Judge John W. Darrah<br><br>Magistrate Judge Keys<br><br>**JURY TRIAL DEMANDED** |

**APPENDIX OF UNPUBLISHED AUTHORITIES CITED IN PLAINTIFFS'
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO
BIFURCATE PATENT INVALIDITY AND UNENFORCEABILITY FROM
INFRINGEMENT AND DAMAGES**

*Asip v. Nielsen Media Research, Inc.*,
    2004 WL 315269 (S.D.N.Y. Feb. 18, 2004).............................................TAB 1

*Clipco, Ltd. v. Ignite Design, LLC*,
    2005 WL 2861032 (N.D. Ill. Oct. 28, 2005).........................................TAB 2

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
    1994 WL 362186 (N.D. Ill. Jul. 11, 1994)............................................TAB 3

*Digigan, Inc. v. Ivalidate, Inc.*,
    2004 WL 203010 (S.D.N.Y. Feb. 3, 2004) ..........................................TAB 4

*Gen. Patent Corp. v. Microcomputer*,
    1997 WL 1051899 (C.D. Cal. Oct. 20, 1997).......................................TAB 5

*Jackson v. Illinois Bell Tel. Co.*,
    2002 WL 1466796 (N.D. Ill. Jul. 8, 2002)............................................TAB 6

1

# APPENDIX – TAB 1



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))

Page 1

**C**
Asip v. Nielsen Media Research, Inc.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
William F. ASIP and Miklos L. Bartha, Plaintiffs,
v.
NIELSEN MEDIA RESEARCH, INC. and VNU,
Inc., Defendants.
**No. 03 Civ. 5866(SAS).**

Feb. 18, 2004.

**Background:** Patent holder brought infringement action against subsidiary and parent company over patent on system that enabled transmission of channel logs, over non-dedicated telephone lines, chronicling television channels viewed by subscriber.

**Holdings:** On holder's motion to dismiss, the District Court, Scheindlin, J., held that:
(1) patent holder stated claim for infringement;
(2) question of whether parent was liable for subsidiary's actions turned on factual considerations beyond scope of pleadings;
(3) complaint provided subsidiary with fair notice of infringement claims; and
(4) subsidiary's laches argument was premature.

Motion denied.

West Headnotes

**[1] Patents 291 ☞310.1(1)**

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k309 Pleading
       291k310.1 Original Bill
        291k310.1(1) k. In General. Most
Cited Cases
Patent holder stated claim for infringement, on allegations that stated its joint ownership interest in particular patent, named particular defendants, cited patent as basis for action, described means by which defendants allegedly infringed patent, and indicated that its claims were based on defendants' willful acts of direct and indirect infringement. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[2] Patents 291 ☞310.1(1)**

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k309 Pleading
       291k310.1 Original Bill
        291k310.1(1) k. In General. Most
Cited Cases
Patent holder stated infringement claim against parent company, even though parent owned stock in subsidiary for only 69 days before expiration of patent, where complaint otherwise provided parent with fair notice as to claims asserted against it, and question of whether parent was liable for subsidiary's actions turned on factual considerations beyond scope of pleadings, such as degree of control it exercised over subsidiary.

**[3] Patents 291 ☞310.1(5)**

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k309 Pleading
       291k310.1 Original Bill
        291k310.1(5) k. Infringement and
Injury, Loss or Damage. Most Cited Cases
Complaint provided competitor with fair notice of infringement claims, relating to patent on system that enabled transmission of channel logs, over non-dedicated telephone lines, chronicling television channels viewed by subscriber; even though complaint did not identify which of competitor's television monitoring devices infringed upon the patent, complaint specifically stated that competitor "infringed, induced and/or contributed" to infringement of patent by "importing, making, using and/or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))

selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so." Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[4] Patents 291 ☞313**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k313  k.  Dismissal  Before  Hearing.
Most Cited Cases
Competitor's laches argument at motion to dismiss stage was premature, since such relief turned upon whether patent holder unreasonably delayed filing of lawsuit despite having actual or constructive knowledge of competitor's infringing products and whether that delay resulted in material prejudice to competitor, and those inquiries could not be resolved on face of complaint.

**Patents 291 ☞328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2)  k.  Original  Utility.  Most
Cited Cases
4,361,851. Cited.

Robert Rando, Levy & Stopol, LLP, Uniondale, New York, for Plaintiffs.
Lee F. Grossman, Eric P. Martin, Grossman & Flight, LLC, Chicago, Illinois, Steven H. Bazerman, Ramsaran Maharajh Jr., Bazerman & Drangel, PC, New York, New York, for Defendants.

*OPINION AND ORDER*

SCHEINDLIN, J.
*1 William Asip and Miklos Bartha bring this action against VNU, Inc. ("VNU") and Nielsen Media Research ("Nielsen") (collectively "defendants") alleging patent infringement. VNU now moves to dismiss the Complaint for failure to state a claim, and Nielsen moves for a more definite statement under Rule 12(e). For the reasons that follow, both motions are denied.

I. BACKGROUND

Plaintiffs are New York residents and holders of Patent No. 4,361,851 (" '851 Patent").[FN1] Defendants are owners and operators of television audience measurement estimating systems and devices.[FN2] Both defendants conduct business in New York [FN3] and Nielsen is a "division" of VNU.[FN4]

> FN1. Complaint ("Compl.") ¶¶ 1, 2, 9.

> FN2. *See* Plaintiffs' Memorandum of Law in Opposition to VNU's Rule 12(b)(6) Motion ("Pl.12(b)(6) Mem.") at 1; Plaintiffs' Memorandum of Law in Opposition to Nielsen's Rule 12(e) Motion ("Pl.12(e) Mem.") at 1.

> FN3. Compl. ¶¶ 3-5; *see also* VNU's Memorandum of Law in Support of Its Rule 12(b)(6) Motion ("Def.12(b)(6) Mem.") at 2.

> FN4. Compl. ¶ 5.

The '851 patent was issued to plaintiffs on November 30, 1982 for their invention of a system that "automatically monitor[s] the selection of a Program Source made by a Subscriber."[FN5] Specifically, this system enables the transmission (over non-dedicated telephone lines) of channel logs chronicling those channels a subscriber has viewed.[FN6] Plaintiffs envisioned use of this invention with "cable television systems or over-the-air pay television scrambled systems."[FN7] But they also noted that the possible applications of this invention "are not restricted to [those relating to] Pay-TV" and could include deployment in activities such as "[o]pinion polling and preference sampling."[FN8]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 3
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))

FN5.'851 Patent, Ex. 1 to Compl. In considering a motion to dismiss, courts may not consider matters outside the pleadings. *SeeChambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). The complaint includes " 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." ' *Id.* (quoting *International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)); *see also*Fed.R.Civ.P. 10(c). Accordingly, the '851 Patent is treated as part of the Complaint.

FN6.*See*'851 Patent.

FN7.*Id.*

FN8.*Id.*

Plaintiffs allege that defendants have infringed, induced, and/or contributed to the infringement of "at least" Claim One of the '851 Patent.[FN9]Claim One covers:

FN9. Compl. ¶¶ 11, 14. The '851 Patent covers six claims. *See*'851 Patent.

A television-use monitoring device for direct electrical connection to a telephone line, comprising:

(a) coupling means coupled to said television for detecting when said television is actively receiving a predetermined channel and producing, in response thereto a program selection signal indicating the active reception of a particular program selection;

(b) timer means for providing timing information;

(c) transient memory means responsive to said coupling means to store, in response to a first control signal, said program selection signal associated with a particular program whose active reception has been detected;

(d) second memory means responsive to said transi-

ent memory means to receive the output of said transient memory means in response to a second control signal and produce the same at its output in response to a third control signal;

(e) control means responsive to said timer for periodically causing said transient memory means to store any program selection signal present in the system, and reading the contents of said transient memory means, and responsive to said transient memory means to cause said transient memory means to transfer its contents to said second memory means in response to the detection of said program selection at one point in time and a second detection of the same program selection a predetermined period of time thereafter;

(f) interface means, responsive to said control means and said second memory means to encode said program selection signal for transmission; and

**\*2** (g) transmission coupling means, responsive to said interface means, to couple the output of said interface means to conventional telephone lines and transmit said program selection to a central billing facility.[FN10]

FN10.'851 Patent.

Defendants allegedly knew of and intentionally infringed the '851 Patent by "importing, making, using and/or selling products which use and/or encompass [,] store[,] and forward technology with the use of a telephone line for data transmission in the television industries."[FN11]Plaintiffs contend that defendants' unlawful conduct began prior to and continued through the '851 Patent's expiration date in January 2000.[FN12]

FN11. Compl. ¶ 10; *see also*Id. ¶¶ 14-16.

FN12.*Id.* ¶¶ 10-11, 15.

II. APPLICABLE LAW

A. Legal Standard

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

Page 4

1. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " [FN13] "A court's task 'in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " [FN14] Accordingly, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. [FN15]

> FN13.*Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003).

> FN14.*Levitt v. Bear Stearns & Co., Inc.,* 340 F.3d 94, 101 (2d Cir.2003) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998)).

> FN15.*See Chambers,* 282 F.3d at 152;*Levitt,* 340 F.2d at 101.

2. Rule 12(e)

Under Rule 12(e), if a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."[FN16]Rule 8(a) provides that a plaintiff need only plead "a short and plain statement of the claim" that will provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests.[FN17]" '[I]f [a] complaint complies with the liberal pleading requirements of [Rule 8(a) ], then the Rule 12(e) motion should be denied.' " [FN18] Notably, because the purpose of the Rule is to "strike at un-

intelligibility rather than want of detail and ... allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." [FN19]Therefore, "the tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings." [FN20]

> FN16.Fed.R.Civ.P. 12(e).

> FN17.Fed.R.Civ.P. 8(a); *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

> FN18.*Vapac Music Publ'g, Inc. v. Tuff'N'Rumble Mgmt.,* No. 99 Civ. 10656, 2000 WL 1006257, at *6 (S.D.N.Y. July 19, 2000) (quoting *Tom Kelley Studios Inc. v. International Collectors Soc'y Inc.,* No. 97 Civ. 0056, 1997 WL 598461, at *1 (S.D.N.Y. Sept. 25, 1997)).

> FN19.*Markovic v. New York City Sch. Constr. Auth.,* No. 99 Civ. 10339, 2000 WL 1290604, at *3 (S.D.N.Y. Sept.13, 2000) (quotation marks and citation omitted).

> FN20.*Id.,;see also Vapac Music Publ'g,* 2000 WL 1006257, at *6 (noting that Rule 12(e) motions are disfavored).

B. Patent Infringement

To state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself."[FN21]A complaint for patent infringement need only meet the following requirements: "[ (1) allege] ownership of the asserted patent, [ (2) ] name[ ] each individual defendant, [ (3) ] cite[ ] the patent that is allegedly infringed, [ (4) ] describe[ ] the means by which the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

defendants allegedly infringe, and [ (5) ] point[ ] to the specific sections of the patent law invoked."FN22

> FN21.*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000); *accordDigiGAN, Inc. v. iValidate, Inc.,* No. 02 Civ. 0420, 2004 WL 203010, at *4 (S.D.N.Y. Feb.3, 2004).

> FN22.*Phonometrics,* 203 F.3d at 794;*accordDigiGAN,* 2004 WL 203010, at *4.

## III. DISCUSSION FN23

> FN23. As an initial matter, I note plaintiffs' argument that both Rule 12 motions should be rejected because of defendants' failure to abide by my Individual Rules and Procedures. *See* Pl. 12(b)(6) Mem. at 9; Pl. 12(e) Mem. at 7. Because parties are expected to be familiar with these rules, defendants are reminded that the rules are available at this Court's website. *See* Individual Rules and Procedures, http://www.nysd.uscourts.gov/Individual_Practices/Scheindlin.pdf.

> The rules clearly state that, prior to bringing a motion to dismiss, "the parties *must* exchange letters" and "must certify that pre-motion letters were exchanged."*Id.* at 3 (emphasis added)."The parties should attempt to eliminate the need for these motions based on this exchange of letters," while recognizing that leave to amend will be freely granted. *Id.* Defendants' failure to follow these rules has led them to engage in what appears to be unnecessary motion practice. This highlights precisely those consequences that the rule is intended to avoid, *e .g.,* needlessly delayed litigation and wasted judicial resources.

## A. VNU's Rule 12(b)(6) Motion

**\*3** [1][2] The Complaint satisfies the pleading requirements of Rule 8 because it: (1) alleges plaintiffs' joint ownership of the '851 Patent,FN24 (2) names VNU and Nielsen as defendants,FN25 (3) cites the '851 Patent as the basis for the action,FN26 (4) describes the means by which defendants allegedly infringed the '851 Patent,FN27 and (5) indicates that their claims are based on defendants' willful acts of direct and indirect infringement.FN28However, VNU argues that the action against it should be dismissed because it has never "engaged in any of the allegedly infringing activities." FN29Rather, VNU contends that those acts were committed by its subsidiary, Nielsen, which was acquired on October 27, 1999, sixty-nine days prior to the expiration of the '851 patent.FN30 As VNU puts it, "[its] sole relationship with [Nielsen] as relates to this case is this 69 day period during which it owned the stock of [Nielsen] but had no direct involvement in its operations." FN31

> FN24.*See* Compl. ¶ 9.

> FN25.*See* id. ¶¶ 3, 5, 10, 11.

> FN26.*See* id. ¶¶ 9-15.

> FN27.*See* id. ¶¶ 9-11.

> FN28.*See* id. ¶¶ 10-12.Specifically, patent infringement claims are governed by 35 U.S.C. § 271. Direct infringement occurs when a person, without authority, infringes a patent by making, using, offering to sell, or selling any patented invention. *See*35 U.S.C. § 271(a). Indirect infringement occurs when a person induces the infringement of a patent by another or contributes to a patent's infringement through its activities. *See*35 U.S.C. § 271(b)-(c).

> FN29. Def. 12(b)(6) Mem. at 2.

> FN30.*See* id.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

FN31.*Id.* at 2-3 (alternation in original).

VNU has not demonstrated that plaintiffs cannot prove any set of facts in support of their patent infringement claims. *First,* plaintiffs' allegations as pled are sufficient because they provide VNU with fair notice as to the claims asserted against it. As plaintiffs correctly point out, VNU's motion is "merely a statement of its belief that it has not engaged in any direct infringement which is more appropriately stated as a denial in answer to the [Complaint]."[FN32] *Second,* even if plaintiffs' infringement claims against VNU are premised solely on its status as "a holding company" for subsidiary Nielsen, whether VNU is liable for Nielsen's actions turns on factual considerations (*e.g.,* the degree of control that VNU exercised over Nielsen) that are beyond the scope of the pleadings.[FN33] Thus, contrary to VNU's argument that "[t]he timing of the dismissal is irrelevant,"[FN34] the fact that VNU brings this motion at the pleading stage is critical.

FN32. Pl. 12(b)(6) Mem. at 8.

FN33. Not surprisingly VNU submitted a Joint Declaration in an attempt to factually support its arguments. *See* Joint Declaration of Michael E. Elias and David A. Schwartz-Leeper, Ex. A to Def. 12(b)(6) Mem. But for purposes of a motion brought under Rule 12(b)(6), a court cannot consider documents outside of the pleadings. *See Chambers,* 282 F.3d at 152.

FN34. VNU's Reply Memorandum of Law in Further Support of Its Rule 12(b)(6) Motion at 4.

**B. Nielsen's Rule 12(e) Motion**

[3] Nielsen argues that because plaintiffs' " 'bear-bones' [sic] Complaint" does not identify which of Nielsen's television monitoring devices infringe the '851 Patent, the Complaint fails to satisfy Rule 8's pleading requirements.[FN35] But the Com-

plaint specifically states that Nielsen "infringed, induced and/or contributed" to the infringement of the '851 Patent by "importing, making, using and/or selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so to, and including, January 2000."[FN36] These allegations are not "so vague or ambiguous" that Nielsen cannot be "reasonably ... required to frame a responsive pleading" to the Complaint.[FN37] As the Complaint provides fair notice of plaintiffs' patent infringement claims, it comports with the pleading requirements set forth in Rule 8.[FN38]

FN35. Nielsen's Memorandum of Law in Support of Its Rule 12(e) Motion ("Def.12(e) Mem.") at 2.

FN36. Compl. ¶ 11.

FN37. Fed.R.Civ.P. 12(e).

FN38. *See supra* Part III.A. Moreover, Form 16 of the Appendix of Forms to the Federal Rules of Civil Procedure, which provides a sample patent infringement complaint, states simply that "[d]efendant has for a long time past been and still is infringing [plaintiff's] Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court."Courts have found that a complaint providing at least as much information as this sample complaint is sufficient to withstand a Rule 12(e) motion. *See Dome Patent L .P. v. Permeable Techs., Inc.,* 190 F.R.D. 88, 90-91 (W.D.N.Y.1999) (citing *OKI Elec. Indus. Co. v. LG Semicon Co.,* No. 97 Civ. 20310, 1998 WL 101737, at *3-4 (N.D.Cal. Feb.25, 1998), and *Soli-Tech, Inc. v. Halliburton Co.,* No. 97 Civ. 10232, 1993 WL 315358, at *3 (E.D.Mich. Jan.26, 1993)). Plaintiffs' allegations of infringement by "products which use and/or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 7
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

encompass store and forward technology with the use of a telephone line for data transmission in the television industries" are at least as specific as those involving "electric motors embodying the patented invention."Compl. ¶ 11.

[4] Nielsen also contends that the doctrine of laches requires plaintiffs to "specifically identify [Nielsen's] allegedly infringing products."[FN39]In particular, Nielsen argues that plaintiffs' allegations either (1) cover activities that Nielsen has undertaken for the twenty years since the '851 patent was issued and "[b]y definition" the doctrine of laches applies; or (2) Nielsen "must have some new product, or must have modified an old product in a way [ ] that allegedly infringes the '851 Patent" and must identify that product.[FN40]But, at this stage of the proceedings, Neilsen's laches argument is premature. Relief pursuant to the doctrine of laches turns on (1) whether a plaintiff unreasonably delayed the filing of her lawsuit despite having actual or constructive knowledge of the defendant's infringing products and (2) whether that delay resulted in material prejudice to defendant.[FN41]Where these inquiries cannot be resolved on the face of the complaint, they are questions properly reserved for summary judgment, after discovery has concluded. Here, the laches defense cannot be resolved solely from a review of the Complaint.

FN39. Def. 12(e) Mem. at 3.

FN40.*Id.* at 4 (citing *A.C. Aukerman Co. v. R.L. Chaides Contr. Co.,* 960 F.2d 1020 (Fed.Cir.1992) and *Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358 (Fed.Cir.2001). Notably, both cases upon which Nielsen relies involve the application of the doctrine of laches at the summary judgment stage.

FN41.*SeeEcolab,* 264 F.3d at 1371;*A.C. Aukerman Co.,* 960 F.2d at 1032.

## IV. CONCLUSION

*4 For the foregoing reasons, both VNU's motion to dismiss and Nielsen's motion for a more definite statement are denied. The Clerk of the Court is directed to close these motions (numbers 13 and 17 on the docket sheet). A conference is scheduled for February 26, 2004, at 2:45 p.m.

SO ORDERED:

S.D.N.Y.,2004.
Asip v. Nielsen Media Research, Inc.
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 2



Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.))**

**H**
Clipco, Ltd. v. Ignite Design, LLC
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
CLIPCO, LTD. Plaintiff,
v.
IGNITE DESIGN, LLC, Defendant.
**No. 04 C 5043.**

Oct. 28, 2005.

Gregory E. Upchurch, Husch & Eppenberger, LLC,
St. Louis, MO, Kenneth Matthew Abell, Stephen
Novack, Novack & Macey, Chicago, IL, for Plaintiff.
Keith V. Rockey, Kathleen Ann Lyons, Matthew
Joseph Gryzlo, Wallenstein Wagner & Rockey,
Ltd., Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

CONLON, J.
**\*1** Clipco, Ltd. ("Clipco") sues Ignite Design, LLC
("Ignite") for patent infringement pursuant to 35
U.S.C. § 271*et seq.* and breach of a license agree-
ment. The court granted Clipco's summary judg-
ment motion in part finding Ignite's Extreme Tum-
bler Mug infringes claims 2-7, 20, and 21 of
Clipco's United States Patent No. 5,270,909 ("the
'909 patent") entitled "Openable Handle Attach-
ment." *See* Memorandum Opinion and Order, No.
04 C 5043,Dkt. No. 56 (N.D.Ill. Aug. 1, 2005). The
motion was denied in part because a material issue
of fact exists regarding whether Ignite's Extreme
Coffee Press infringes the '909 patent. *Id.* Ignite
moves *in limine* to bar evidence at trial.

## DISCUSSION

Evidence is excluded on a motion *in limine* only if
the evidence is clearly inadmissible for any pur-
pose. *Hawthrone Partners v. AT & T Technologies,*

831 F.Supp. 1398, 1400 (N.D.Ill.1993). Motions *in
limine* are disfavored; admissibility questions
should be ruled upon as they arise at trial. *Id.* Ac-
cordingly, if evidence is not clearly inadmissible,
evidentiary rulings must be deferred until trial to al-
low questions of foundation, relevancy, and preju-
dice to be resolved in context. *Id.* at 1041.Denial of
a motion *in limine* does not indicate evidence con-
templated by the motion will be admitted at trial.
Instead, denial of the motion means the court can-
not or should not determine whether the evidence in
question should be excluded before trial.*United
States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989).

A. Alternative Damages Theory (No. 1)

Ignite argues that Clipco should be prohibited from
presenting an alternative damages theory through
its expert, Mark Hoffman. In response to Ignite's
motion, Clipco withdrew its alternative damages
theory. Accordingly, Ignite's motion *in limine* is
moot.

B. Clipco's Technical Expert (No. 2)

Ignite's second motion *in limine* seeks to limit
Clipco's introduction of infringement evidence
through the expert testimony of Professor Virgil
Flanigan. Ignite states Clipco failed to submit an
expert report on the issue of infringement in com-
pliance with the court's October 22, 2004 discovery
schedule. No. 04 C 5043, Dkt. No. 27.In compli-
ance with the scheduling order, both parties submit-
ted initial expert reports on issues for which it was
their respective burden of proof. Although Clipco
did not file an initial expert report on the issue of
infringement, Ignite filed a rebuttal expert report on
non-infringement. Clipco filed a motion to strike
Ignite's expert report, arguing that the report was
improper because infringement was not addressed
in Clipco's initial expert disclosures. Clipco argued
that rebuttal reports are limited to issues submitted

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.))**

in the initial expert reports. The court considered Clipco's arguments and declined to strike Ignite's expert report on non-infringement. No. 04 5043, Dkt. No. 53 (N.D. Ill. June 15, 2005). The court, however, permitted Clipco to submit a rebuttal expert report on infringement. *Id.*

**\*2** Ignite argues that Clipco failed to identify its technical expert on infringement in compliance with the scheduling order and Rule 26. Ignite contends Clipco should be precluded from offering any expert testimony on infringement, or in the alternative, should be limited to presenting such evidence in its rebuttal case. Clipco responds that following the court's claim construction, only minor and straightforward issues needed to be determined to prove infringement. Based on the simplicity of the issues, Clipco concluded expert testimony was unnecessary. Ignite's rebuttal report on infringement necessitated Clipco's presentation of expert testimony on infringement at trial.

The moving party bears the burden of presenting sufficient evidence to meet the high standard applicable to an *in limine* motion. *Pivot Point Int'l v. Charlene Products, Inc.,* No. 90 C 6933, 1996 WL 284940, at \*2 (N.D.Ill. May 23, 1996) (denying motion *in limine* where moving party failed to attach relevant deposition); *Plair v. E.J. Branch & Sons, Inc.* 864 F.Supp. 67, 69 (N.D.Ill.1994). Ignite fails to attach the relevant expert report to its motion.[FN1]Thus, it fails to present sufficient evidence to permit the court to rule on its motion. Accordingly, Ignite's motion *in limine* to preclude Clipco's expert testimony on infringement must be denied.

> FN1. The parties fail to comply with the local rule establishing pretrial procedure, which requires the parties to attach stipulations or statements setting forth the qualifications of each expert witness to be read to the jury when the expert witness takes the stand. L.R. 16.1.1.2(e).

Clipco requests that the court permit Dr. Flanigan to testify prior to November 10th, the date it ex-

pects to present rebuttal evidence, because he is unable to attend the trial on that date. The present record does not provide a sufficient basis to fully evaluate the proper scope of Dr. Flanigan's testimony. Ruling on Clipco's request to permit Dr. Flanigan to testify regarding infringement prior to November 10th must therefore be reserved until trial.

C. Summary Judgment (No. 3)

Ignite requests that Clipco be prohibited from referring to the court's summary judgment ruling that its Extreme Tumbler Mug infringes the claims of the '909 patent. Ignite argues that the issue of whether the Extreme Tumbler Mug infringes has been conclusively determined and, thus, any evidence relating to its infringement is not relevant under Fed.R.Civ.P. 402. Ignite further argues that any relevance of the court's finding of infringement is outweighed by the danger of unfair prejudice. Fed.R.Civ.P. 403. Clipco responds that although the court determined the Extreme Tumbler Mug infringes the '909 patent, evidence pertaining to its mug is still relevant because the jury must decide whether Ignite breached its license agreement with Clipco. Clipco also argues that the summary judgment ruling is directly relevant to infringement of the '909 patent by the Extreme Coffee Press and its response to Ignite's invalidity defense.

Ignite's motion *in limine* to exclude reference to the court's summary judgment ruling must be granted. In the jury's presence, neither party shall refer to the court's summary judgment ruling, its factual findings, or rulings of law. The court's ruling on summary judgment was a matter of law on discrete issues based on the record presented by the parties. *Mi-Jack Products v. Int'l Union of Operating Engineers,* No. 94 C 6676, 1995 WL 680214, at \*2 (N.D.Ill. Nov.14, 1995). The issues on which summary judgment was granted will not be before the jury. *Id.;Sunstar, Inc. v. Alberto-Culver Co., Inc.,* No. 01 C 0736, 2004 WL 1899927, at \*2-3 (N.D.Ill. Aug.23, 2004) (issues decided as matter of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.))

law are not relevant during trial); *Smithkline Beecham Corp. v. Apotex Corp.,* No. 98 C 3852, 2002 WL 1613724, at *1 (N.D.Ill. July 17, 2002) (issues determined in summary judgment have no purpose or place at trial). Where the court determined that genuine issues of material fact exist, the jury will be the finder of fact based on the evidence at trial. Without referring to its summary judgment ruling, the court shall inform the jury that for the purposes of deciding the breach of contract claim and the invalidity defense, the Extreme Tumbler Mug infringes the '909 patent.

**\*3** Ignite requests that the trial be bifurcated, so that the jury may first consider the issues of fact concerning infringement of the '909 patent by the Extreme Coffee Press and whether the asserted claims of the '909 patent are valid in view of the prior art. Ignite contends that if the jury learns the Extreme Tumbler Mug infringes the '909 patent prior to its determining infringement of the Extreme Coffee Press, it will impermissibly compare the two products rather than comparing the Extreme Coffee Press to the asserted claims. Thus, Ignite argues, without bifurcation there is substantial risk that the jury will find the Extreme Coffee Press infringes the '909 patent on an improper basis.

Clipco responds that bifurcation is inappropriate because the sales of all infringing products are relevant to the validity issue. According to Clipco, evidence of the Extreme Tumble Mug would arise in the initial phase of a bifurcated trial. Clipco concludes that any prejudice from the court informing the jury that the Extreme Tumble Mug infringes the '909 patent can be cured by a limiting jury instruction.

The court may order a separate trial of any claim or issue in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. Fed.R.Civ.P. 42(b). Bifurcation in patent cases, as in others, is the exception and not the rule. *Pfizer Inc. v. Novopharm Ltd.,* No. 00 C 1475, 2000 WL 1847604, at *1 (N.D.Ill.Dec.14, 2000). The decision to order separ-

ate trials is made on a case-by-case basis and is committed to the sound discretion of the trial court. *Id.* (courts should consider evidentiary overlap, risk of duplication and delay and possibility of first trial phase obviating need for trial of subsequent issues). The party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials. *Reber v. Samsung Electronics Am., Inc.,* 220 F.R.D. 533, 536 (N.D.Ill.2004). Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. *Id.;Mopex, Inc. v. Chicago Stock Exchange, Inc.,* No. 01 C 302, 2003 WL 715652, at *9 (N.D.Ill. Feb.27, 2003) (bifurcation denied because it would result in increased delay, expense, and inconvenience).

Ignite has not sufficiently justified bifurcating the trial. The infringement, invalidity, enforceability, and breach of contract evidence is intertwined to the extent that many of the same documents and witnesses would be presented at two different trials if bifurcation is granted. *Mitutoyo Corp. v. Central Purchasing, Inc.,* No. 03 C 0990, 2004 WL 635064, at *2 (N.D.Ill. March 31, 2004). Additionally, whether the license agreement was breached must be adjudicated whether or not the jury finds the Extreme Coffee Press infringes. Thus, the interests of judicial efficiency would not be served by bifurcating a four-day trial. Moreover, the concern that the jury might perceive infringement by the Extreme Tumbler Mug in an improper way can be addressed by a limiting jury instruction. *See Dataquill Ltd. v. Handspring, Inc.,* No. 01 C 4635, 2004 WL 1102309, at *2 (N.D.Ill. May 4, 2004) (possibility of prejudice from evidence concerning defendant's valid patents best addressed through an appropriate jury instruction). Ignite's request for bifurcation must be denied.

D. Motion No. 4

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.))**

**\*4** Ignite withdrew this motion on October 11, 2005.

                          CONCLUSION

For the foregoing reasons, Ignite's motions *in limine* 1 and 2 are denied. Motion *in limine* 3 is granted in part and denied in part.

N.D.Ill.,2005.
Clipco, Ltd. v. Ignite Design, LLC
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 3

Westlaw.

Not Reported in F.Supp.                                                      Page 1
Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.), 34 U.S.P.Q.2d 1474
**(Cite as: Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.))**

**H**
C.R. Bard, Inc. v. M3 Systems, Inc.
N.D.Ill.,1994.

United States District Court, N.D. Illinois, Eastern
Division.
C.R. BARD, INC., Plaintiff-Counterdefendant,
v.
M3 SYSTEMS, INC., Defendant-Counterclaimant.
**No. 93 C 4788.**

July 11, 1994.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.
**\*1** In this contentious case, C.R. Bard, Inc.
("Bard") sues M3 Systems, Inc. ("M3 Systems")
for patent infringement. On June 7, 1994, this court
severed the trial into four segments: (1) M3 Sys-
tems' alleged infringement of Bard's patents; (2) the
validity of Bard's patents; (3) Bard's alleged anti-
trust violations; and (4) if necessary, damages for
patent infringement or an antitrust violation.
Memorandum Opinion and Order, 93 C 4788
(N.D.Ill. June 7, 1994). M3 Systems moves for re-
consideration and/or clarification of this court's
June 7, 1994 quadrification order.

*DISCUSSION*

1. Reconsideration

M3 Systems moves for reconsideration of this
court's decision to separate the infringement and
validity inquiries into two separate phases of the
trial. M3 Systems argues that the infringement and
validity stages should be combined into a single tri-
al on liability. Alternatively, if the two inquiries are
not combined, M3 Systems argues that their se-
quence should be reversed; *i.e.,* that the jury should
determine the validity/enforceability of Bard's pat-

ents before deciding whether M3 Systems infringed
Bard's patents.

There is a lively debate within the legal community
regarding management of patent infringement tri-
als. In 1987, Howard T. Markey, then Chief Judge
of the United States Court of Appeals for the Feder-
al Circuit, wrote an article entitled "On Simplifying
Patent Trials." 116 F.R.D. 369 (1987). Judge Mar-
key suggested that the plaintiff's case-in-chief in
patent infringement cases be limited to the present-
ation of evidence on the infringement claim; evid-
ence of the patent's validity should only be intro-
duced (in the defendant's rebuttal case) if the
plaintiff has introduced sufficient evidence of in-
fringement. Judge Markey explained that:

[E]very patentee's suit for infringement that in-
volves an invalidity defense is composed of two
separate trials. The first is on infringement. In that
trial the patentee alone has the burden and should
go first and last. The second trial is on the invalid-
ity defense. In that trial, the defendant alone has the
burden and should go first and last. When the judge
does not issue a Rule 42(b) order, therefore, in-
fringement should still be tried first and the invalid-
ity defense should be tried (if necessary) second.

*Id.* at 378. Judge Markey's article sparked discus-
sion.

At the Sixth Annual Conference of the United
States Court of Appeals for the Federal Circuit,
held in Washington, D.C. on May 13, 1988, the pat-
ent and trademark breakout session included a de-
bate of Judge Markey's bifurcation proposal by two
patent attorneys and a discussion by judges and
scholars. 122 F.R.D. 281, 397-421 (1988). A 1989
article by Rita Mankovich Irani summarized the bi-
furcation debate and, disagreeing with Judge Mar-
key's proposal, suggested alternatives to bifurca-
tion. Rita Mankovich Irani, "The New Skirmish in
Patent Cases: Who Goes First at Trial and with
What Evidence?", 17 *Am.Intell.Prop.L. Ass'n Q.J.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.), 34 U.S.P.Q.2d 1474
**(Cite as: Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.))**

364 (1989).

**\*2** Thus, whether to bifurcate patent infringement cases into separate trials on infringement and validity is an ongoing debate within the patent bar. There is not one correct way to manage a complex patent case such as this one. Instead, judges have broad discretion to separate trials in order to avoid jury confusion and to foster clarity and economy. *See*Fed.R.Civ.P. 42(b); *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed.Cir.1987).

M3 Systems is correct that "[c]laim interpretation, the central focus and hotly contested issue in any infringement analysis, cannot take place in a vacuum." Mot. at 1. This court understands that the jury's consideration of infringement requires the introduction of significant background information. However, this court disagrees with M3 Systems' assertion that trying the infringement segment first will "deprive[ ] the jury of a logical and complete presentation of this essential claim interpretation background or [ ] will be redundant when the issues of invalidity and unenforceability are reached." Mot. at 2.

First, the jury will need to hear the factual background of the case no matter which segment is tried first. Second, the court has discussed with counsel the procedural safeguards it plans to institute to assist the jury and to alleviate the need for redundant testimony. As the court explained at the pretrial conference on June 9, 1994, the court reporter will prepare a transcript of the proceedings for the jury that excludes objections, sidebar discussions and any evidence that is stricken ("the sanitized transcript"). June 9, 1994 transcript at 9-10. Thus, testimony need not be repeated; instead, when seeking to rely on testimony elicited during one segment of the trial to support an argument in another segment, counsel may simply designate the relevant pages in the sanitized transcript to be resubmitted to the jury. *Id.* at 10, 12. While witnesses may be recalled to testify on different issues, they may not be recalled to repeat previous testimony. *Id.* at 15. Thus, M3 Systems' concerns about presenting testimony

twice-redundancy, potential inconsistencies-are moot.

A recent Northern District of Illinois case cited by M3 Systems provides support for bifurcating the infringement and validity inquiries, in that sequence. In his decision in *Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation* (a bench trial), Judge Easterbrook, sitting by designation on this court, first considered whether the defendant infringed the plaintiff's patent for a certain type of hemodialysis catheter. 831 F.Supp. 1354, 1357 (N.D.Ill.1993). After concluding that the defendant's catheter infringed on the plaintiff's patent, Judge Easterbrook proceeded to consider the validity of the plaintiff's patent. *Id.* at 1361. It appears that Judge Easterbrook heard the evidence regarding both the infringement and validity claims together, then organized his opinion to discuss infringement first, validity second. The need to separate the inquiries was clear to Judge Easterbrook, as was the logical order of addressing the claims: first infringement, then validity.

**\*3** In this case, where the jury will not have the benefit, as did Judge Easterbrook in the *Mahurkar* case, of being involved with the litigation for at least three years, it is well within this court's discretion to separate the infringement and validity inquiries at trial. The same jury will hear the evidence in each segment. This procedure should reduce the significant potential for jury confusion over a myriad of complex issues, while conserving scarce jury resources. M3 Systems submits no persuasive reason to combine the infringement and validity inquiries or to reverse their order. The quadrification of the trial articulated in this court's June 7, 1994 decision must stand.

2. Clarification

In its June 7, 1994 ruling, this court explained that its decision to sever the trial into four separate inquiries stems from "the complexity of the issues, the inordinate volume of jury instructions, and the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                              Page 3
Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.), 34 U.S.P.Q.2d 1474
**(Cite as: Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.))**

impracticable number and specificity of special in-
terrogatories." June 7, 1994 decision at 2. In a foot-
note, the court explored some of the potential per-
mutations that may arise from the quadrifurcated
trial. Specifically, the court noted that:

In the first step, if the jury finds no infringement,
then there is no need for step two (determination of
patent validity). If the jury finds infringement, then
the trial proceeds to step two: whether the patents
are valid. If so, then there is no need for step three
(antitrust counterclaim). If Bard loses on either
steps one or two (*i.e.,* there is no infringement or
the patents are invalid), then the trial proceeds to
step three: the antitrust counterclaim. Finally, after
all the claims are resolved, step four is a proceeding
to determine damages, if necessary, for either pat-
ent infringement or an antitrust violation.

June 7, 1994 decision at 2 n. 1.

In this footnote, the court incorrectly concluded that
the validity segment of the trial may be obviated by
a finding of no infringement. In fact, the validity
segment of the trial is required even if the jury does
not find infringement, because the validity/
enforceability of Bard's patents is relevant to (1)
whether this is an exceptional case entitling M3
Systems to attorneys fees and (2) the antitrust in-
quiry. Of course, the parties could settle their dis-
pute in part or in full at any point in the quadrifurc-
ated proceedings, obviating the need for some or all
of the remaining segments of the trial. Since foot-
note one in this court's June 7, 1994 decision mis-
states some potential outcomes, it is confusing and
must be deleted.

### CONCLUSION

Defendant M3 Systems' motion for reconsideration
of this court's June 7, 1994 decision is denied. De-
fendant M3 Systems' motion for clarification of this
court's June 7, 1994 decision is granted. Footnote 1
on page 2 of this court's June 7, 1994 decision is
stricken.

N.D.Ill.,1994.
C.R. Bard, Inc. v. M3 Systems, Inc.
Not Reported in F.Supp., 1994 WL 362186
(N.D.Ill.), 34 U.S.P.Q.2d 1474

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 4



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**
Page 1

**H**
Digigan, Inc. v. Ivalidate, Inc.
S.D.N.Y.,2004.

United States District Court,S.D. New York.
DIGIGAN, INC. Plaintiff,
v.
IVALIDATE, INC. d/b/a Plenar, MDM Group,
Inc., and TIE Technologies, Inc. f/k/a Global Wide
Web, Inc. Defendants.
**No. 02 Civ. 420(RCC).**

Feb. 3, 2004.

**Background:** Lender sued debtor, party that allegedly had bought collateral, including patents, which had secured loan and on which lender allegedly had foreclosed, and purported buyer's licensee, asserting claims for alleged violations of Lanham Act, state unfair competition and consumer protection laws, declaration that it was rightful owner of collateral, and injunction barring infringement of its rights in collateral. Defendants moved to dismiss.

**Holdings:** The District Court, Casey, J., held that:
(1) allegations supported claim for declaration that lender was rightful owner of collateral;
(2) complaint asserted claim for patent infringement;
(3) allegations did not support Lanham Act claim;
(4) complaint did not support claim for unfair competition under New York law;
(5) complaint did not state claims for violations of New York consumer protection statutes; and
(6) prediscovery assertion that purported buyer's principal place of business was in New York was sufficient to establish personal jurisdiction under rule allowing court to provisionally accept disputed factual allegations as true.

Motions granted in part and denied in part.

West Headnotes

**[1] Declaratory Judgment 118A ☞328**

118A Declaratory Judgment
   118AIII Proceedings
     118AIII(D) Pleading
      118Ak327 Motion to Strike or Dismiss
Complaint, Petition or Bill
        118Ak328 k. Grounds of Motion. Most Cited Cases
Argument that lender breached advance agreement, rendering security agreement void, was possible defense rather than ground for dismissing, for failure to state claim, lender's claim seeking declaration that it was rightful owner of collateral upon which it purportedly had strictly foreclosed, given that nothing in complaint, advance letter, or security agreement allowed court to determine that lender breached advance letter without making factual findings. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; McKinney's Uniform Commercial Code § 9-620.

**[2] Secured Transactions 349A ☞148.1**

349A Secured Transactions
   349AIII Construction and Operation
     349AIII(B) Rights as to Third Parties and Priorities
      349Ak148 Actions to Determine and Establish Rights
        349Ak148.1 k. In General. Most Cited Cases
Allegations that lender notified debtor of its intent to strictly foreclose upon collateral in satisfaction of debtor's loan obligations and that debtor did not object to foreclosure asserted claim, under New York's version of Uniform Commercial Code (UCC), that lender was rightful owner of collateral, notwithstanding debtor's contention that collateral was sold before lender's notice was given and that lender failed to allege that buyer was notified of proposal to strictly foreclose, inasmuch as reasonable inference from allegation that lender had complied with UCC requirements was that buyer had

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

neither claimed interest in collateral nor held perfected security interest. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; McKinney's Uniform Commercial Code § 9-620.

**[3] Declaratory Judgment 118A ⬅⮞328**

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(D) Pleading
         118Ak327 Motion to Strike or Dismiss Complaint, Petition or Bill
            118Ak328 k. Grounds of Motion. Most Cited Cases
Whether monies advanced represented deposit, rather than loan, was factual dispute that could not be decided on purported debtor's motion to dismiss purported lender's claim seeking declaration that it was rightful owner of collateral upon which it allegedly had strictly foreclosed. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Declaratory Judgment 118A ⬅⮞188**

118A Declaratory Judgment
   118AII Subjects of Declaratory Relief
      118AII(I) Liens and Priorities
         118Ak188 k. In General. Most Cited Cases

**Declaratory Judgment 118A ⬅⮞318**

118A Declaratory Judgment
   118AIII Proceedings
      118AIII(D) Pleading
         118Ak312 Complaint, Petition or Bill
            118Ak318 k. Property, Conveyances and Incumbrances. Most Cited Cases
Purported lender asserted claim for declaratory relief when purported lender alleged facts suggesting that it was rightful owner of patents which had served as collateral for loan and that purported debtor, purported buyer of collateral, and purported buyer's licensee had asserted ownership of patents, and when purported debtor contested purported lender's claimed ownership rights, raising contro-versy involving ownership of patents that would be resolved by requested declaratory relief. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[5] Patents 291 ⬅⮞310.1(2)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k309 Pleading
            291k310.1 Original Bill
               291k310.1(2) k. Title and Right of Complainant. Most Cited Cases

**Patents 291 ⬅⮞310.1(5)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k309 Pleading
            291k310.1 Original Bill
               291k310.1(5) k. Infringement and Injury, Loss or Damage. Most Cited Cases
Complaint asserted claim for patent infringement when it alleged that plaintiff, as secured creditor, acquired ownership of identified patents through strict foreclosure on collateral, and that both buyer to which debtor purportedly had sold patents and buyer's licensee had violated patent statute by "making, using, offering to sell, and/or selling the invention claimed" in patents. 35 U.S.C.A. § 271(a).

**[6] Antitrust and Trade Regulation 29T ⬅⮞48**

29T Antitrust and Trade Regulation
   29TII Unfair Competition
      29TII(A) In General
         29Tk48 k. Assertion of Rights. Most Cited Cases
      (Formerly 382k870(1) Trade Regulation)
Allegations that, in marketing their products, defendants falsely stated that they owned patent which lender had received from debtor under security agreement did not assert that defendants had made false and misleading misrepresentations re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

specting any good or service, and thus did not support claim for alleged violation of Lanham Act. Lanham Trade-Mark Act, § 43(a), as amended, 15 U.S.C.A. § 1125(a).

**[7] Antitrust and Trade Regulation 29T ☜76**

29T Antitrust and Trade Regulation
    29TII Unfair Competition
        29TII(B) Actions and Proceedings
            29Tk74 Pleading
                29Tk76 k. Particular Cases. Most Cited Cases
    (Formerly 382k564 Trade Regulation)
Complaint did not support lender's claim for unfair competition under New York law when lender alleged facts indicating that it had acquired patent from debtor through strict foreclosure and that both party which claimed to have bought patent from debtor and party's licensee had made false representations regarding their rights in patent, but did not make requisite allegations suggesting any misappropriation of its time, labor, or talent.

**[8] Antitrust and Trade Regulation 29T ☜358**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(E) Enforcement and Remedies
            29Tk356 Actions
                29Tk356 Pleading
                    29Tk358 k. Particular Cases. Most Cited Cases
    (Formerly 92Hk38 Consumer Protection)
Complaint did not state claims for violations of New York statutes protecting consumers against deceptive trade practices and false advertising when lender failed to allege facts suggesting broad impact on consumers in asserting possibility of consumer confusion arising from purportedly false claims of debtor's alleged alter egos that they were, respectively, owner and licensee of patent which lender claimed to own, pursuant to its strict foreclosure of debtor's collateral. McKinney's General Business Law §§ 349, 350.

**[9] Federal Courts 170B ☜96**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk96 k. Affidavits and Other Evidence. Most Cited Cases
Prediscovery assertion that defendant's principal place of business was in New York was sufficient to establish personal jurisdiction under rule allowing court to provisionally accept disputed factual allegations as true, warranting denial of motion to dismiss for lack of personal jurisdiction, with leave to renew after parties completed discovery. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

MEMORANDUM & ORDER

CASEY, J.
*1 Plaintiff digiGAN, Inc. ("Plaintiff") brought this action against iValidate, Inc. ("iValidate"), MDM Group, Inc. ("MDM"), and TIE Technologies, Inc. ("TIE") (collectively referred to as "Defendants") for a declaratory judgment that Plaintiff is the owner of certain property, including a number of patents, and for damages based on violations of federal patent law and state unfair competition law. The three Defendants filed separate motions to dismiss the action. The Court addresses all three motions in this opinion. For the reasons that follow, Defendants' motions pursuant to Federal Rule of Civil Procedure 12(b)(6) are GRANTED IN PART AND DENIED IN PART. The Court DENIES WITHOUT PREJUDICE MDM's motion to dismiss for lack of personal jurisdiction.

I. BACKGROUND

The following facts are derived from the Amended Complaint in this case, the truth of which the Court assumes for purposes of these motions. On February 26, 2001, Plaintiff entered into an agreement with iValidate, titled "Advance Letter," under which Plaintiff lent sums of money to iValidate. (Compl.¶ 7.) The Advance Letter stated that if a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

separate agreement, called an "Asset Purchase Agreement," did not close by April 15, 2001, the advances made by Plaintiff to iValidate were to convert into a loan payable by April 30, 2001.(*Id.* ¶ 8.) That deadline was extended by consent of the parties until October 1, 2001. (*Id.* ¶ 10.)The Asset Purchase Agreement did not close, but iValidate failed to pay back $107,500 plus interest. (*Id.* ¶¶ 8, 11.)Under a security agreement executed on March 13, 2001, iValidate assigned certain collateral to Plaintiff to secure its obligations under the Advance Letter.(*Id.* ¶ 12.)On October 23, 2001, Plaintiff notified iValidate that it would strictly foreclose on the collateral, and received no objection. (*Id.* ¶¶ 13, 14.)Plaintiff therefore contends that it is the legal owner of the collateral.

On October 21, 2001, MDM issued a press release in which it claimed ownership of the collateral-which appears to include a number of patents-despite Plaintiff's perfected security interest which it recorded in the states of New York and Georgia, and with the United States Patent and Trademark Office.(*Id.* ¶¶ 16, 17.)MDM then licensed rights in the patents to TIE. (*Id.* ¶ 19 .)Defendants are alleged to be alter egos of one another. (*Id.* ¶ 23.)

First, Plaintiff contends that it is entitled to a declaratory judgment that it is the rightful owner of the collateral and to an injunction against Defendants' infringement of its rights in the collateral. (*Id.* ¶ 27.)Second, Plaintiff alleges that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by making false and misleading statements that they possess certain rights in the patents. (*Id.* ¶ 36.)These statements allegedly caused confusion among the public and damage to Plaintiff. (*Id.* ¶ 38.)The Amended Complaint also alleges that these misleading statements violated New York unfair competition law and sections 349 and 350 of the New York General Business Law.(*Id.* ¶¶ 42, 44 .)

**\*2** Defendants argue that the Amended Complaint fails to state a claim on which relief can be granted, and have brought motions pursuant to Federal Rule of Civil Procedure 12(b)(6). In addition, MDM

moves to dismiss the Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[FN1]

> FN1. In its original moving papers, MDM moved for a more definite statement of the claims under Federal Rule of Civil Procedure 12(e). However, in its supplemental moving papers filed after Plaintiff amended its complaint, that motion was not reasserted. The motion has therefore been abandoned.

## II. DISCUSSION

### A. Defendants' 12(b)(6) Motions

Defendants argue that the Amended Complaint should be dismissed in its entirety. Under Rule 12(b)(6), the Court must presume that all of the complaint's allegations are true and read the Amended Complaint in the light most favorable to Plaintiff. *See* *Connolly v. McCall,* 286 F.3d 122, 125 (2d Cir.2001). The Court can only grant the motion if it appears beyond doubt that Plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995). The Court will discuss each cause of action separately.

### 1. First Claim: Declaratory Relief Under Article 9 of the New York Uniform Commercial Code

iValidate argues that the Amended Complaint does not state a claim for declaratory relief that Plaintiff is the rightful owner of the collateral for three reasons: (1) Plaintiff breached the Advance Letter and therefore the security agreement is void; (2) Plaintiff failed to comply with the notice requirements of section 9-620 of the New York Uniform Commercial Code ("N.Y.U.C.C."); and (3) the monies advanced by Plaintiff to iValidate were not loans but were deposits to be applied toward consideration that Plaintiff owed iValidate. (Memorandum of Law of Defendant iValidate in Support of Motion to Dismiss, at 16-19.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

All of these arguments must fail because they mistake the Court's role in deciding a Rule 12(b)(6) motion. The Court cannot make findings of fact, but must confine its analysis to whether the "facts stated on the face of the complaint, in documents appended to the complaint, or incorporated in the complaint by reference" would entitle Plaintiff to the requested relief.*Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

[1] The argument that Plaintiff breached the Advance Letter may be a defense that iValidate might eventually assert, but it is not a ground for dismissal under Rule 12(b)(6). It is only a proper basis for a motion to dismiss "if the defense appears on the face of the complaint."*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir.2003) (quoting *Pani Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)). There is nothing in the Amended Complaint, the Advance Letter, or the security agreement, that allows the Court to determine that Plaintiff breached the Advance Letter without making factual findings, something the Court cannot do on a motion to dismiss. Thus, this argument is unavailing.

[2] Second, the Amended Complaint alleges that Plaintiff notified iValidate that it intended to strictly foreclose upon the collateral in satisfaction of iValidate's obligations under the Advance Letter. (Compl.¶ 13.) The Amended Complaint further alleges that iValidate did not object to the foreclosure.(*Id.* ¶ 14.)N.Y.U .C.C. section 9-620 permits a secured party to retain collateral in satisfaction of an obligation if it sends a proposal to the debtor and receives no objection within twenty days after sending the proposal. N.Y.U.C.C. Law §§ 9-620 to -621. iValidate argues that such notice did not satisfy the N.Y.U.C.C. requirements because iValidate had already sold the collateral to MDM and the Amended Complaint does not claim that MDM was notified of Plaintiff's proposal to strictly foreclose. However, the N.Y.U.C.C. only requires notification to parties from which the secured party received a

claim of interest, or which held a perfected security interest or lien within ten days before the debtor consented to the foreclosure. *Seeid.* § 9-621(a). It is doubtful that Plaintiff must plead the *absence* of any such claims of interest and secured interest-holders, but a reasonable inference from the allegation in the Amended Complaint that Plaintiff complied with the N.Y.U.C.C. requirements is that MDM had neither claimed an interest in the collateral nor held a perfected security interest. Thus, the Amended Complaint adequately alleges the necessary facts under the N .Y.U.C.C.

*3 [3] Finally, iValidate argues that the sum Plaintiff claims is owed was not a loan but a deposit toward monies that Plaintiff owed to iValidate. iValidate asserts that the Court must construe the Advance Letter and the security agreement in conjunction with the Asset Purchase Agreement and something called the Term Sheet, which iValidate maintains was executed on January 18, 2001, and specifies that Plaintiff would make cash payments of $1.1 million to iValidate; assume certain of iValidate's liabilities; and deliver stock in Plaintiff to iValidate shareholders. The Term Sheet purportedly also states that the patents would not be officially assigned to Plaintiff until it made payments to iValidate of $650,000. iValidate argues that this Term Sheet was incorporated into the Asset Purchase Agreement, which the Court must consider because the Amended Complaint references the Asset Purchase Agreement.

The Amended Complaint does refer to the Asset Purchase Agreement, and in part, relies on the agreement to state its claim for declaratory relief; thus, it may be considered by the Court in ruling on the motion to dismiss. *SeeChambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (holding that documents relied on by plaintiff in drafting complaint may be considered on 12(b)(6) motion). iValidate contends that the declaratory judgment claim should be dismissed because Plaintiff failed to tender agreed-upon consideration and because the transaction contemplated by the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Asset Purchase Agreement never closed. These arguments ask the Court to make factual findings and then a conclusion of law that Plaintiff has no rights to the patent. Such actions are impermissible on a motion to dismiss.

[4] Plaintiff has also sufficiently stated a claim for declaratory relief. A district court "must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."*Cont'l Cas. Co. v.. Coastal Sav. Bank,* 977 F.2d 734, 737 (2d Cir.1992) (quoting *Broadview Chemical Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir.1969)). Plaintiff has plead facts suggesting that it is the rightful owner of the patents and that all three Defendants have asserted ownership of the patents. (Compl.¶¶ 25, 26.) iValidate argues in defense that Plaintiff has no such rights. Thus, there is a controversy involving ownership of the patents that will be resolved by the declaratory relief that Plaintiff requests. iValidate's motion to dismiss is therefore denied.

2. Second Claim: Patent Infringement

[5] MDM and TIE contend that Plaintiff has failed to state a cause of action for patent infringement.FN2The Amended Complaint alleges that Defendants have violated 35 U.S.C. § 271(a) by "making, using, offering to sell, and/or selling the invention claimed" in two patents. (Compl.¶ 31.) 35 U.S.C. § 271(a) states in relevant part: "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

FN2. iValidate bases its motion on the argument that Plaintiff cannot recover on any of its legal theories because it has no ownership interest in the patents. For the reas-

ons already stated, this argument must be rejected.

*4 According to both MDM and TIE, the Amended Complaint fails to state a cause of action against them because it does not claim that they actually produced or sold any patented inventions. "[A] patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself."*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000). In *Phonometrics,* the Federal Circuit held that a complaint states a claim for patent infringement when it "alleges ownership of the asserted patent, names each individual defendant, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked."*Id.*

Here, Plaintiff has met the standard articulated in *Phonometrics* for stating a claim under § 271. It has alleged ownership of the patents; named Defendants as the alleged infringers; cited the patents by number; and describes the means by which they were infringed, that is, through making, using, selling, offering to sell or actually selling the patented inventions. Complaints that merely track the statutory language may be sufficient to withstand a motion to dismiss. *SeeGlazer Steel Corp. v. Yawata Iron & Steel Co.,* 56 F.R.D. 75, 81 n. 1 (S.D.N.Y.1972). In addition, the Amended Complaint specifically cites § 271 as the applicable patent-law provision. The information provided is adequate to allow Defendants to defend themselves. Therefore, the motions to dismiss the patent infringement claim are denied.

3. Third Claim: Lanham Act Violations

[6] MDM and TIE next challenge Plaintiff's claim for violations of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Specifically, MDM and TIE

Not Reported in F.Supp.2d                                                                    Page 7
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

contend that Plaintiff only alleges misrepresentations regarding a patent, which is not a good or service. The Lanham Act subjects to civil suit:

> Any person who, on or in connection with any *goods or services,* or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities....

15 U.S.C. § 1125(a) (emphasis added). This provision of the Lanham Act is meant "to prevent customer confusion regarding a product's source or sponsorship."*Chambers,* 282 F.3d at 156. The Lanham Act is not, however, a panacea for all unfair trade practices. *SeeDastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, ----, 123 S.Ct. 2041, 2045, 156 L.Ed.2d 18 (2003).

**\*5** The Amended Complaint alleges that Defendants violated section 43(a) of the Lanham Act by making false and misleading representations concerning Defendants' rights in one of the patents. (Compl.¶ 36.) These misrepresentations allegedly were made in the course of Defendants' website advertising of products protected by the patent. (*Id.*) The gravamen of Plaintiff's claim is that Defendants, in marketing their products, falsely stated that they owned the patent that Plaintiff received from iValidate under the security agreement. Thus, the alleged misrepresentations concerned the patent, not any products or services. A patent is not a

"good or service" as those terms are used in the Lanham Act. *SeeHans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG,* No. 96 Civ. 8147(PKL), 1998 WL 148427, at \*2 (S.D.N.Y. Mar.27, 1998) (citing *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568, 1574-75 (Fed.Cir.1996)).

In *Hans-Jurgen,* the plaintiffs alleged that the defendant violated section 43(a) when it falsely claimed ownership of a patent. *Id.* Judge Leisure concluded that the cause of action arose out of misrepresentations regarding ownership of the patent, and noted that the Federal Circuit has held that a patent is not a "good or service" under section 43(a) of the Lanham Act. *Seeid.*

Plaintiff responds that its Lanham Act claim is valid because Defendants advertised "products embodying technology protected by the Patent."(Compl.¶ 36.) However, drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint does not allege any "false or misleading representation of fact" in connection with any goods or services."*See*15 U.S.C. § 1125. The patent, and not any product or service, is at the center of the controversy between the parties.

First, the only misrepresentations alleged occurred when Defendants claimed to own the patent or to be licensees of the patent. (*See* Compl. ¶ 35.) Second, the reason that Plaintiff claims the statements were false was that it, and not Defendants, actually own the patent. (*Seeid.* ¶ 37.)Finally, Plaintiff's vague reference to Defendants' "products embodying technology" does not allege the necessary connection between the misrepresentations of fact and goods or services. Even paragraph 36 of the Amended Complaint, in which Plaintiff mentions Defendants' products, only alleges misrepresentations in connection with Defendants' rights to the patent, not with the products themselves. Thus, the Court concludes that Plaintiff has alleged misrepresentations of fact in connection with a patent, not goods or services. Therefore, the Lanham Act claim is dismissed.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))

4. Fourth Claim: Unfair Competition

[7] Plaintiff states that Defendants' false representation that they are the owners or licensees of the patent constitutes unfair competition under New York State law. (*Id.* ¶ 42.)"[T]he primary concern in unfair competition is the protection of a business from another's misappropriation of the business' organization or its expenditures of labor, skill, and money."*Gucci America, Inc. v. Duty Free Apparel Ltd.,* 277 F.Supp.2d 269, 275 (S.D.N.Y.2003) (quoting *Ruder & Finn, Inc. v. Seabord Sur. Co.,* 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518, 522 (N.Y.1981)) (internal quotation marks omit- ted).

*6 Defendants TIE and MDM argue that a cause of action for unfair competition cannot lie on the facts stated in the Amended Complaint because there are no allegations that they infringed on Plaintiff's patent rights or misappropriated Plaintiff's business name, reputation, or good will. In addition, they argue that because the Lanham Act claim fails, so too must the claim for unfair competition.

If Defendants are to succeed in dismissing the unfair competition claim, they must not rest on their Lanham Act arguments. As the Second Circuit has explained, "the elements of an unfair competition and Lanham Act claim are different."*Morex S.p.A. v. Design Institute America, Inc.,* 779 F.2d 799, 801 (2d Cir.1985). In New York, unfair competition is a broad tort encompassing an "incalculable variety of illegal practices." *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.,* 2003 WL 23023866, at *24 (N.D.N.Y. Dec.3, 2003) (quoting *Electrolux Corp. v. Val-Worth, Inc.,* 6 N.Y.2d 556, 190 N.Y.S.2d 977, 161 N.E.2d 197, 204 (N.Y.1959)). Plaintiff must allege, however, "unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor, and talent."*Greenblatt v. Prescription Plan Servs. Corp.,* 783 F.Supp. 814, 825 (S.D.N.Y.1992).

Here, Plaintiff's labor was not expended, nor talent tapped, in producing the patented technology.

Plaintiff's only argument is that it expended money through its agreements with iValidate, and has, in effect, purchased the patent. However, it is the money spent in *developing* a product or process that the tort of unfair competition protects. *SeeNorbrook Labs.,* 2003 WL 23023866, at *25 (finding unfair competition when defendant misappropriated technology for which plaintiff expended substantial time and money in producing). Plaintiff seeks to restate its patent infringement claim as an unfair competition claim, without alleging any expenditure of time, labor, or talent. *Seeid.*For this reason, the Amended Complaint does not adequately state a claim for unfair competition, and this cause of action is dismissed.

5. Fifth Claim: Violation of New York General Business Law

[8] The Amended Complaint alleges that Defendants violated sections 349 and 350 of the N.Y. General Business Law.Sections 349 and 350 protect consumers against deceptive trade practices and false advertising. *See*N.Y. Gen. Bus. L. §§ 349, 350. The Court determines that Plaintiff has failed to state a claim under these statutes.

To establish a claim for deceptive trade practices under section 349, Plaintiff must allege that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."*Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (per curiam). Competitors have standing to bring a claim under this statute; however, "the gravamen of the complaint must be consumer injury or harm to the public interest."*Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y.1988)).

*7 The only harm to the public found anywhere in the Amended Complaint is the potential confusion that might arise due to Defendants' claims that they

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

own, or are licensees of, the patent. (*See* Compl. ¶ 38.) Consumer confusion regarding the patent, the use or nature of which is not even stated in the Amended Complaint, does not rise to the level of consumer injury necessary to sustain a claim under section 349. *SeeNew York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 770 (N.Y.1995)."The conduct [alleged] need not be repetitive or recurring, but defendant's acts or practices must have broad impact on consumers at large...."*Id.*There are no factual allegations in the Amended Complaint that suggest a broad impact on consumers; in fact, Plaintiff never alleges what the invention is for which it claims to own the patent.

The Amended Complaint is replete, however, with allegations of harm to Plaintiff's business. "Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349."*Gucci America,* 277 F.Supp.2d at 274. Because this is merely a private dispute "without direct impact on the body of consumers," the claim under section 349 is dismissed. *SeeMaurizio,* 230 F.3d at 522.

Plaintiff's claim under section 350 must suffer a similar fate. To state a claim for false advertising under section 350, Plaintiff again must allege conduct that has a broad impact on consumers. *Seeid.*(citing with approval *Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1291-92 (S.D.N.Y.1988)). Therefore, the section 350 claim is also dismissed.

**B. MDM's 12(b)(2) Motion**

[9] MDM also maintains that it is not subject to personal jurisdiction in this Court because it has no contacts with the state of New York. MDM claims that it is incorporated in Georgia and has its principal place of business in Texas. It further asserts that it has no offices, employees, or agents in New York, and derives no income from, nor has caused any injuries in, New York. The Amended Com-

plaint, in contrast, alleges that MDM's principal place of business is in New York. (*Id.* ¶ 3.) Plaintiff argues that this allegation is itself sufficient to withstand a motion to dismiss on the issue of personal jurisdiction. In the alternative, Plaintiff claims that MDM has sufficient contacts through to its own activities and those of TIE.

In demonstrating personal jurisdiction, "[t]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation."*Ball v. Metallurgie Hoboken-Overpelt S.A.,* 902 F.2d 194, 197 (2d Cir.1990). As this motion was filed prior to discovery, Plaintiff must make a *primafacie* showing of jurisdiction by allegations in the complaint. *Id.;seealsoMetropolitan Life Ins. Co. v. Robertson Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction.").

*\*8* MDM cites *Palmieri v. Estefan,* 793 F.Supp. 1182 (S.D.N.Y.1992), for the proposition that an evidentiary hearing is required when a defendant challenges the plaintiff's factual allegations relating to personal jurisdiction. *Seeid.* at 1186.This argument is only partially correct. MDM certainly may challenge *both* Plaintiff's theory of jurisdiction and the veracity of the facts that purportedly support that theory, *Credit Lyonnais Secs. (USA), Inc. v. Alcantara,* 183 F.3d 151, 153 (2d Cir.1999), but the Court need not decide both challenges at the same time. *SeeBall,* 902 F.2d at 197.

"In ruling on the *theory* of jurisdictional allegations, the court may provisionally accept disputed factual allegations as true.... [T]he court need only determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction; no evidentiary hearing or factual determination is necessary for that purpose."*Id.* at 153 (emphasis added). MDM is correct that Plaintiff must prove facts establishing personal jurisdiction by a preponderance of the evidence, but Plaintiff need not do so on a prediscovery motion pursuant to Rule 12(b)(2).*SeeBall,* 902 F.2d at 196.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

The Court will accept as true the allegation of juris-
diction at this time. The parties shall have an oppor-
tunity to conduct discovery on the issue of jurisdic-
tion, if they have not yet done so; the Court will
schedule further proceedings after such discovery.
Plaintiff will bear the burden of proving, by a pre-
ponderance of the evidence, both its theory of juris-
diction and the facts on which that theory is based.
Therefore, MDM's motion is denied with leave to
renew after discovery has been completed.

III. CONCLUSION

For the foregoing reasons, Defendants' motions to
dismiss for failure to state a claim are GRANTED
IN PART AND DENIED IN PART. Specifically,
the Court concludes that Plaintiff has failed to state
a cause of action under the Lanham Act and New
York General Business Law sections 349 and 350,
and for unfair competition. Plaintiff has, however,
stated claims for declaratory relief and patent in-
fringement. The Court DENIES WITHOUT PRE-
JUDICE MDM's motion to dismiss for lack of per-
sonal jurisdiction.

So Ordered:

S.D.N.Y.,2004.
Digigan, Inc. v. Ivalidate, Inc.
Not Reported in F.Supp.2d, 2004 WL 203010
(S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC
Rep.Serv.2d 1022

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 5

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.))**

**C**
General Patent Corp. v. Hayes Microcomputer
C.D.Cal.,1997.
Only the Westlaw citation is currently available.
United States District Court, C.D. California.
GENERAL PATENT CORPORATION Plaintiff,
v.
Hayes MICROCOMPUTER, et al. Defendants.
**No. SA CV 97-429-GLT ANX.**

Oct. 20, 1997.

ORDER BIFURCATING PATENT VALIDITY
AND ENFORCEABILITY ISSUES FROM IN-
FRINGEMENT AND DAMAGES ISSUES AND
STAYING DISCOVERY AND TRIAL OF IN-
FRINGEMENT AND DAMAGES ISSUES

TAYLOR, District J.
**\*1** Defendants' Motion to Bifurcate Patent Validity
and Enforceability Issues From Infringement and
Damages Issues is GRANTED. Discovery and Trial
of Infringement and Damages Issues is STAYED.

A. *Bifurcation of the Trial*

Federal Rule of Civil Procedure 42(b) governs bi-
furcation of trails:

The court, in furtherance of convenience or to avoid
prejudice, or when separate trials will be conducive
to expedition and economy, may order a separate
trial of any claim, cross-claim, counterclaim, or
third party claim, or of any separate issues or of any
number of claims ...'

Fed.R.Civ.P. 42(b). These considerations are in the
alternative. *Id.* Thus, bifurcation may be proper
upon a showing of any of these factors. Granting or
denying severance lies within the trial court's sound
discretion.[FN1]*Davis & Cox v. Summa Corp.,* 927
F.2d 1473, 1479 (9th Cir.1985).

FN1. GPC claims "[i]n patent cases, as in
any other case, it is well-settled that separ-
ate trails are the exception, not the
rule."No such preference has been ex-
pressed in patent cases reviewed by the
Ninth Circuit. *See International Environ-
mental Dynamics, Inc. v. Fraser,* 647 F.2d
77, 79 (9th Cir.1981)(affirming a separate
jury trial pursuant to Fed.R.Civ.P. 42(b) on
the sole issue of the validity of the
plaintiff's patent); *Filtrol Corporation v.
Kelleher,* 467 F.2d 242, 245 (9th
Cir.1972)(upholding district court's bifurc-
ation of patent infringement and validity
claims). In fact, bifurcation or even trifurc-
ation is common in patent cases. *See* The
Manual For Complex Litigation, 3d §
33.62, pp. 360-61 (Federal Judicial Center,
1995)(recognizing the need and encour-
aging trial judges to bifurcate or trifurcate
patent trials).

Bifurcation of the issues in this case would be effi-
cient and convenient. Since GPC has asserted the
same four patents against all defendants, the issues
of patent validity and enforceability are common to
all defendants. The infringement and damages is-
sues, however, are specific to each defendant be-
cause they involve the particular products made by
each defendant.[FN2]Accordingly, it would be in the
interest of convenience to separate the collective
patent validity/enforceability issues from the indi-
vidual infringement/damages issues.

FN2. In total, defendants estimate they
have hundreds of thousands of pages of
documents relating to the sales, costs, and
profitability of the accused modems. Mo-
tion at 6.

Additionally, "[b]ifurcation is particularly appropri-
ate when resolution of a single claim or issue could
be dispositive of the entire case."[FN3]*Cook v.
United Service Auto. Ass'n.,* 169 F.R.D. 359

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                   Page 2
Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.)
(Cite as: Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.))

(D.Nev.1996); *see also O'Malley v. United States Fidelity and Guaranty Company,* 776 F.2d 494, 501 (5th Cir.1985); 9 Wright & Miller, Federal Practice and Procedure: Civil 2d, § 2388, p. 476 (1994). Thus, efficiency indicates this court should first consider the validity and enforceability claims if they are potentially dispositive issues. *See, e.g., Wang Laboratories v. Mitsubishi Electronics America, Inc.,* 29 U.S.P.Q.2d (BNA) 1481, 1482 (C.D.Cal.1993).

> FN3. Although the Ninth Circuit has left this determination entirely within the discretion of the district judge, other courts developed criteria to determine whether a separate trial on dispositive issues is appropriate. *See Engelhard Minerals and Chemicals Corp. v. Anglo-American Clays Corp.,* 212 U.S.P.Q. 668, 669 (M.D.Ga.1981); *Ludlow Corp. v. Textile Rubber & Chemical Co.,* 77 F.R.D. 752, 753 (N.D.Ga.1978). Defendants appear to meet the criteria set out by these courts.

Here it appears the validity and enforcement issues may be dispositive. If the patents are found invalid or unenforceable there will be no need to resolve the infringement and damages claims. Conversely, if the patents are found valid and enforceable it will likely promote settlement of the action before trial on the infringement and damages issues. Thus, it will almost certainly be efficient for this court to first address the issues of validity and enforceability before turning to the other claims.[FN4]

> FN4. Additionally, defendants' preliminary investigation leads them to believe "focused discovery ... will confirm the invalidity and unenforceability of [GPC's] claims."Motion at 6. Defendants insist that devices, which possessed the technology at issue in this case, were on sale and in public use at least a year before the effective filing date of each patent. Dunlavey Dec. ¶ 10. Assuming such evidence does exist, this reinforces this court's belief that the

validity and enforceability issues may be dispositive in this case.

In opposing this motion, GPC relies on *Procter & Gamble Co. v. Nabisco Brands, Inc.,* 604 F.Supp. 1485 (D.Del.1985)(*P & G* ) for the proposition that the existence of overlapping evidence weighs against separate trials.[FN5]However the facts in this case are distinguishable from the facts in *P & G.* First, the *P & G* court denied the motion for a separate trial on validity because the movant had failed to demonstrate that a trial on infringement would be either long or complex. *Id.* at 1492.This case is complex-it involves multiple patents, multiple defendants, and multiple accused products. Second, the *P & G* court was concerned with two areas of overlapping evidence which do not arise in this case: claim construction and the question of commercial success. *Id.* Here the court will construe the asserted claims only in the first trial. That construction will then be the law of the case and will govern in a later trial on the infringement and damages issues. *See Magnesystems, Inc. v. Nikken, Inc.,* 933 F.Supp. 944, 949 (C.D.Cal.1996)(stating the "law of the case" rule for a patent infringement lawsuit). Additionally, the defendants in this case have offered to stipulate to "commercial success" for the purpose of the separate validity and enforceability trial. Reply at 9. Thus, the overlapping evidence which formed the basis of the *P & G* court's concerns does not appear in this case.

> FN5. In addition to *P & G*, GPC incorrectly cites four Federal Circuit cases for the proposition that bifurcation is inappropriate when there is substantial evidentiary overlap. None of these cases mention bifurcation or Fed.R.Civ.P. 42(b).*See* Opp. at 6-7; *Witco Chem. Corp. v. Peachtree Doors, Inc.,* 787 F.2d 1545 (Fed.Cir.1986); *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 730 F.2d 1452 (Fed.Cir.1984); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563 (Fed.Cir.1983); *Stratoflex, Inc. v. Aeroquip*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Corp.,* 713 F.2d 1530 (Fed.Cir.1983).

**\*2** Finally, GPC's assertion the time and cost of two trials is unduly prejudicial is unconvincing. First, GPC's assertion assumes a second trial will be held. It is because this court believes resolution of these initial claims will be either dispositive, or likely lead to settlement, that bifurcation is proper. Second, should the case ultimately result in two trials, the burdens associated with two trials will not fall unduly on any particular party. Third, GPC is not engaged in the design, manufacture, and sale of products-rather, GPC receives royalties under these patents. Thus, should there be a second trial, potential damages will have continued to accrue. Any delay will not prejudice GPC's royalties.

Since bifurcation is convenient, efficient, and will not unduly prejudice any party, the motion to bifurcate is GRANTED. Trial of the infringement and damages issues is STAYED.

### B. *Divided Discovery*

Under Fed.R.Civ.P. 42(b), "[i]t is implicit that the court also had power to limit discovery to the segregated issues."*Ellingson Timber Co. v. Great Northern Ry. Co.,* 424 F.2d 497, 499 (9th Cir.1970)."One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues."*Id.* However, GPC believes if this court bifurcates discovery it will lead to increased motion practice over what the parties should produce in the first wave of discovery, and what is relevant only later. Apparently, such discovery disputes have already started. Opp. at 2.[FN6]

> FN6. Defendants assert GPC's initial discovery request sought a broad range of information, including detailed technical and financial information which is only relevant to infringement and damages issues and is highly confidential competitive

business data. Motion at 3.

Fed.R.Civ.P. 26(g) imposes an affirmative duty on attorneys to use discovery in a responsible manner and to avoid discovery abuses. *See Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership,* 76 F.3d 1003, 1008 (9th Cir.1996). This court is confident that as the litigation proceeds the parties will adhere to the federal rules, and use their sound discretion, in conducting discovery; discovery sanctions are available if they do not. Accordingly, pending outcome of the validity and enforceability claims, discovery solely concerning the infringement and damages issues is STAYED.

C.D.Cal.,1997.
General Patent Corp. v. Hayes Microcomputer
Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 6

Westlaw.

Not Reported in F.Supp.2d                                                                           Page 1
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.))

**H**
Jackson v. Illinois Bell Telephone Co.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Philip JACKSON, Plaintiff,
v.
ILLINOIS BELL TELEPHONE COMPANY d/b/a
Ameritech Illinois, Ameritech Corp., SBC Commu-
nications, Inc., Vtech Telecommunications Limited,
Vtech Communications, Inc., Nortel Networks,
Inc., and TDS Metrocom, Inc. Defendants.
**No. 01 C 8001.**

July 8, 2002.

In patent infringement suit, two defendants moved
to dismiss for failure to state a claim. The District
Court, Castillo, J., held that the complaint included
all the factual specificity that was required under
the notice pleading standard to state a claim for pat-
ent infringement.

Motions denied.

West Headnotes

**Patents 291 ☞310.1(5)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k309 Pleading
            291k310.1 Original Bill
               291k310.1(5) k. Infringement and
Injury, Loss or Damage. Most Cited Cases
Complaint included all the factual specificity that
was required under the notice pleading standard to
state a claim for patent infringement, where com-
plaint alleged ownership of the asserted patent by
plaintiff, named each individual defendant, cited
the patent that was allegedly infringed, and de-
scribed the means by which defendants allegedly
infringed. 35 U.S.C.A. § 271.

*MEMORANDUM OPINION AND ORDER*

CASTILLO, J.
**\*1** Philip Jackson filed suit against Illinois Bell
Telephone Company d/b/a Ameritech Illinois
("Illinois Bell"), Ameritech Corp. ("Ameritech"),
SBC Communications, Inc. ("SBC"), VTech Tele-
communications Limited ("VTech Telecommunica-
tions"), VTech Communications, Inc. ("VTech
Communications"), Nortel Networks, Inc.
("Nortel"), Winstar Communications, Inc.
("Winstar") and TDS Metrocom, Inc. ("TDS Met-
rocom"), maintaining that Defendants infringed
United States Patent No. 4,596,900. Currently be-
fore the Court is SBC and Ameritech's motion to
dismiss the complaint for failure to state a claim
pursuant to Federal Rule of Civil Procedure
12(b)(6). For the reasons that follow, SBC and
Ameritech's motion to dismiss is denied. (R. 19-1.)

RELEVANT FACTS

On June 24th, 1986, the United States Patent and
Trademark Office ("PTO") issued patent number
4,596,900 ("the '900 Patent"), titled
"Phone-Line-Linked, Tone-Operated Control
Device" to Jackson. (R. 1-1, Ex. A, U.S. Patent No.
4,596,900.) The patented device detects a predeter-
mined sequence of signals sent over a telephone
line and responds with a control signal. (*Id.*) The
control signal can be used to remotely control an-
other application.(*Id.*)

Once in 1994 and twice in 1995, the PTO received
Reexamination Requests of the '900 Patent.(*Id.,* Ex.
B., U.S. Patent No. 4,596,900.) The PTO issued
two Reexamination Certificates, one in 1995 con-
firming the validity of the '900 Patent's seventeen
original claims and another in 1997 adding ninety-
nine additional patentable claims. (*Id.,* Compl. ¶¶
13-14.) Currently, numerous companies hold li-
censes under the '900 Patent.(*Id.* at ¶ 15.)

On October 17th, 2001, Jackson filed a complaint

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

charging Illinois Bell, Ameritech, SBC, VTech Telecommunications, VTech Communications, Nortel, Winstar and TDS Metrocom with patent infringement "either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271."(*Id.* at ¶ 16.)Jackson noted in the complaint that SBC "sells answering machines" and that Ameritech "provides voice mail systems." (*Id.* at ¶ 7.)

SBC moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) and (3) on the grounds that this Court lacks jurisdiction over SBC and that venue is improper. (R. 19-1, Mot. to Dismiss.) SBC and Ameritech also moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that Jackson failed to state a claim upon which relief can be granted. (*Id.*) SBC later withdrew the portion of the motion to dismiss that asserted a lack of personal jurisdiction and improper venue. (R. 35-1, Notice of Withdrawal of Portion of Mot. to Dismiss.) Presently before this Court is SBC and Ameritech's motion to dismiss pursuant to Rule 12(b)(6). After careful review in accordance with the applicable standards, the motion to dismiss is hereby denied.

## LEGAL STANDARDS

**\*2** A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998). When considering a motion to dismiss, this Court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff. *Id.* We will grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 432 (7th Cir.1993).*See also Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, "a pleading must only contain enough to allow the court and the defendant to understand the gravamen of the

plaintiff's complaint."*McCormick v. City of Chi.,* 230 F.3d 319, 323-24 (7th Cir.2000) (quotations and citations omitted).

## ANALYSIS

I. The Court Will Not Consider Matters Outside the Pleadings in a Motion to Dismiss

The Federal Rules of Civil Procedure dictate that matters outside the pleadings cannot be considered when deciding a Rule 12(b)(6) motion to dismiss. *See*Fed.R.Civ.P. 12(b).

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Id.*SBC and Ameritech's motion to dismiss, Jackson's response to the motion to dismiss, Jackson's amended response to the motion to dismiss and SBC and Ameritech's reply in support of the motion to dismiss, include information extraneous to the original facts pleaded in the complaint. Because neither party has requested that the Court convert the motion to dismiss into a Rule 56 motion for summary judgment, we focus our analysis solely on the factual allegations presented in the original complaint. For the purpose of deciding this motion, we ignore all factual allegations included as exhibits in support of or in opposition to the motion to dismiss.[FN1]

> FN1. Even if the Court had considered all the extraneous information included in the exhibits, the Court would have reached the same result with respect to this pending motion.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.))

II. Jackson's Complaint States a Claim Upon Which Relief Can Be Granted.

Patent infringement under 35 U.S.C. § 271 can take place directly, by acts of inducement or by acts of contributory infringement. 35 U.S.C. § 271(a)-(c). Direct patent infringement occurs when someone "makes, uses, offers to sell, or sells any patented invention, within the United States."*Id.* at § 271(a). Patent infringement by acts of inducement occurs when someone knowingly encourages, causes, urges or aids another in infringement. *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990); *Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 411 (5th Cir.1963). Patent infringement by acts of contributory infringement occurs when someone sells a component of a patented machine knowing that the component will be used to infringe such patent. 35 U.S.C. § 271(c).

*3 In order to plead a § 271 violation, the plaintiff need only state sufficient facts to put the alleged infringer on notice. *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000). In *Phonometrics,* the district court dismissed the complaint under Rule 12(b)(6) because the plaintiff did not include express allegations of infringement. *Id.* at 792.The Federal Circuit reversed, holding that:

Phonometrics' complaint alleges ownership of the asserted patent, names each individual defendant, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked. Thus, Phonometrics' complaint contains enough detail to allow the defendants to answer. Rule 12(b)(6) requires no more.

*Id.* at 794.Similarly, Jackson's complaint includes all the factual specificity that is required by the federal courts under the notice pleading standard. First, Jackson alleges ownership of the asserted patent by stating that he "owns all right, title and interest in and has standing to sue for infringement" of the '900 Patent. (R. 1-1, Compl.¶ 4.) Second, Jackson

names each individual Defendant. (*Id.* at ¶¶ 5-12.)Third, Jackson cites the patent that is allegedly infringed. (*Id.* at ¶ 4.) Fourth, Jackson describes the means by which Defendants allegedly infringe by pleading that "[e]ach of the defendants has infringed the patent in suit either directly or through acts of contributory infringement or inducement."(*Id.* at ¶ 16.)Jackson further alleges that Ameritech "provides voice mail systems" and that SBC "sells answering machines." (*Id.* at ¶ 7.) Finally, Jackson points to the specific sections of the patent law invoked by alleging a "violation of 35 U.S.C. § 271."(*Id.* at ¶ 16.)Thus, as the complaint includes all the factual specificity that is required under the notice pleading standard, we deny SBC and Ameritech's motion to dismiss the complaint.

CONCLUSION

For the foregoing reasons, SBC and Ameritech's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), is denied. (R. 19-1.) This Court will hold a status hearing on July 16, 2002 at 9:45 a.m. to set a firm litigation schedule for this law-suit.

N.D.Ill.,2002.
Jackson v. Illinois Bell Telephone Co.
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.