## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 08-CV-2412 |
| v. | ) ) | Honorable Judge John W. Darrah |
| | ) | Magistrate Judge Keys |
| LEHMAN BROTHERS HOLDINGS INC., and LEHMAN BROTHERS INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**PLAINTIFFS' CORRECTED APPENDIX OF UNPUBLISHED AUTHORITIES CITED IN PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO BIFURCATE PATENT INVALIDITY AND UNENFORCEABILITY FROM INFRINGEMENT AND DAMAGES**

*Asip v. Nielsen Media Research, Inc.*,
　　2004 WL 315269 (S.D.N.Y. Feb. 18, 2004)………………………………………TAB 1

*Clipco, Ltd. v. Ignite Design, LLC*,
　　2005 WL 2861032 (N.D. Ill. Oct. 28, 2005)………………………………………TAB 2

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
　　1994 WL 362186 (N.D. Ill. Jul. 11, 1994)………………………………………...TAB 3

*Digigan, Inc. v. Ivalidate, Inc.*,
　　2004 WL 203010 (S.D.N.Y. Feb. 3, 2004) ………………………………………..TAB 4

*Gen. Patent Corp. v. Microcomputer*,
　　1997 WL 1051899 (C.D. Cal. Oct. 20, 1997)……………………………………..TAB 5

*Jackson v. Illinois Bell Tel. Co.*,
　　2002 WL 1466796 (N.D. Ill. Jul. 8, 2002)………………………………………TAB 6

# APPENDIX – TAB 1



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))

Page 1

**C**
Asip v. Nielsen Media Research, Inc.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
William F. ASIP and Miklos L. Bartha, Plaintiffs,
v.
NIELSEN MEDIA RESEARCH, INC. and VNU,
Inc., Defendants.
No. 03 Civ. 5866(SAS).

Feb. 18, 2004.

**Background:** Patent holder brought infringement action against subsidiary and parent company over patent on system that enabled transmission of channel logs, over non-dedicated telephone lines, chronicling television channels viewed by subscriber.

**Holdings:** On holder's motion to dismiss, the District Court, Scheindlin, J., held that:
(1) patent holder stated claim for infringement;
(2) question of whether parent was liable for subsidiary's actions turned on factual considerations beyond scope of pleadings;
(3) complaint provided subsidiary with fair notice of infringement claims; and
(4) subsidiary's laches argument was premature.

Motion denied.

West Headnotes

**[1] Patents 291 €═►310.1(1)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k309 Pleading
            291k310.1 Original Bill
               291k310.1(1) k. In General. Most Cited Cases
Patent holder stated claim for infringement, on allegations that stated its joint ownership interest in particular patent, named particular defendants, cited patent as basis for action, described means by which defendants allegedly infringed patent, and indicated that its claims were based on defendants' willful acts of direct and indirect infringement. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[2] Patents 291 €═►310.1(1)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k309 Pleading
            291k310.1 Original Bill
               291k310.1(1) k. In General. Most Cited Cases
Patent holder stated infringement claim against parent company, even though parent owned stock in subsidiary for only 69 days before expiration of patent, where complaint otherwise provided parent with fair notice as to claims asserted against it, and question of whether parent was liable for subsidiary's actions turned on factual considerations beyond scope of pleadings, such as degree of control it exercised over subsidiary.

**[3] Patents 291 €═►310.1(5)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k309 Pleading
            291k310.1 Original Bill
               291k310.1(5) k. Infringement and Injury, Loss or Damage. Most Cited Cases
Complaint provided competitor with fair notice of infringement claims, relating to patent on system that enabled transmission of channel logs, over non-dedicated telephone lines, chronicling television channels viewed by subscriber; even though complaint did not identify which of competitor's television monitoring devices infringed upon the patent, complaint specifically stated that competitor "infringed, induced and/or contributed" to infringement of patent by "importing, making, using and/or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

Page 2

selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so." Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[4] Patents 291 ☞313**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k313 k. Dismissal Before Hearing.
Most Cited Cases
Competitor's laches argument at motion to dismiss stage was premature, since such relief turned upon whether patent holder unreasonably delayed filing of lawsuit despite having actual or constructive knowledge of competitor's infringing products and whether that delay resulted in material prejudice to competitor, and those inquiries could not be resolved on face of complaint.

**Patents 291 ☞328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
            291k328(2) k. Original Utility. Most Cited Cases
4,361,851. Cited.

Robert Rando, Levy & Stopol, LLP, Uniondale, New York, for Plaintiffs.
Lee F. Grossman, Eric P. Martin, Grossman & Flight, LLC, Chicago, Illinois, Steven H. Bazerman, Ramsaran Maharajh Jr., Bazerman & Drangel, PC, New York, New York, for Defendants.

*OPINION AND ORDER*

SCHEINDLIN, J.
*1 William Asip and Miklos Bartha bring this action against VNU, Inc. ("VNU") and Nielsen Media Research ("Nielsen") (collectively "defendants") alleging patent infringement. VNU now moves to

dismiss the Complaint for failure to state a claim, and Nielsen moves for a more definite statement under Rule 12(e). For the reasons that follow, both motions are denied.

I. BACKGROUND

Plaintiffs are New York residents and holders of Patent No. 4,361,851 (" '851 Patent").[FN1] Defendants are owners and operators of television audience measurement estimating systems and devices.[FN2]Both defendants conduct business in New York [FN3] and Nielsen is a "division" of VNU.[FN4]

> FN1. Complaint ("Compl.") ¶¶ 1, 2, 9.

> FN2.*See* Plaintiffs' Memorandum of Law in Opposition to VNU's Rule 12(b)(6) Motion ("Pl.12(b)(6) Mem.") at 1; Plaintiffs' Memorandum of Law in Opposition to Nielsen's Rule 12(e) Motion ("Pl.12(e) Mem.") at 1.

> FN3. Compl. ¶¶ 3-5; *see also* VNU's Memorandum of Law in Support of Its Rule 12(b)(6) Motion ("Def.12(b)(6) Mem.") at 2.

> FN4. Compl. ¶ 5.

The '851 patent was issued to plaintiffs on November 30, 1982 for their invention of a system that "automatically monitor[s] the selection of a Program Source made by a Subscriber."[FN5]Specifically, this system enables the transmission (over non-dedicated telephone lines) of channel logs chronicling those channels a subscriber has viewed.[FN6]Plaintiffs envisioned use of this invention with "cable television systems or over-the-air pay television scrambled systems."[FN7]But they also noted that the possible applications of this invention "are not restricted to [those relating to] Pay-TV" and could include deployment in activities such as "[o]pinion polling and preference sampling."[FN8]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))

FN5.'851 Patent, Ex. 1 to Compl. In considering a motion to dismiss, courts may not consider matters outside the pleadings. *See* *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). The complaint includes " 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." ' *Id.* (quoting *International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)); *see also* Fed.R.Civ.P. 10(c). Accordingly, the '851 Patent is treated as part of the Complaint.

FN6.*See* '851 Patent.

FN7.*Id.*

FN8.*Id.*

Plaintiffs allege that defendants have infringed, induced, and/or contributed to the infringement of "at least" Claim One of the '851 Patent.[FN9] Claim One covers:

FN9. Compl. ¶¶ 11, 14. The '851 Patent covers six claims. *See* '851 Patent.

A television-use monitoring device for direct electrical connection to a telephone line, comprising:

(a) coupling means coupled to said television for detecting when said television is actively receiving a predetermined channel and producing, in response thereto a program selection signal indicating the active reception of a particular program selection;

(b) timer means for providing timing information;

(c) transient memory means responsive to said coupling means to store, in response to a first control signal, said program selection signal associated with a particular program whose active reception has been detected;

(d) second memory means responsive to said transi-

ent memory means to receive the output of said transient memory means in response to a second control signal and produce the same at its output in response to a third control signal;

(e) control means responsive to said timer for periodically causing said transient memory means to store any program selection signal present in the system, and reading the contents of said transient memory means, and responsive to said transient memory means to cause said transient memory means to transfer its contents to said second memory means in response to the detection of said program selection at one point in time and a second detection of the same program selection a predetermined period of time thereafter;

(f) interface means, responsive to said control means and said second memory means to encode said program selection signal for transmission; and

**\*2** (g) transmission coupling means, responsive to said interface means, to couple the output of said interface means to conventional telephone lines and transmit said program selection to a central billing facility.[FN10]

FN10.'851 Patent.

Defendants allegedly knew of and intentionally infringed the '851 Patent by "importing, making, using and/or selling products which use and/or encompass [,] store[,] and forward technology with the use of a telephone line for data transmission in the television industries."[FN11] Plaintiffs contend that defendants' unlawful conduct began prior to and continued through the '851 Patent's expiration date in January 2000.[FN12]

FN11. Compl. ¶ 10; *see also* *id.* ¶¶ 14-16.

FN12.*Id.* ¶¶ 10-11, 15.

II. APPLICABLE LAW

A. Legal Standard

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

1. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " [FN13] "A court's task 'in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' [FN14] Accordingly, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. [FN15]

> FN13.*Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003).

> FN14.*Levitt v. Bear Stearns & Co., Inc.,* 340 F.3d 94, 101 (2d Cir.2003) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998)).

> FN15.*See Chambers,* 282 F.3d at 152;*Levitt,* 340 F.2d at 101.

2. Rule 12(e)

Under Rule 12(e), if a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."[FN16]Rule 8(a) provides that a plaintiff need only plead "a short and plain statement of the claim" that will provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests.[FN17]" '[I]f [a] complaint complies with the liberal pleading requirements of [Rule 8(a) ], then the Rule 12(e) motion should be denied." ' [FN18] Notably, because the purpose of the Rule is to "strike at un-

intelligibility rather than want of detail and ... allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." FN19Therefore, "the tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings." [FN20]

> FN16.Fed.R.Civ.P. 12(e).

> FN17.Fed.R.Civ.P. 8(a); *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

> FN18.*Vapac Music Publ'g, Inc. v. Tuff'N'Rumble Mgmt.,* No. 99 Civ. 10656, 2000 WL 1006257, at *6 (S.D.N.Y. July 19, 2000) (quoting *Tom Kelley Studios Inc. v. International Collectors Soc'y Inc.,* No. 97 Civ. 0056, 1997 WL 598461, at *1 (S.D.N.Y. Sept. 25, 1997)).

> FN19.*Markovic v. New York City Sch. Constr. Auth.,* No. 99 Civ. 10339, 2000 WL 1290604, at *3 (S.D.N.Y. Sept.13, 2000) (quotation marks and citation omitted).

> FN20.*Id.;see also Vapac Music Publ'g,* 2000 WL 1006257, at *6 (noting that Rule 12(e) motions are disfavored).

B. Patent Infringement

To state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself."[FN21]A complaint for patent infringement need only meet the following requirements: "[ (1) allege] ownership of the asserted patent, [ (2) ] name[ ] each individual defendant, [ (3) ] cite[ ] the patent that is allegedly infringed, [ (4) ] describe[ ] the means by which the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

defendants allegedly infringe, and [ (5) ] point[ ] to the specific sections of the patent law invoked."FN22

> FN21.*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000); *accordDigiGAN, Inc. v. iValidate, Inc.,* No. 02 Civ. 0420, 2004 WL 203010, at *4 (S.D.N.Y. Feb.3, 2004).

> FN22.*Phonometrics,* 203 F.3d at 794;*accordDigiGAN,* 2004 WL 203010, at *4.

### III. DISCUSSION FN23

> FN23. As an initial matter, I note plaintiffs' argument that both Rule 12 motions should be rejected because of defendants' failure to abide by my Individual Rules and Procedures. *See* Pl. 12(b)(6) Mem. at 9; Pl. 12(e) Mem. at 7. Because parties are expected to be familiar with these rules, defendants are reminded that the rules are available at this Court's website. *See* Individual Rules and Procedures, http://www.nysd. uscourts.gov/Individual_Practices/Scheindl in.pdf.

> The rules clearly state that, prior to bringing a motion to dismiss, "the parties *must* exchange letters" and "must certify that pre-motion letters were exchanged."*Id.* at 3 (emphasis added)."The parties should attempt to eliminate the need for these motions based on this exchange of letters," while recognizing that leave to amend will be freely granted. *Id.* Defendants' failure to follow these rules has led them to engage in what appears to be unnecessary motion practice. This highlights precisely those consequences that the rule is intended to avoid, *e .g.,* needlessly delayed litigation and wasted judicial resources.

### A. VNU's Rule 12(b)(6) Motion

**\*3** [1][2] The Complaint satisfies the pleading requirements of Rule 8 because it: (1) alleges plaintiffs' joint ownership of the '851 Patent,FN24 (2) names VNU and Nielsen as defendants,FN25 (3) cites the '851 Patent as the basis for the action,FN26 (4) describes the means by which defendants allegedly infringed the '851 Patent,FN27 and (5) indicates that their claims are based on defendants' willful acts of direct and indirect infringement.FN28However, VNU argues that the action against it should be dismissed because it has never "engaged in any of the allegedly infringing activities." FN29Rather, VNU contends that those acts were committed by its subsidiary, Nielsen, which was acquired on October 27, 1999, sixty-nine days prior to the expiration of the '851 patent.FN30 As VNU puts it, "[its] sole relationship with [Nielsen] as relates to this case is this 69 day period during which it owned the stock of [Nielsen] but had no direct involvement in its operations." FN31

> FN24.*See* Compl. ¶ 9.

> FN25.*Seeid.* ¶¶ 3, 5, 10, 11.

> FN26.*Seeid.* ¶¶ 9-15.

> FN27.*Seeid.* ¶¶ 9-11.

> FN28.*Seeid.* ¶¶ 10-12.Specifically, patent infringement claims are governed by 35 U.S.C. § 271. Direct infringement occurs when a person, without authority, infringes a patent by making, using, offering to sell, or selling any patented invention. *See*35 U.S.C. § 271(a). Indirect infringement occurs when a person induces the infringement of a patent by another or contributes to a patent's infringement through its activities. *See*35 U.S.C. § 271(b)-(c).

> FN29. Def. 12(b)(6) Mem. at 2.

> FN30.*Seeid.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

FN31.*Id.* at 2-3 (alternation in original).

VNU has not demonstrated that plaintiffs cannot prove any set of facts in support of their patent infringement claims. *First,* plaintiffs' allegations as pled are sufficient because they provide VNU with fair notice as to the claims asserted against it. As plaintiffs correctly point out, VNU's motion is "merely a statement of its belief that it has not engaged in any direct infringement which is more appropriately stated as a denial in answer to the [Complaint]."[FN32]*Second,* even if plaintiffs' infringement claims against VNU are premised solely on its status as "a holding company" for subsidiary Nielsen, whether VNU is liable for Nielsen's actions turns on factual considerations (*e.g.,* the degree of control that VNU exercised over Nielsen) that are beyond the scope of the pleadings.[FN33]Thus, contrary to VNU's argument that "[t]he timing of the dismissal is irrelevant,"[FN34] the fact that VNU brings this motion at the pleading stage is critical.

FN32. Pl. 12(b)(6) Mem. at 8.

FN33. Not surprisingly VNU submitted a Joint Declaration in an attempt to factually support its arguments. *See* Joint Declaration of Michael E. Elias and David A. Schwartz-Leeper, Ex. A to Def. 12(b)(6) Mem. But for purposes of a motion brought under Rule 12(b)(6), a court cannot consider documents outside of the pleadings. *See*Chambers, 282 F.3d at 152.

FN34. VNU's Reply Memorandum of Law in Further Support of Its Rule 12(b)(6) Motion at 4.

B. Nielsen's Rule 12(e) Motion

[3] Nielsen argues that because plaintiffs' " 'bear-bones' [sic] Complaint" does not identify which of Nielsen's television monitoring devices infringe the '851 Patent, the Complaint fails to satisfy Rule 8's pleading requirements.[FN35]But the Com-

plaint specifically states that Nielsen "infringed, induced and/or contributed" to the infringement of the '851 Patent by "importing, making, using and/or selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so to, and including, January 2000."[FN36]These allegations are not "so vague or ambiguous" that Nielsen cannot be "reasonably ... required to frame a responsive pleading" to the Complaint.[FN37]As the Complaint provides fair notice of plaintiffs' patent infringement claims, it comports with the pleading requirements set forth in Rule 8.[FN38]

FN35. Nielsen's Memorandum of Law in Support of Its Rule 12(e) Motion ("Def.12(e) Mem.") at 2.

FN36. Compl. ¶ 11.

FN37.Fed.R.Civ.P. 12(e).

FN38.*See*supra Part III.A. Moreover, Form 16 of the Appendix of Forms to the Federal Rules of Civil Procedure, which provides a sample patent infringement complaint, states simply that "[d]efendant has for a long time past been and still is infringing [plaintiff's] Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court."Courts have found that a complaint providing at least as much information as this sample complaint is sufficient to withstand a Rule 12(e) motion. *See*Dome Patent L .P. v. Permeable Techs., Inc., 190 F.R.D. 88, 90-91 (W.D.N.Y.1999) (citing OKI Elec. Indus. Co. v. LG Semicon Co., No. 97 Civ. 20310, 1998 WL 101737, at *3-4 (N.D.Cal. Feb.25, 1998), and Soli-Tech, Inc. v. Halliburton Co., No. 97 Civ. 10232, 1993 WL 315358, at *3 (E.D.Mich. Jan.26, 1993)). Plaintiffs' allegations of infringement by "products which use and/or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.))**

encompass store and forward technology with the use of a telephone line for data transmission in the television industries" are at least as specific as those involving "electric motors embodying the patented invention."Compl. ¶ 11.

[4] Nielsen also contends that the doctrine of laches requires plaintiffs to "specifically identify [Nielsen's] allegedly infringing products."[FN39]In particular, Nielsen argues that plaintiffs' allegations either (1) cover activities that Nielsen has undertaken for the twenty years since the '851 patent was issued and "[b]y definition" the doctrine of laches applies; or (2) Nielsen "must have some new product, or must have modified an old product in a way [ ] that allegedly infringes the '851 Patent" and must identify that product.[FN40]But, at this stage of the proceedings, Neilsen's laches argument is premature. Relief pursuant to the doctrine of laches turns on (1) whether a plaintiff unreasonably delayed the filing of her lawsuit despite having actual or constructive knowledge of the defendant's infringing products and (2) whether that delay resulted in material prejudice to defendant.[FN41]Where these inquiries cannot be resolved on the face of the complaint, they are questions properly reserved for summary judgment, after discovery has concluded. Here, the laches defense cannot be resolved solely from a review of the Complaint.

FN39. Def. 12(e) Mem. at 3.

FN40.*Id.* at 4 (citing *A.C. Aukerman Co. v. R.L. Chaides Contr. Co.,* 960 F.2d 1020 (Fed.Cir.1992) and *Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358 (Fed.Cir.2001). Notably, both cases upon which Nielsen relies involve the application of the doctrine of laches at the summary judgment stage.

FN41.*SeeEcolab,* 264 F.3d at 1371;*A.C. Aukerman Co.,* 960 F.2d at 1032.

## IV. CONCLUSION

*4 For the foregoing reasons, both VNU's motion to dismiss and Nielsen's motion for a more definite statement are denied. The Clerk of the Court is directed to close these motions (numbers 13 and 17 on the docket sheet). A conference is scheduled for February 26, 2004, at 2:45 p.m.

SO ORDERED:

S.D.N.Y.,2004.
Asip v. Nielsen Media Research, Inc.
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 2



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.))

Page 1

**H**
Clipco, Ltd. v. Ignite Design, LLC
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
CLIPCO, LTD. Plaintiff,
v.
IGNITE DESIGN, LLC, Defendant.
**No. 04 C 5043.**

Oct. 28, 2005.

Gregory E. Upchurch, Husch & Eppenberger, LLC,
St. Louis, MO, Kenneth Matthew Abell, Stephen
Novack, Novack & Macey, Chicago, IL, for Plaintiff.
Keith V. Rockey, Kathleen Ann Lyons, Matthew
Joseph Gryzlo, Wallenstein Wagner & Rockey,
Ltd., Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

CONLON, J.
**\*1** Clipco, Ltd. ("Clipco") sues Ignite Design, LLC
("Ignite") for patent infringement pursuant to 35
U.S.C. § 271*et seq.* and breach of a license agree-
ment. The court granted Clipco's summary judg-
ment motion in part finding Ignite's Extreme Tum-
bler Mug infringes claims 2-7, 20, and 21 of
Clipco's United States Patent No. 5,270,909 ("the
'909 patent") entitled "Openable Handle Attach-
ment." *See* Memorandum Opinion and Order, No.
04 C 5043,Dkt. No. 56 (N.D.Ill. Aug. 1, 2005). The
motion was denied in part because a material issue
of fact exists regarding whether Ignite's Extreme
Coffee Press infringes the '909 patent. *Id.* Ignite
moves *in limine* to bar evidence at trial.

DISCUSSION

Evidence is excluded on a motion *in limine* only if
the evidence is clearly inadmissible for any pur-
pose. *Hawthrone Partners v. AT & T Technologies,*

831 F.Supp. 1398, 1400 (N.D.Ill.1993). Motions *in
limine* are disfavored; admissibility questions
should be ruled upon as they arise at trial. *Id.* Ac-
cordingly, if evidence is not clearly inadmissible,
evidentiary rulings must be deferred until trial to al-
low questions of foundation, relevancy, and preju-
dice to be resolved in context. *Id.* at 1041.Denial of
a motion *in limine* does not indicate evidence con-
templated by the motion will be admitted at trial.
Instead, denial of the motion means the court can-
not or should not determine whether the evidence in
question should be excluded before trial.*United
States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989).

A. Alternative Damages Theory (No. 1)

Ignite argues that Clipco should be prohibited from
presenting an alternative damages theory through
its expert, Mark Hoffman. In response to Ignite's
motion, Clipco withdrew its alternative damages
theory. Accordingly, Ignite's motion *in limine* is
moot.

B. Clipco's Technical Expert (No. 2)

Ignite's second motion *in limine* seeks to limit
Clipco's introduction of infringement evidence
through the expert testimony of Professor Virgil
Flanigan. Ignite states Clipco failed to submit an
expert report on the issue of infringement in com-
pliance with the court's October 22, 2004 discovery
schedule. No. 04 C 5043, Dkt. No. 27.In compli-
ance with the scheduling order, both parties submit-
ted initial expert reports on issues for which it was
their respective burden of proof. Although Clipco
did not file an initial expert report on the issue of
infringement, Ignite filed a rebuttal expert report on
non-infringement. Clipco filed a motion to strike
Ignite's expert report, arguing that the report was
improper because infringement was not addressed
in Clipco's initial expert disclosures. Clipco argued
that rebuttal reports are limited to issues submitted

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.))

in the initial expert reports. The court considered Clipco's arguments and declined to strike Ignite's expert report on non-infringement. No. 04 5043, Dkt. No. 53 (N.D. Ill. June 15, 2005). The court, however, permitted Clipco to submit a rebuttal expert report on infringement. *Id.*

**\*2** Ignite argues that Clipco failed to identify its technical expert on infringement in compliance with the scheduling order and Rule 26. Ignite contends Clipco should be precluded from offering any expert testimony on infringement, or in the alternative, should be limited to presenting such evidence in its rebuttal case. Clipco responds that following the court's claim construction, only minor and straightforward issues needed to be determined to prove infringement. Based on the simplicity of the issues, Clipco concluded expert testimony was unnecessary. Ignite's rebuttal report on infringement necessitated Clipco's presentation of expert testimony on infringement at trial.

The moving party bears the burden of presenting sufficient evidence to meet the high standard applicable to an *in limine* motion. *Pivot Point Int'l v. Charlene Products, Inc.,* No. 90 C 6933, 1996 WL 284940, at \*2 (N.D.Ill. May 23, 1996) (denying motion *in limine* where moving party failed to attach relevant deposition); *Plair v. E.J. Branch & Sons, Inc.* 864 F.Supp. 67, 69 (N.D.Ill.1994). Ignite fails to attach the relevant expert report to its motion.[FN1] Thus, it fails to present sufficient evidence to permit the court to rule on its motion. Accordingly, Ignite's motion *in limine* to preclude Clipco's expert testimony on infringement must be denied.

> FN1. The parties fail to comply with the local rule establishing pretrial procedure, which requires the parties to attach stipulations or statements setting forth the qualifications of each expert witness to be read to the jury when the expert witness takes the stand. L.R. 16.1.1.2(e).

Clipco requests that the court permit Dr. Flanigan to testify prior to November 10th, the date it expects to present rebuttal evidence, because he is unable to attend the trial on that date. The present record does not provide a sufficient basis to fully evaluate the proper scope of Dr. Flanigan's testimony. Ruling on Clipco's request to permit Dr. Flanigan to testify regarding infringement prior to November 10th must therefore be reserved until trial.

C. Summary Judgment (No. 3)

Ignite requests that Clipco be prohibited from referring to the court's summary judgment ruling that its Extreme Tumbler Mug infringes the claims of the '909 patent. Ignite argues that the issue of whether the Extreme Tumbler Mug infringes has been conclusively determined and, thus, any evidence relating to its infringement is not relevant under Fed.R.Civ.P. 402. Ignite further argues that any relevance of the court's finding of infringement is outweighed by the danger of unfair prejudice. Fed.R.Civ.P. 403. Clipco responds that although the court determined the Extreme Tumbler Mug infringes the '909 patent, evidence pertaining to its mug is still relevant because the jury must decide whether Ignite breached its license agreement with Clipco. Clipco also argues that the summary judgment ruling is directly relevant to infringement of the '909 patent by the Extreme Coffee Press and its response to Ignite's invalidity defense.

Ignite's motion *in limine* to exclude reference to the court's summary judgment ruling must be granted. In the jury's presence, neither party shall refer to the court's summary judgment ruling, its factual findings, or rulings of law. The court's ruling on summary judgment was a matter of law on discrete issues based on the record presented by the parties. *Mi-Jack Products v. Int'l Union of Operating Engineers,* No. 94 C 6676, 1995 WL 680214, at \*2 (N.D.Ill. Nov.14, 1995). The issues on which summary judgment was granted will not be before the jury. *Id.;Sunstar, Inc. v. Alberto-Culver Co., Inc.,* No. 01 C 0736, 2004 WL 1899927, at \*2-3 (N.D.Ill. Aug.23, 2004) (issues decided as matter of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.))

law are not relevant during trial); *Smithkline Beecham Corp. v. Apotex Corp.,* No. 98 C 3852, 2002 WL 1613724, at *1 (N.D.Ill. July 17, 2002) (issues determined in summary judgment have no purpose or place at trial). Where the court determined that genuine issues of material fact exist, the jury will be the finder of fact based on the evidence at trial. Without referring to its summary judgment ruling, the court shall inform the jury that for the purposes of deciding the breach of contract claim and the invalidity defense, the Extreme Tumbler Mug infringes the '909 patent.

**\*3** Ignite requests that the trial be bifurcated, so that the jury may first consider the issues of fact concerning infringement of the '909 patent by the Extreme Coffee Press and whether the asserted claims of the '909 patent are valid in view of the prior art. Ignite contends that if the jury learns the Extreme Tumbler Mug infringes the '909 patent prior to its determining infringement of the Extreme Coffee Press, it will impermissibly compare the two products rather than comparing the Extreme Coffee Press to the asserted claims. Thus, Ignite argues, without bifurcation there is substantial risk that the jury will find the Extreme Coffee Press infringes the '909 patent on an improper basis.

Clipco responds that bifurcation is inappropriate because the sales of all infringing products are relevant to the validity issue. According to Clipco, evidence of the Extreme Tumble Mug would arise in the initial phase of a bifurcated trial. Clipco concludes that any prejudice from the court informing the jury that the Extreme Tumble Mug infringes the '909 patent can be cured by a limiting jury instruction.

The court may order a separate trial of any claim or issue in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. Fed.R.Civ.P. 42(b). Bifurcation in patent cases, as in others, is the exception and not the rule. *Pfizer Inc. v. Novopharm Ltd.,* No. 00 C 1475, 2000 WL 1847604, at *1 (N.D.Ill.Dec.14, 2000). The decision to order separ-

ate trials is made on a case-by-case basis and is committed to the sound discretion of the trial court. *Id.* (courts should consider evidentiary overlap, risk of duplication and delay and possibility of first trial phase obviating need for trial of subsequent issues). The party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials. *Reber v. Samsung Electronics Am., Inc.,* 220 F.R.D. 533, 536 (N.D.Ill.2004). Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. *Id.;Mopex, Inc. v. Chicago Stock Exchange, Inc.,* No. 01 C 302, 2003 WL 715652, at *9 (N.D.Ill. Feb.27, 2003) (bifurcation denied because it would result in increased delay, expense, and inconvenience).

Ignite has not sufficiently justified bifurcating the trial. The infringement, invalidity, enforceability, and breach of contract evidence is intertwined to the extent that many of the same documents and witnesses would be presented at two different trials if bifurcation is granted. *Mitutoyo Corp. v. Central Purchasing, Inc.,* No. 03 C 0990, 2004 WL 635064, at *2 (N.D.Ill. March 31, 2004). Additionally, whether the license agreement was breached must be adjudicated whether or not the jury finds the Extreme Coffee Press infringes. Thus, the interests of judicial efficiency would not be served by bifurcating a four-day trial. Moreover, the concern that the jury might perceive infringement by the Extreme Tumbler Mug in an improper way can be addressed by a limiting jury instruction. *See Dataquill Ltd. v. Handspring, Inc.,* No. 01 C 4635, 2004 WL 1102309, at *2 (N.D.Ill. May 4, 2004) (possibility of prejudice from evidence concerning defendant's valid patents best addressed through an appropriate jury instruction). Ignite's request for bifurcation must be denied.

D. Motion No. 4

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.))**

**\*4** Ignite withdrew this motion on October 11, 2005.

### CONCLUSION

For the foregoing reasons, Ignite's motions *in limine* 1 and 2 are denied. Motion *in limine* 3 is granted in part and denied in part.

N.D.Ill.,2005.
Clipco, Ltd. v. Ignite Design, LLC
Not Reported in F.Supp.2d, 2005 WL 2861032 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 3



Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.), 34 U.S.P.Q.2d 1474
**(Cite as: Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.))**

Page 1

**H**
C.R. Bard, Inc. v. M3 Systems, Inc.
N.D.Ill.,1994.

United States District Court, N.D. Illinois, Eastern
Division.
C.R. BARD, INC., Plaintiff-Counterdefendant,
v.
M3 SYSTEMS, INC., Defendant-Counterclaimant.
**No. 93 C 4788.**

July 11, 1994.

*MEMORANDUM OPINION AND ORDER*

CONLON, District Judge.
**\*1** In this contentious case, C.R. Bard, Inc.
("Bard") sues M3 Systems, Inc. ("M3 Systems")
for patent infringement. On June 7, 1994, this court
severed the trial into four segments: (1) M3 Sys-
tems' alleged infringement of Bard's patents; (2) the
validity of Bard's patents; (3) Bard's alleged anti-
trust violations; and (4) if necessary, damages for
patent infringement or an antitrust violation.
Memorandum Opinion and Order, 93 C 4788
(N.D.Ill. June 7, 1994). M3 Systems moves for re-
consideration and/or clarification of this court's
June 7, 1994 quadrification order.

*DISCUSSION*

1. Reconsideration

M3 Systems moves for reconsideration of this
court's decision to separate the infringement and
validity inquiries into two separate phases of the
trial. M3 Systems argues that the infringement and
validity stages should be combined into a single tri-
al on liability. Alternatively, if the two inquiries are
not combined, M3 Systems argues that their se-
quence should be reversed; *i.e.,* that the jury should
determine the validity/enforceability of Bard's pat-

ents before deciding whether M3 Systems infringed
Bard's patents.

There is a lively debate within the legal community
regarding management of patent infringement tri-
als. In 1987, Howard T. Markey, then Chief Judge
of the United States Court of Appeals for the Feder-
al Circuit, wrote an article entitled "On Simplifying
Patent Trials." 116 F.R.D. 369 (1987). Judge Mar-
key suggested that the plaintiff's case-in-chief in
patent infringement cases be limited to the present-
ation of evidence on the infringement claim; evid-
ence of the patent's validity should only be intro-
duced (in the defendant's rebuttal case) if the
plaintiff has introduced sufficient evidence of in-
fringement. Judge Markey explained that:

[E]very patentee's suit for infringement that in-
volves an invalidity defense is composed of two
separate trials. The first is on infringement. In that
trial the patentee alone has the burden and should
go first and last. The second trial is on the invalid-
ity defense. In that trial, the defendant alone has the
burden and should go first and last. When the judge
does not issue a Rule 42(b) order, therefore, in-
fringement should still be tried first and the invalid-
ity defense should be tried (if necessary) second.

*Id.* at 378. Judge Markey's article sparked discus-
sion.

At the Sixth Annual Conference of the United
States Court of Appeals for the Federal Circuit,
held in Washington, D.C. on May 13, 1988, the pat-
ent and trademark breakout session included a de-
bate of Judge Markey's bifurcation proposal by two
patent attorneys and a discussion by judges and
scholars. 122 F.R.D. 281, 397-421 (1988). A 1989
article by Rita Mankovich Irani summarized the bi-
furcation debate and, disagreeing with Judge Mar-
key's proposal, suggested alternatives to bifurca-
tion. Rita Mankovich Irani, "The New Skirmish in
Patent Cases: Who Goes First at Trial and with
What Evidence?", 17 *Am.Intell.Prop.L. Ass'n Q.J.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                          Page 2
Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.), 34 U.S.P.Q.2d 1474
(Cite as: Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.))

364 (1989).

**\*2** Thus, whether to bifurcate patent infringement cases into separate trials on infringement and validity is an ongoing debate within the patent bar. There is not one correct way to manage a complex patent case such as this one. Instead, judges have broad discretion to separate trials in order to avoid jury confusion and to foster clarity and economy. *See* Fed.R.Civ.P. 42(b); *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed.Cir.1987).

M3 Systems is correct that "[c]laim interpretation, the central focus and hotly contested issue in any infringement analysis, cannot take place in a vacuum." Mot. at 1. This court understands that the jury's consideration of infringement requires the introduction of significant background information. However, this court disagrees with M3 Systems' assertion that trying the infringement segment first will "deprive[ ] the jury of a logical and complete presentation of this essential claim interpretation background or [ ] will be redundant when the issues of invalidity and unenforceability are reached." Mot. at 2.

First, the jury will need to hear the factual background of the case no matter which segment is tried first. Second, the court has discussed with counsel the procedural safeguards it plans to institute to assist the jury and to alleviate the need for redundant testimony. As the court explained at the pretrial conference on June 9, 1994, the court reporter will prepare a transcript of the proceedings for the jury that excludes objections, sidebar discussions and any evidence that is stricken ("the sanitized transcript"). June 9, 1994 transcript at 9-10. Thus, testimony need not be repeated; instead, when seeking to rely on testimony elicited during one segment of the trial to support an argument in another segment, counsel may simply designate the relevant pages in the sanitized transcript to be resubmitted to the jury. *Id.* at 10, 12. While witnesses may be recalled to testify on different issues, they may not be recalled to repeat previous testimony. *Id.* at 15. Thus, M3 Systems' concerns about presenting testimony twice-redundancy, potential inconsistencies-are moot.

A recent Northern District of Illinois case cited by M3 Systems provides support for bifurcating the infringement and validity inquiries, in that sequence. In his decision in *Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation* (a bench trial), Judge Easterbrook, sitting by designation on this court, first considered whether the defendant infringed the plaintiff's patent for a certain type of hemodialysis catheter. 831 F.Supp. 1354, 1357 (N.D.Ill.1993). After concluding that the defendant's catheter infringed on the plaintiff's patent, Judge Easterbrook proceeded to consider the validity of the plaintiff's patent. *Id.* at 1361. It appears that Judge Easterbrook heard the evidence regarding both the infringement and validity claims together, then organized his opinion to discuss infringement first, validity second. The need to separate the inquiries was clear to Judge Easterbrook, as was the logical order of addressing the claims: first infringement, then validity.

**\*3** In this case, where the jury will not have the benefit, as did Judge Easterbrook in the *Mahurkar* case, of being involved with the litigation for at least three years, it is well within this court's discretion to separate the infringement and validity inquiries at trial. The same jury will hear the evidence in each segment. This procedure should reduce the significant potential for jury confusion over a myriad of complex issues, while conserving scarce jury resources. M3 Systems submits no persuasive reason to combine the infringement and validity inquiries or to reverse their order. The quadrification of the trial articulated in this court's June 7, 1994 decision must stand.

2. Clarification

In its June 7, 1994 ruling, this court explained that its decision to sever the trial into four separate inquiries stems from "the complexity of the issues, the inordinate volume of jury instructions, and the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 3
Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.), 34 U.S.P.Q.2d 1474
**(Cite as: Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.))**

impracticable number and specificity of special interrogatories." June 7, 1994 decision at 2. In a footnote, the court explored some of the potential permutations that may arise from the quadrifurcated trial. Specifically, the court noted that:

In the first step, if the jury finds no infringement, then there is no need for step two (determination of patent validity). If the jury finds infringement, then the trial proceeds to step two: whether the patents are valid. If so, then there is no need for step three (antitrust counterclaim). If Bard loses on either steps one or two (*i.e.,* there is no infringement or the patents are invalid), then the trial proceeds to step three: the antitrust counterclaim. Finally, after all the claims are resolved, step four is a proceeding to determine damages, if necessary, for either patent infringement or an antitrust violation.

June 7, 1994 decision at 2 n. 1.

In this footnote, the court incorrectly concluded that the validity segment of the trial may be obviated by a finding of no infringement. In fact, the validity segment of the trial is required even if the jury does not find infringement, because the validity/ enforceability of Bard's patents is relevant to (1) whether this is an exceptional case entitling M3 Systems to attorneys fees and (2) the antitrust inquiry. Of course, the parties could settle their dispute in part or in full at any point in the quadrifurcated proceedings, obviating the need for some or all of the remaining segments of the trial. Since footnote one in this court's June 7, 1994 decision misstates some potential outcomes, it is confusing and must be deleted.

*CONCLUSION*

Defendant M3 Systems' motion for reconsideration of this court's June 7, 1994 decision is denied. Defendant M3 Systems' motion for clarification of this court's June 7, 1994 decision is granted. Footnote 1 on page 2 of this court's June 7, 1994 decision is stricken.

N.D.Ill.,1994.
C.R. Bard, Inc. v. M3 Systems, Inc.
Not Reported in F.Supp., 1994 WL 362186 (N.D.Ill.), 34 U.S.P.Q.2d 1474

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 4



Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

**H**
Digigan, Inc. v. Ivalidate, Inc.
S.D.N.Y.,2004.

United States District Court,S.D. New York.
DIGIGAN, INC. Plaintiff,
v.
IVALIDATE, INC. d/b/a Plenar, MDM Group,
Inc., and TIE Technologies, Inc. f/k/a Global Wide
Web, Inc. Defendants.
**No. 02 Civ. 420(RCC).**

Feb. 3, 2004.

**Background:** Lender sued debtor, party that allegedly had bought collateral, including patents, which had secured loan and on which lender allegedly had foreclosed, and purported buyer's licensee, asserting claims for alleged violations of Lanham Act, state unfair competition and consumer protection laws, declaration that it was rightful owner of collateral, and injunction barring infringement of its rights in collateral. Defendants moved to dismiss.

**Holdings:** The District Court, Casey, J., held that:
(1) allegations supported claim for declaration that lender was rightful owner of collateral;
(2) complaint asserted claim for patent infringement;
(3) allegations did not support Lanham Act claim;
(4) complaint did not support claim for unfair competition under New York law;
(5) complaint did not state claims for violations of New York consumer protection statutes; and
(6) prediscovery assertion that purported buyer's principal place of business was in New York was sufficient to establish personal jurisdiction under rule allowing court to provisionally accept disputed factual allegations as true.

Motions granted in part and denied in part.

West Headnotes

**[1] Declaratory Judgment 118A ⇐⇒328**

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(D) Pleading
            118Ak327 Motion to Strike or Dismiss Complaint, Petition or Bill
                118Ak328 k. Grounds of Motion. Most Cited Cases
Argument that lender breached advance agreement, rendering security agreement void, was possible defense rather than ground for dismissing, for failure to state claim, lender's claim seeking declaration that it was rightful owner of collateral upon which it purportedly had strictly foreclosed, given that nothing in complaint, advance letter, or security agreement allowed court to determine that lender breached advance letter without making factual findings. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; McKinney's Uniform Commercial Code § 9-620.

**[2] Secured Transactions 349A ⇐⇒148.1**

349A Secured Transactions
    349AIII Construction and Operation
        349AIII(B) Rights as to Third Parties and Priorities
            349Ak148 Actions to Determine and Establish Rights
                349Ak148.1 k. In General. Most Cited Cases
Allegations that lender notified debtor of its intent to strictly foreclose upon collateral in satisfaction of debtor's loan obligations and that debtor did not object to foreclosure asserted claim, under New York's version of Uniform Commercial Code (UCC), that lender was rightful owner of collateral, notwithstanding debtor's contention that collateral was sold before lender's notice was given and that lender failed to allege that buyer was notified of proposal to strictly foreclose, inasmuch as reasonable inference from allegation that lender had complied with UCC requirements was that buyer had

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))

neither claimed interest in collateral nor held perfected security interest. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; McKinney's Uniform Commercial Code § 9-620.

**[3] Declaratory Judgment 118A ☞328**

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(D) Pleading
            118Ak327 Motion to Strike or Dismiss Complaint, Petition or Bill
                118Ak328 k. Grounds of Motion. Most Cited Cases
Whether monies advanced represented deposit, rather than loan, was factual dispute that could not be decided on purported debtor's motion to dismiss purported lender's claim seeking declaration that it was rightful owner of collateral upon which it allegedly had strictly foreclosed. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Declaratory Judgment 118A ☞188**

118A Declaratory Judgment
    118AII Subjects of Declaratory Relief
        118AII(I) Liens and Priorities
            118Ak188 k. In General. Most Cited Cases

**Declaratory Judgment 118A ☞318**

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(D) Pleading
            118Ak312 Complaint, Petition or Bill
                118Ak318 k. Property, Conveyances and Incumbrances. Most Cited Cases
Purported lender asserted claim for declaratory relief when purported lender alleged facts suggesting that it was rightful owner of patents which had served as collateral for loan and that purported debtor, purported buyer of collateral, and purported buyer's licensee had asserted ownership of patents, and when purported debtor contested purported lender's claimed ownership rights, raising contro-

versy involving ownership of patents that would be resolved by requested declaratory relief. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[5] Patents 291 ☞310.1(2)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k309 Pleading
                291k310.1 Original Bill
                    291k310.1(2) k. Title and Right of Complainant. Most Cited Cases

**Patents 291 ☞310.1(5)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k309 Pleading
                291k310.1 Original Bill
                    291k310.1(5) k. Infringement and Injury, Loss or Damage. Most Cited Cases
Complaint asserted claim for patent infringement when it alleged that plaintiff, as secured creditor, acquired ownership of identified patents through strict foreclosure on collateral, and that both buyer to which debtor purportedly had sold patents and buyer's licensee had violated patent statute by "making, using, offering to sell, and/or selling the invention claimed" in patents. 35 U.S.C.A. § 271(a).

**[6] Antitrust and Trade Regulation 29T ☞48**

29T Antitrust and Trade Regulation
    29TII Unfair Competition
        29TII(A) In General
            29Tk48 k. Assertion of Rights. Most Cited Cases
    (Formerly 382k870(1) Trade Regulation)
Allegations that, in marketing their products, defendants falsely stated that they owned patent which lender had received from debtor under security agreement did not assert that defendants had made false and misleading misrepresentations re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))

specting any good or service, and thus did not sup-
port claim for alleged violation of Lanham Act.
Lanham Trade-Mark Act, § 43(a), as amended, 15
U.S.C.A. § 1125(a).

### [7] Antitrust and Trade Regulation 29T ☞76

29T Antitrust and Trade Regulation
   29TII Unfair Competition
     29TII(B) Actions and Proceedings
       29Tk74 Pleading
         29Tk76 k. Particular Cases. Most
Cited Cases
   (Formerly 382k564 Trade Regulation)
Complaint did not support lender's claim for unfair
competition under New York law when lender al-
leged facts indicating that it had acquired patent
from debtor through strict foreclosure and that both
party which claimed to have bought patent from
debtor and party's licensee had made false repres-
entations regarding their rights in patent, but did
not make requisite allegations suggesting any mis-
appropriation of its time, labor, or talent.

### [8] Antitrust and Trade Regulation 29T ☞358

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and
Consumer Protection
     29TIII(E) Enforcement and Remedies
       29Tk356 Pleading
         29Tk358 k. Particular Cases. Most
Cited Cases
   (Formerly 92Hk38 Consumer Protection)
Complaint did not state claims for violations of
New York statutes protecting consumers against de-
ceptive trade practices and false advertising when
lender failed to allege facts suggesting broad im-
pact on consumers in asserting possibility of con-
sumer confusion arising from purportedly false
claims of debtor's alleged alter egos that they were,
respectively, owner and licensee of patent which
lender claimed to own, pursuant to its strict fore-
closure of debtor's collateral. McKinney's General
Business Law §§ 349, 350.

### [9] Federal Courts 170B ☞96

170B Federal Courts
   170BII Venue
     170BII(A) In General
       170Bk96 k. Affidavits and Other Evid-
ence. Most Cited Cases
Prediscovery assertion that defendant's principal
place of business was in New York was sufficient
to establish personal jurisdiction under rule allow-
ing court to provisionally accept disputed factual
allegations as true, warranting denial of motion to
dismiss for lack of personal jurisdiction, with leave
to renew after parties completed discovery.
Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.


### MEMORANDUM & ORDER

CASEY, J.
*1 Plaintiff digiGAN, Inc. ("Plaintiff") brought this
action against iValidate, Inc. ("iValidate"), MDM
Group, Inc. ("MDM"), and TIE Technologies, Inc.
("TIE") (collectively referred to as "Defendants")
for a declaratory judgment that Plaintiff is the own-
er of certain property, including a number of pat-
ents, and for damages based on violations of federal
patent law and state unfair competition law. The
three Defendants filed separate motions to dismiss
the action. The Court addresses all three motions in
this opinion. For the reasons that follow, Defend-
ants' motions pursuant to Federal Rule of Civil Pro-
cedure 12(b)(6) are GRANTED IN PART AND
DENIED IN PART. The Court DENIES
WITHOUT PREJUDICE MDM's motion to dismiss
for lack of personal jurisdiction.


### I. BACKGROUND

The following facts are derived from the Amended
Complaint in this case, the truth of which the Court
assumes for purposes of these motions. On Febru-
ary 26, 2001, Plaintiff entered into an agreement
with iValidate, titled "Advance Letter," under
which Plaintiff lent sums of money to iValidate.
(Compl.¶ 7.) The Advance Letter stated that if a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))

separate agreement, called an "Asset Purchase Agreement," did not close by April 15, 2001, the advances made by Plaintiff to iValidate were to convert into a loan payable by April 30, 2001.(*Id.* ¶ 8.) That deadline was extended by consent of the parties until October 1, 2001. (*Id.* ¶ 10.)The Asset Purchase Agreement did not close, but iValidate failed to pay back $107,500 plus interest. (*Id.* ¶¶ 8, 11.)Under a security agreement executed on March 13, 2001, iValidate assigned certain collateral to Plaintiff to secure its obligations under the Advance Letter.(*Id.* ¶ 12.)On October 23, 2001, Plaintiff notified iValidate that it would strictly foreclose on the collateral, and received no objection. (*Id.* ¶¶ 13, 14.)Plaintiff therefore contends that it is the legal owner of the collateral.

On October 21, 2001, MDM issued a press release in which it claimed ownership of the collateral-which appears to include a number of patents-despite Plaintiff's perfected security interest which it recorded in the states of New York and Georgia, and with the United States Patent and Trademark Office.(*Id.* ¶¶ 16, 17.)MDM then licensed rights in the patents to TIE. (*Id.* ¶ 19 .)Defendants are alleged to be alter egos of one another. (*Id.* ¶ 23.)

First, Plaintiff contends that it is entitled to a declaratory judgment that it is the rightful owner of the collateral and to an injunction against Defendants' infringement of its rights in the collateral. (*Id.* ¶ 27.)Second, Plaintiff alleges that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by making false and misleading statements that they possess certain rights in the patents. (*Id.* ¶ 36.)These statements allegedly caused confusion among the public and damage to Plaintiff. (*Id.* ¶ 38.)The Amended Complaint also alleges that these misleading statements violated New York unfair competition law and sections 349 and 350 of the New York General Business Law.(*Id.* ¶¶ 42, 44 .)

*2 Defendants argue that the Amended Complaint fails to state a claim on which relief can be granted, and have brought motions pursuant to Federal Rule of Civil Procedure 12(b)(6). In addition, MDM

moves to dismiss the Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[FN1]

> FN1. In its original moving papers, MDM moved for a more definite statement of the claims under Federal Rule of Civil Procedure 12(e). However, in its supplemental moving papers filed after Plaintiff amended its complaint, that motion was not reasserted. The motion has therefore been abandoned.

## II. DISCUSSION

### A. Defendants' 12(b)(6) Motions

Defendants argue that the Amended Complaint should be dismissed in its entirety. Under Rule 12(b)(6), the Court must presume that all of the complaint's allegations are true and read the Amended Complaint in the light most favorable to Plaintiff. *SeeConnolly v. McCall,* 286 F.3d 122, 125 (2d Cir.2001). The Court can only grant the motion if it appears beyond doubt that Plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995). The Court will discuss each cause of action separately.

### 1. First Claim: Declaratory Relief Under Article 9 of the New York Uniform Commercial Code

iValidate argues that the Amended Complaint does not state a claim for declaratory relief that Plaintiff is the rightful owner of the collateral for three reasons: (1) Plaintiff breached the Advance Letter and therefore the security agreement is void; (2) Plaintiff failed to comply with the notice requirements of section 9-620 of the New York Uniform Commercial Code ("N.Y.U.C.C."); and (3) the monies advanced by Plaintiff to iValidate were not loans but were deposits to be applied toward consideration that Plaintiff owed iValidate. (Memorandum of Law of Defendant iValidate in Support of Motion to Dismiss, at 16-19.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 5
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

All of these arguments must fail because they mistake the Court's role in deciding a Rule 12(b)(6) motion. The Court cannot make findings of fact, but must confine its analysis to whether the "facts stated on the face of the complaint, in documents appended to the complaint, or incorporated in the complaint by reference" would entitle Plaintiff to the requested relief.*Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

[1] The argument that Plaintiff breached the Advance Letter may be a defense that iValidate might eventually assert, but it is not a ground for dismissal under Rule 12(b)(6). It is only a proper basis for a motion to dismiss "if the defense appears on the face of the complaint."*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir.2003) (quoting *Pani Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)). There is nothing in the Amended Complaint, the Advance Letter, or the security agreement, that allows the Court to determine that Plaintiff breached the Advance Letter without making factual findings, something the Court cannot do on a motion to dismiss. Thus, this argument is unavailing.

[2] Second, the Amended Complaint alleges that Plaintiff notified iValidate that it intended to strictly foreclose upon the collateral in satisfaction of iValidate's obligations under the Advance Letter. (Compl.¶ 13.) The Amended Complaint further alleges that iValidate did not object to the foreclosure.(*Id.* ¶ 14.)N.Y.U .C.C. section 9-620 permits a secured party to retain collateral in satisfaction of an obligation if it sends a proposal to the debtor and receives no objection within twenty days after sending the proposal. N.Y.U.C.C. Law §§ 9-620 to -621. iValidate argues that such notice did not satisfy the N.Y.U.C.C. requirements because iValidate had already sold the collateral to MDM and the Amended Complaint does not claim that MDM was notified of Plaintiff's proposal to strictly foreclose. However, the N.Y.U.C.C. only requires notification to parties from which the secured party received a

claim of interest, or which held a perfected security interest or lien within ten days before the debtor consented to the foreclosure. *Seeid.* § 9-621(a). It is doubtful that Plaintiff must plead the *absence of* any such claims of interest and secured interest-holders, but a reasonable inference from the allegation in the Amended Complaint that Plaintiff complied with the N.Y.U.C.C. requirements is that MDM had neither claimed an interest in the collateral nor held a perfected security interest. Thus, the Amended Complaint adequately alleges the necessary facts under the N .Y.U.C.C.

*3 [3] Finally, iValidate argues that the sum Plaintiff claims is owed was not a loan but a deposit toward monies that Plaintiff owed to iValidate. iValidate asserts that the Court must construe the Advance Letter and the security agreement in conjunction with the Asset Purchase Agreement and something called the Term Sheet, which iValidate maintains was executed on January 18, 2001, and specifies that Plaintiff would make cash payments of $1.1 million to iValidate; assume certain of iValidate's liabilities; and deliver stock in Plaintiff to iValidate shareholders. The Term Sheet purportedly also states that the patents would not be officially assigned to Plaintiff until it made payments to iValidate of $650,000. iValidate argues that this Term Sheet was incorporated into the Asset Purchase Agreement, which the Court must consider because the Amended Complaint references the Asset Purchase Agreement.

The Amended Complaint does refer to the Asset Purchase Agreement, and in part, relies on the agreement to state its claim for declaratory relief; thus, it may be considered by the Court in ruling on the motion to dismiss. *SeeChambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (holding that documents relied on by plaintiff in drafting complaint may be considered on 12(b)(6) motion). iValidate contends that the declaratory judgment claim should be dismissed because Plaintiff failed to tender agreed-upon consideration and because the transaction contemplated by the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 6
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

Asset Purchase Agreement never closed. These arguments ask the Court to make factual findings and then a conclusion of law that Plaintiff has no rights to the patent. Such actions are impermissible on a motion to dismiss.

[4] Plaintiff has also sufficiently stated a claim for declaratory relief. A district court "must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."*Cont'l Cas. Co. v.. Coastal Sav. Bank,* 977 F.2d 734, 737 (2d Cir.1992) (quoting *Broadview Chemical Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir.1969)). Plaintiff has plead facts suggesting that it is the rightful owner of the patents and that all three Defendants have asserted ownership of the patents. (Compl.¶¶ 25, 26.) iValidate argues in defense that Plaintiff has no such rights. Thus, there is a controversy involving ownership of the patents that will be resolved by the declaratory relief that Plaintiff requests. iValidate's motion to dismiss is therefore denied.

2. Second Claim: Patent Infringement

[5] MDM and TIE contend that Plaintiff has failed to state a cause of action for patent infringement.FN2The Amended Complaint alleges that Defendants have violated 35 U.S.C. § 271(a) by "making, using, offering to sell, and/or selling the invention claimed" in two patents. (Compl.¶ 31.) 35 U.S.C. § 271(a) states in relevant part: "[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

> FN2. iValidate bases its motion on the argument that Plaintiff cannot recover on any of its legal theories because it has no ownership interest in the patents. For the reas-

ons already stated, this argument must be rejected.

*4 According to both MDM and TIE, the Amended Complaint fails to state a cause of action against them because it does not claim that they actually produced or sold any patented inventions. "[A] patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself."*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000). In *Phonometrics,* the Federal Circuit held that a complaint states a claim for patent infringement when it "alleges ownership of the asserted patent, names each individual defendant, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked."*Id.*

Here, Plaintiff has met the standard articulated in *Phonometrics* for stating a claim under § 271. It has alleged ownership of the patents; named Defendants as the alleged infringers; cited the patents by number; and describes the means by which they were infringed, that is, through making, using, selling, offering to sell or actually selling the patented inventions. Complaints that merely track the statutory language may be sufficient to withstand a motion to dismiss. *SeeGlazer Steel Corp. v. Yawata Iron & Steel Co.,* 56 F.R.D. 75, 81 n. 1 (S.D.N.Y.1972). In addition, the Amended Complaint specifically cites § 271 as the applicable patent-law provision. The information provided is adequate to allow Defendants to defend themselves. Therefore, the motions to dismiss the patent infringement claim are denied.

3. Third Claim: Lanham Act Violations

[6] MDM and TIE next challenge Plaintiff's claim for violations of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Specifically, MDM and TIE

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 7
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

contend that Plaintiff only alleges misrepresentations regarding a patent, which is not a good or service. The Lanham Act subjects to civil suit:

Any person who, on or in connection with any *goods or services,* or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities....

15 U.S.C. § 1125(a) (emphasis added). This provision of the Lanham Act is meant "to prevent customer confusion regarding a product's source or sponsorship."*Chambers,* 282 F.3d at 156. The Lanham Act is not, however, a panacea for all unfair trade practices. *SeeDastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, ----, 123 S.Ct. 2041, 2045, 156 L.Ed.2d 18 (2003).

**\*5** The Amended Complaint alleges that Defendants violated section 43(a) of the Lanham Act by making false and misleading representations concerning Defendants' rights in one of the patents. (Compl.¶ 36.) These misrepresentations allegedly were made in the course of Defendants' website advertising of products protected by the patent. (*Id.*) The gravamen of Plaintiff's claim is that Defendants, in marketing their products, falsely stated that they owned the patent that Plaintiff received from iValidate under the security agreement. Thus, the alleged misrepresentations concerned the patent, not any products or services. A patent is not a

"good or service" as those terms are used in the Lanham Act. *SeeHans-Jurgen Laube & Oxidwerk HJL AG v. KM Europa Metal AG,* No. 96 Civ. 8147(PKL), 1998 WL 148427, at \*2 (S.D.N.Y. Mar.27, 1998) (citing *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568, 1574-75 (Fed.Cir.1996)).

In *Hans-Jurgen,* the plaintiffs alleged that the defendant violated section 43(a) when it falsely claimed ownership of a patent. *Id.* Judge Leisure concluded that the cause of action arose out of misrepresentations regarding ownership of the patent, and noted that the Federal Circuit has held that a patent is not a "good or service" under section 43(a) of the Lanham Act. *Seeid.*

Plaintiff responds that its Lanham Act claim is valid because Defendants advertised "products embodying technology protected by the Patent."(Compl.¶ 36.) However, drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint does not allege any "false or misleading representation of fact" in connection with any goods or services."*See*15 U.S.C. § 1125. The patent, and not any product or service, is at the center of the controversy between the parties.

First, the only misrepresentations alleged occurred when Defendants claimed to own the patent or to be licensees of the patent. (*See* Compl. ¶ 35.) Second, the reason that Plaintiff claims the statements were false was that it, and not Defendants, actually own the patent. (*Seeid.* ¶ 37.)Finally, Plaintiff's vague reference to Defendants' "products embodying technology" does not allege the necessary connection between the misrepresentations of fact and goods or services. Even paragraph 36 of the Amended Complaint, in which Plaintiff mentions Defendants' products, only alleges misrepresentations in connection with Defendants' rights to the patent, not with the products themselves. Thus, the Court concludes that Plaintiff has alleged misrepresentations of fact in connection with a patent, not goods or services. Therefore, the Lanham Act claim is dismissed.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 8
Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))

4. Fourth Claim: Unfair Competition

[7] Plaintiff states that Defendants' false representation that they are the owners or licensees of the patent constitutes unfair competition under New York State law. (*Id.* ¶ 42.)"[T]he primary concern in unfair competition is the protection of a business from another's misappropriation of the business' organization or its expenditures of labor, skill, and money."*Gucci America, Inc. v. Duty Free Apparel Ltd.,* 277 F.Supp.2d 269, 275 (S.D.N.Y.2003) (quoting *Ruder & Finn, Inc. v. Seabord Sur. Co.,* 52 N.Y.2d 663, 439 N.Y.S.2d 858, 422 N.E.2d 518, 522 (N.Y.1981)) (internal quotation marks omit- ted).

*6 Defendants TIE and MDM argue that a cause of action for unfair competition cannot lie on the facts stated in the Amended Complaint because there are no allegations that they infringed on Plaintiff's patent rights or misappropriated Plaintiff's business name, reputation, or good will. In addition, they argue that because the Lanham Act claim fails, so too must the claim for unfair competition.

If Defendants are to succeed in dismissing the unfair competition claim, they must not rest on their Lanham Act arguments. As the Second Circuit has explained, "the elements of an unfair competition and Lanham Act claim are different."*Morex S.p.A. v. Design Institute America, Inc.,* 779 F.2d 799, 801 (2d Cir.1985). In New York, unfair competition is a broad tort encompassing an "incalculable variety of illegal practices." *Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.,* 2003 WL 23023866, at *24 (N.D.N.Y. Dec.3, 2003) (quoting *Electrolux Corp. v. Val-Worth, Inc.,* 6 N.Y.2d 556, 190 N.Y.S.2d 977, 161 N.E.2d 197, 204 (N.Y.1959)). Plaintiff must allege, however, "unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor, and talent."*Greenblatt v. Prescription Plan Servs. Corp.,* 783 F.Supp. 814, 825 (S.D.N.Y.1992).

Here, Plaintiff's labor was not expended, nor talent tapped, in producing the patented technology.

Plaintiff's only argument is that it expended money through its agreements with iValidate, and has, in effect, purchased the patent. However, it is the money spent in *developing* a product or process that the tort of unfair competition protects. See*Norbrook Labs.,* 2003 WL 23023866, at *25 (finding unfair competition when defendant misappropriated technology for which plaintiff expended substantial time and money in producing). Plaintiff seeks to restate its patent infringement claim as an unfair competition claim, without alleging any expenditure of time, labor, or talent. See*id.*For this reason, the Amended Complaint does not adequately state a claim for unfair competition, and this cause of action is dismissed.

5. Fifth Claim: Violation of New York General Business Law

[8] The Amended Complaint alleges that Defendants violated sections 349 and 350 of the N.Y. General Business Law.Sections 349 and 350 protect consumers against deceptive trade practices and false advertising. See*N.Y. Gen. Bus. L. §§ 349, 350. The Court determines that Plaintiff has failed to state a claim under these statutes.

To establish a claim for deceptive trade practices under section 349, Plaintiff must allege that: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."*Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (per curiam). Competitors have standing to bring a claim under this statute; however, "the gravamen of the complaint must be consumer injury or harm to the public interest."*Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y.1988)).

*7 The only harm to the public found anywhere in the Amended Complaint is the potential confusion that might arise due to Defendants' claims that they

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

own, or are licensees of, the patent. (*See* Compl. ¶ 38.) Consumer confusion regarding the patent, the use or nature of which is not even stated in the Amended Complaint, does not rise to the level of consumer injury necessary to sustain a claim under section 349. *See New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 770 (N.Y.1995)."The conduct [alleged] need not be repetitive or recurring, but defendant's acts or practices must have broad impact on consumers at large...."*Id.* There are no factual allegations in the Amended Complaint that suggest a broad impact on consumers; in fact, Plaintiff never alleges what the invention is for which it claims to own the patent.

The Amended Complaint is replete, however, with allegations of harm to Plaintiff's business. "Where the gravamen of the complaint is harm to a business as opposed to the public at large, the business does not have a cognizable cause of action under § 349."*Gucci America,* 277 F.Supp.2d at 274. Because this is merely a private dispute "without direct impact on the body of consumers," the claim under section 349 is dismissed. *See Maurizio,* 230 F.3d at 522.

Plaintiff's claim under section 350 must suffer a similar fate. To state a claim for false advertising under section 350, Plaintiff again must allege conduct that has a broad impact on consumers. *See id.* (citing with approval *Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1291-92 (S.D.N.Y.1988)). Therefore, the section 350 claim is also dismissed.

**B. MDM's 12(b)(2) Motion**

[9] MDM also maintains that it is not subject to personal jurisdiction in this Court because it has no contacts with the state of New York. MDM claims that it is incorporated in Georgia and has its principal place of business in Texas. It further asserts that it has no offices, employees, or agents in New York, and derives no income from, nor has caused any injuries in, New York. The Amended Com-

plaint, in contrast, alleges that MDM's principal place of business is in New York. (*Id.* ¶ 3.) Plaintiff argues that this allegation is itself sufficient to withstand a motion to dismiss on the issue of personal jurisdiction. In the alternative, Plaintiff claims that MDM has sufficient contacts through to its own activities and those of TIE.

In demonstrating personal jurisdiction, "[t]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation."*Ball v. Metallurgie Hoboken-Overpelt S.A.,* 902 F.2d 194, 197 (2d Cir.1990). As this motion was filed prior to discovery, Plaintiff must make a *prima facie* showing of jurisdiction by allegations in the complaint. *Id.; see also Metropolitan Life Ins. Co. v. Robertson Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction.").

*8 MDM cites *Palmieri v. Estefan,* 793 F.Supp. 1182 (S.D.N.Y.1992), for the proposition that an evidentiary hearing is required when a defendant challenges the plaintiff's factual allegations relating to personal jurisdiction. *See id.* at 1186. This argument is only partially correct. MDM certainly may challenge *both* Plaintiff's theory of jurisdiction and the veracity of the facts that purportedly support that theory, *Credit Lyonnais Secs. (USA), Inc. v. Alcantara,* 183 F.3d 151, 153 (2d Cir.1999), but the Court need not decide both challenges at the same time. *See Ball,* 902 F.2d at 197.

"In ruling on the *theory* of jurisdictional allegations, the court may provisionally accept disputed factual allegations as true.... [T]he court need only determine whether the facts alleged by the plaintiff, if true, are sufficient to establish jurisdiction; no evidentiary hearing or factual determination is necessary for that purpose."*Id.* at 153 (emphasis added). MDM is correct that Plaintiff must prove facts establishing personal jurisdiction by a preponderance of the evidence, but Plaintiff need not do so on a prediscovery motion pursuant to Rule 12(b)(2).*See Ball,* 902 F.2d at 196.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.), 71 U.S.P.Q.2d 1455, 52 UCC Rep.Serv.2d 1022
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 203010 (S.D.N.Y.))**

The Court will accept as true the allegation of juris-
diction at this time. The parties shall have an oppor-
tunity to conduct discovery on the issue of jurisdic-
tion, if they have not yet done so; the Court will
schedule further proceedings after such discovery.
Plaintiff will bear the burden of proving, by a pre-
ponderance of the evidence, both its theory of juris-
diction and the facts on which that theory is based.
Therefore, MDM's motion is denied with leave to
renew after discovery has been completed.

III. CONCLUSION

For the foregoing reasons, Defendants' motions to
dismiss for failure to state a claim are GRANTED
IN PART AND DENIED IN PART. Specifically,
the Court concludes that Plaintiff has failed to state
a cause of action under the Lanham Act and New
York General Business Law sections 349 and 350,
and for unfair competition. Plaintiff has, however,
stated claims for declaratory relief and patent in-
fringement. The Court DENIES WITHOUT PRE-
JUDICE MDM's motion to dismiss for lack of per-
sonal jurisdiction.

So Ordered:

S.D.N.Y.,2004.
Digigan, Inc. v. Ivalidate, Inc.
Not Reported in F.Supp.2d, 2004 WL 203010
(S.D.N.Y.), 71  U.S.P.Q.2d  1455,  52  UCC
Rep.Serv.2d 1022

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 5

Westlaw.

Not Reported in F.Supp.                                                                          Page 1
Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.))**

**C**
General Patent Corp. v. Hayes Microcomputer
C.D.Cal.,1997.
Only the Westlaw citation is currently available.
United States District Court, C.D. California.
GENERAL PATENT CORPORATION Plaintiff,
v.
Hayes MICROCOMPUTER, et al. Defendants.
**No. SA CV 97-429-GLT ANX.**

Oct. 20, 1997.

ORDER BIFURCATING PATENT VALIDITY
AND ENFORCEABILITY ISSUES FROM IN-
FRINGEMENT AND DAMAGES ISSUES AND
STAYING DISCOVERY AND TRIAL OF IN-
FRINGEMENT AND DAMAGES ISSUES

TAYLOR, District J.
**\*1** Defendants' Motion to Bifurcate Patent Validity
and Enforceability Issues From Infringement and
Damages Issues is GRANTED. Discovery and Trial
of Infringement and Damages Issues is STAYED.

A. *Bifurcation of the Trial*

Federal Rule of Civil Procedure 42(b) governs bi-
furcation of trails:

The court, in furtherance of convenience or to avoid
prejudice, or when separate trials will be conducive
to expedition and economy, may order a separate
trial of any claim, cross-claim, counterclaim, or
third party claim, or of any separate issues or of any
number of claims ...'

Fed.R.Civ.P. 42(b). These considerations are in the
alternative. *Id.* Thus, bifurcation may be proper
upon a showing of any of these factors. Granting or
denying severance lies within the trial court's sound
discretion.[FN1]*Davis & Cox v. Summa Corp.,* 927
F.2d 1473, 1479 (9th Cir.1985).

FN1. GPC claims "[i]n patent cases, as in
any other case, it is well-settled that separ-
ate trails are the exception, not the
rule."No such preference has been ex-
pressed in patent cases reviewed by the
Ninth Circuit. *See International Environ-
mental Dynamics, Inc. v. Fraser,* 647 F.2d
77, 79 (9th Cir.1981)(affirming a separate
jury trial pursuant to Fed.R.Civ.P. 42(b) on
the sole issue of the validity of the
plaintiff's patent); *Filtrol Corporation v.
Kelleher,* 467 F.2d 242, 245 (9th
Cir.1972)(upholding district court's bifurc-
ation of patent infringement and validity
claims). In fact, bifurcation or even trifurc-
ation is common in patent cases. *See* The
Manual For Complex Litigation, 3d §
33.62, pp. 360-61 (Federal Judicial Center,
1995)(recognizing the need and encour-
aging trial judges to bifurcate or trifurcate
patent trials).

Bifurcation of the issues in this case would be effi-
cient and convenient. Since GPC has asserted the
same four patents against all defendants, the issues
of patent validity and enforceability are common to
all defendants. The infringement and damages is-
sues, however, are specific to each defendant be-
cause they involve the particular products made by
each defendant.[FN2]Accordingly, it would be in the
interest of convenience to separate the collective
patent validity/enforceability issues from the indi-
vidual infringement/damages issues.

FN2. In total, defendants estimate they
have hundreds of thousands of pages of
documents relating to the sales, costs, and
profitability of the accused modems. Mo-
tion at 6.

Additionally, "[b]ifurcation is particularly appropri-
ate when resolution of a single claim or issue could
be dispositive of the entire case."[FN3]*Cook v.
United Service Auto. Ass'n.,* 169 F.R.D. 359

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(D.Nev.1996); *see also O'Malley v. United States Fidelity and Guaranty Company,* 776 F.2d 494, 501 (5th Cir.1985); 9 Wright & Miller, Federal Practice and Procedure: Civil 2d, § 2388, p. 476 (1994). Thus, efficiency indicates this court should first consider the validity and enforceability claims if they are potentially dispositive issues. *See, e.g., Wang Laboratories v. Mitsubishi Electronics America, Inc.,* 29 U.S.P.Q.2d (BNA) 1481, 1482 (C.D.Cal.1993).

> FN3. Although the Ninth Circuit has left this determination entirely within the discretion of the district judge, other courts developed criteria to determine whether a separate trial on dispositive issues is appropriate. *See Engelhard Minerals and Chemicals Corp. v. Anglo-American Clays Corp.,* 212 U.S.P.Q. 668, 669 (M.D.Ga.1981); *Ludlow Corp. v. Textile Rubber & Chemical Co.,* 77 F.R.D. 752, 753 (N.D.Ga.1978). Defendants appear to meet the criteria set out by these courts.

Here it appears the validity and enforcement issues may be dispositive. If the patents are found invalid or unenforceable there will be no need to resolve the infringement and damages claims. Conversely, if the patents are found valid and enforceable it will likely promote settlement of the action before trial on the infringement and damages issues. Thus, it will almost certainly be efficient for this court to first address the issues of validity and enforceability before turning to the other claims.[FN4]

> FN4. Additionally, defendants' preliminary investigation leads them to believe "focused discovery ... will confirm the invalidity and unenforceability of [GPC's] claims."Motion at 6. Defendants insist that devices, which possessed the technology at issue in this case, were on sale and in public use at least a year before the effective filing date of each patent. Dunlavey Dec. ¶ 10. Assuming such evidence does exist, this reinforces this court's belief that the

validity and enforceability issues may be dispositive in this case.

In opposing this motion, GPC relies on *Procter & Gamble Co. v. Nabisco Brands, Inc.,* 604 F.Supp. 1485 (D.Del.1985)(*P & G* ) for the proposition that the existence of overlapping evidence weighs against separate trials.[FN5]However the facts in this case are distinguishable from the facts in *P & G.* First, the *P & G* court denied the motion for a separate trial on validity because the movant had failed to demonstrate that a trial on infringement would be either long or complex. *Id.* at 1492.This case is complex-it involves multiple patents, multiple defendants, and multiple accused products. Second, the *P & G* court was concerned with two areas of overlapping evidence which do not arise in this case: claim construction and the question of commercial success. *Id.* Here the court will construe the asserted claims only in the first trial. That construction will then be the law of the case and will govern in a later trial on the infringement and damages issues. *See Magnesystems, Inc. v. Nikken, Inc.,* 933 F.Supp. 944, 949 (C.D.Cal.1996)(stating the "law of the case" rule for a patent infringement lawsuit). Additionally, the defendants in this case have offered to stipulate to "commercial success" for the purpose of the separate validity and enforceability trial. Reply at 9. Thus, the overlapping evidence which formed the basis of the *P & G* court's concerns does not appear in this case.

> FN5. In addition to *P & G,* GPC incorrectly cites four Federal Circuit cases for the proposition that bifurcation is inappropriate when there is substantial evidentiary overlap. None of these cases mention bifurcation or Fed.R.Civ.P. 42(b).*See* Opp. at 6-7; *Witco Chem. Corp. v. Peachtree Doors, Inc.,* 787 F.2d 1545 (Fed.Cir.1986); *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 730 F.2d 1452 (Fed.Cir.1984); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563 (Fed.Cir.1983); *Stratoflex, Inc. v. Aeroquip*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.))**

*Corp.,* 713 F.2d 1530 (Fed.Cir.1983).

**\*2** Finally, GPC's assertion the time and cost of two trials is unduly prejudicial is unconvincing. First, GPC's assertion assumes a second trial will be held. It is because this court believes resolution of these initial claims will be either dispositive, or likely lead to settlement, that bifurcation is proper. Second, should the case ultimately result in two trials, the burdens associated with two trials will not fall unduly on any particular party. Third, GPC is not engaged in the design, manufacture, and sale of products-rather, GPC receives royalties under these patents. Thus, should there be a second trial, potential damages will have continued to accrue. Any delay will not prejudice GPC's royalties.

Since bifurcation is convenient, efficient, and will not unduly prejudice any party, the motion to bifurcate is GRANTED. Trial of the infringement and damages issues is STAYED.

### B. Divided Discovery

Under Fed.R.Civ.P. 42(b), "[i]t is implicit that the court also had power to limit discovery to the segregated issues."*Ellingson Timber Co. v. Great Northern Ry. Co.,* 424 F.2d 497, 499 (9th Cir.1970)."One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues."*Id.* However, GPC believes if this court bifurcates discovery it will lead to increased motion practice over what the parties should produce in the first wave of discovery, and what is relevant only later. Apparently, such discovery disputes have already started. Opp. at 2.[FN6]

> FN6. Defendants assert GPC's initial discovery request sought a broad range of information, including detailed technical and financial information which is only relevant to infringement and damages issues and is highly confidential competitive

business data. Motion at 3.

Fed.R.Civ.P. 26(g) imposes an affirmative duty on attorneys to use discovery in a responsible manner and to avoid discovery abuses. *See Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership,* 76 F.3d 1003, 1008 (9th Cir.1996). This court is confident that as the litigation proceeds the parties will adhere to the federal rules, and use their sound discretion, in conducting discovery; discovery sanctions are available if they do not. Accordingly, pending outcome of the validity and enforceability claims, discovery solely concerning the infringement and damages issues is STAYED.

C.D.Cal.,1997.
General Patent Corp. v. Hayes Microcomputer
Not Reported in F.Supp., 1997 WL 1051899 (C.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX – TAB 6

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.))**

**H**
Jackson v. Illinois Bell Telephone Co.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Philip JACKSON, Plaintiff,
v.
ILLINOIS BELL TELEPHONE COMPANY d/b/a
Ameritech Illinois, Ameritech Corp., SBC Commu-
nications, Inc., Vtech Telecommunications Limited,
Vtech Communications, Inc., Nortel Networks,
Inc., and TDS Metrocom, Inc. Defendants.
**No. 01 C 8001.**

July 8, 2002.

In patent infringement suit, two defendants moved
to dismiss for failure to state a claim. The District
Court, Castillo, J., held that the complaint included
all the factual specificity that was required under the
notice pleading standard to state a claim for pat-
ent infringement.

Motions denied.

West Headnotes

**Patents 291 ⟶310.1(5)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k309 Pleading
                291k310.1 Original Bill
                    291k310.1(5) k. Infringement and
Injury, Loss or Damage. Most Cited Cases
Complaint included all the factual specificity that
was required under the notice pleading standard to
state a claim for patent infringement, where com-
plaint alleged ownership of the asserted patent by
plaintiff, named each individual defendant, cited
the patent that was allegedly infringed, and de-
scribed the means by which defendants allegedly
infringed. 35 U.S.C.A. § 271.

*MEMORANDUM OPINION AND ORDER*

CASTILLO, J.
**\*1** Philip Jackson filed suit against Illinois Bell
Telephone Company d/b/a Ameritech Illinois
("Illinois Bell"), Ameritech Corp. ("Ameritech"),
SBC Communications, Inc. ("SBC"), VTech Tele-
communications Limited ("VTech Telecommunica-
tions"), VTech Communications, Inc. ("VTech
Communications"), Nortel Networks, Inc.
("Nortel"), Winstar Communications, Inc.
("Winstar") and TDS Metrocom, Inc. ("TDS Met-
rocom"), maintaining that Defendants infringed
United States Patent No. 4,596,900. Currently be-
fore the Court is SBC and Ameritech's motion to
dismiss the complaint for failure to state a claim
pursuant to Federal Rule of Civil Procedure
12(b)(6). For the reasons that follow, SBC and
Ameritech's motion to dismiss is denied. (R. 19-1.)

RELEVANT FACTS

On June 24th, 1986, the United States Patent and
Trademark Office ("PTO") issued patent number
4,596,900    ("the    '900    Patent"),    titled
"Phone-Line-Linked,    Tone-Operated    Control
Device" to Jackson. (R. 1-1, Ex. A, U.S. Patent No.
4,596,900.) The patented device detects a predeter-
mined sequence of signals sent over a telephone
line and responds with a control signal. (*Id.*) The
control signal can be used to remotely control an-
other application.(*Id.*)

Once in 1994 and twice in 1995, the PTO received
Reexamination Requests of the '900 Patent.(*Id.*, Ex.
B., U.S. Patent No. 4,596,900.) The PTO issued
two Reexamination Certificates, one in 1995 con-
firming the validity of the '900 Patent's seventeen
original claims and another in 1997 adding ninety-
nine additional patentable claims. (*Id.*, Compl. ¶¶
13-14.) Currently, numerous companies hold li-
censes under the '900 Patent.(*Id.* at ¶ 15.)

On October 17th, 2001, Jackson filed a complaint

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 2
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.))**

charging Illinois Bell, Ameritech, SBC, VTech Telecommunications, VTech Communications, Nortel, Winstar and TDS Metrocom with patent infringement "either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271."(*Id.* at ¶ 16.)Jackson noted in the complaint that SBC "sells answering machines" and that Ameritech "provides voice mail systems." (*Id.* at ¶ 7.)

SBC moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) and (3) on the grounds that this Court lacks jurisdiction over SBC and that venue is improper. (R. 19-1, Mot. to Dismiss.) SBC and Ameritech also moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that Jackson failed to state a claim upon which relief can be granted. (*Id.*) SBC later withdrew the portion of the motion to dismiss that asserted a lack of personal jurisdiction and improper venue. (R. 35-1, Notice of Withdrawal of Portion of Mot. to Dismiss.) Presently before this Court is SBC and Ameritech's motion to dismiss pursuant to Rule 12(b)(6). After careful review in accordance with the applicable standards, the motion to dismiss is hereby denied.

## LEGAL STANDARDS

**\*2** A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998). When considering a motion to dismiss, this Court views all facts alleged in the complaint, as well as any inferences reasonably drawn from those facts, in the light most favorable to the plaintiff. *Id.* We will grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 432 (7th Cir.1993).*See also Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, "a pleading must only contain enough to allow the court and the defendant to understand the gravamen of the

plaintiff's complaint."*McCormick v. City of Chi.,* 230 F.3d 319, 323-24 (7th Cir.2000) (quotations and citations omitted).

## ANALYSIS

I. The Court Will Not Consider Matters Outside the Pleadings in a Motion to Dismiss

The Federal Rules of Civil Procedure dictate that matters outside the pleadings cannot be considered when deciding a Rule 12(b)(6) motion to dismiss. *See*Fed.R.Civ.P. 12(b).

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Id.*SBC and Ameritech's motion to dismiss, Jackson's response to the motion to dismiss, Jackson's amended response to the motion to dismiss and SBC and Ameritech's reply in support of the motion to dismiss, include information extraneous to the original facts pleaded in the complaint. Because neither party has requested that the Court convert the motion to dismiss into a Rule 56 motion for summary judgment, we focus our analysis solely on the factual allegations presented in the original complaint. For the purpose of deciding this motion, we ignore all factual allegations included as exhibits in support of or in opposition to the motion to dismiss.FN1

> FN1. Even if the Court had considered all the extraneous information included in the exhibits, the Court would have reached the same result with respect to this pending motion.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.))

Page 3

## II. Jackson's Complaint States a Claim Upon Which Relief Can Be Granted.

Patent infringement under 35 U.S.C. § 271 can take place directly, by acts of inducement or by acts of contributory infringement. 35 U.S.C. § 271(a)-(c). Direct patent infringement occurs when someone "makes, uses, offers to sell, or sells any patented invention, within the United States."*Id.* at § 271(a). Patent infringement by acts of inducement occurs when someone knowingly encourages, causes, urges or aids another in infringement. *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990); *Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 411 (5th Cir.1963). Patent infringement by acts of contributory infringement occurs when someone sells a component of a patented machine knowing that the component will be used to infringe such patent. 35 U.S.C. § 271(c).

*\*3* In order to plead a § 271 violation, the plaintiff need only state sufficient facts to put the alleged infringer on notice. *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000). In *Phonometrics,* the district court dismissed the complaint under Rule 12(b)(6) because the plaintiff did not include express allegations of infringement. *Id.* at 792.The Federal Circuit reversed, holding that:

Phonometrics' complaint alleges ownership of the asserted patent, names each individual defendant, cites the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked. Thus, Phonometrics' complaint contains enough detail to allow the defendants to answer. Rule 12(b)(6) requires no more.

*Id.* at 794.Similarly, Jackson's complaint includes all the factual specificity that is required by the federal courts under the notice pleading standard. First, Jackson alleges ownership of the asserted patent by stating that he "owns all right, title and interest in and has standing to sue for infringement" of the '900 Patent. (R. 1-1, Compl.¶ 4.) Second, Jackson

names each individual Defendant. (*Id.* at ¶¶ 5-12.)Third, Jackson cites the patent that is allegedly infringed. (*Id.* at ¶ 4.) Fourth, Jackson describes the means by which Defendants allegedly infringe by pleading that "[e]ach of the defendants has infringed the patent in suit either directly or through acts of contributory infringement or inducement."(*Id.* at ¶ 16.)Jackson further alleges that Ameritech "provides voice mail systems" and that SBC "sells answering machines." (*Id.* at ¶ 7.) Finally, Jackson points to the specific sections of the patent law invoked by alleging a "violation of 35 U.S.C. § 271."(*Id.* at ¶ 16.)Thus, as the complaint includes all the factual specificity that is required under the notice pleading standard, we deny SBC and Ameritech's motion to dismiss the complaint.

## CONCLUSION

For the foregoing reasons, SBC and Ameritech's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), is denied. (R. 19-1.) This Court will hold a status hearing on July 16, 2002 at 9:45 a.m. to set a firm litigation schedule for this law-suit.

N.D.Ill.,2002.
Jackson v. Illinois Bell Telephone Co.
Not Reported in F.Supp.2d, 2002 WL 1466796 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2008, I caused PLAINTIFFS' CORRECTED APPENDIX OF UNPUBLISHED AUTHORITIES CITED IN PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO BIFURCATE PATENT INVALIDITY AND UNENFORCEABILITY FROM INFRINGEMENT AND DAMAGES to be served upon the following counsel for Defendants Lehman Brothers Holdings Inc. and Lehman Brothers Inc. via the CM/ECF system maintained by the Clerk of the U.S. District Court for the Northern District of Illinois:

> Albert Lee Hogan, III
> Skadden, Arps, Slate, Meagher & Flom LLP
> 333 West Wacker Drive
> Chicago, IL  60606
> ahogan@skadden.com, chdocket@skadden.com

I further certify that I caused a copy of the foregoing documents to be mailed by first class mail, postage paid, to the following non-ECF participants:

> Jeffrey G. Randall
> Skadden, Arps, Slate, Meagher & Flom LLP
> 525 University Avenue, Suite 1100
> Palo Alto, CA  94301
>
> Allan M. Soobert
> Skadden, Arps, Slate, Meagher & Flom LLP
> 1440 New York Avenue NW
> Washington, DC  20005

Dated: July 1, 2008                              _____/s/ Christopher J. McGeehan_____