**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **EDGE CAPTURE L.L.C., and EDGE SPECIALISTS, L.L.C.,** ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 08-CV-2412 |
| v. ) ) | |
| **LEHMAN BROTHERS HOLDINGS INC., and LEHMAN BROTHERS INC.,** ) ) ) | ORAL ARGUMENT REQUESTED |
| Defendants. ) ) ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
OR, ALTERNATIVELY, TO BIFURCATE PATENT INVALIDITY AND
UNENFORCEABILITY FROM INFRINGEMENT AND DAMAGES**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. EDGE'S OPPOSITION CONFIRMS THAT THE COMPLAINT IS DEFICIENT AND SHOULD BE DISMISSED ...........................................................................................1

    A. Edge Admits That It Has Not Identified, And Cannot Identify, Any Allegedly Infringing Product Or System, Confirming That Dismissal Is Appropriate ..................................................................................................................2

    B. Edge Admits That Discovery Is Required To State A Claim, Confirming That There Is No Basis For Its Claims And That Dismissal Is Appropriate ...........4

III. BIFURCATION IS APPROPRIATE, EFFICIENT, AND ECONOMICAL, AND EDGE'S ARGUMENTS IN OPPOSITION ARE MISPLACED. ........................................6

    A. Edge Does Not Provide Any Meaningful Response To The Clear And Convincing Evidence Of Invalidity And Unenforceability. .................................6

        1. Edge Has Failed To Rebut The Substantial Showing of Invalidity. ...........6

        2. Edge Has Failed To Rebut The Substantial Showing of Unenforceability ...........................................................................................8

    B. In Light Of Bifurcation's Benefits, Edge's Arguments Against Efficiency And Economy Are Unpersuasive And Highly Speculative. ...............................10

        1. The Overlap Between Phases Is Minimal And Does Not Outweigh The Benefits Of Bifurcation, Contrary To Edge's Arguments. ...............10

        2. Bifurcation Would Streamline And Simplify Discovery, Contrary To Edge's Contentions. .............................................................................12

        3. Edge's Arguments Regarding Bifurcation Discouraging Early Resolution Of The Case Are Speculative And Illogical. ..........................13

    C. Edge Has Failed To Demonstrate Any Unfair Prejudice. ....................................13

IV. CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) ..................................................................................10

*Asip v. Nielsen Media Research, Inc.*,
   No. 03 Civ. 5866, 2004 WL 315269 (S.D.N.Y. Feb. 18, 2004)................................3

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ................................................................................................2

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*,
   267 F.3d 1370 (Fed. Cir. 2001) ..................................................................................9

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
   No. 93 C 4788, 1994 WL 362186 (N.D. Ill. July 11, 1994)......................................14

*Clipco Ltd. v. Ignite Design, LLC*,
   No. 04 C 5043, 2005 WL 2861032 (N.D. Ill. Oct. 28, 2005) ...................................14

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
   90 Fed. App. 540 (Fed. Cir. 2004)...........................................................................11

*Gen. Patent Corp. v. Hayes Microcomputer*,
   No. SA CV 97-429 GLT ANX, 1997 WL 1051899 (C.D. Cal. Oct. 20, 1997) ........... 11, 13, 14

*Gen-Probe, Inc. v. Amoco Corp.*,
   926 F. Supp. 948 (S.D. Cal. 1996)........................................................................3, 5

*Hewlett-Packard Co. v. Intergraph Corp.*,
   No. C 03-2517 MJJ, 2003 WL 23884794 (N.D. Cal. Sept. 6, 2003).........................3

*Home & Nature Inc. v. Sherman Specialty Co., Inc.*,
   32 F. Supp. 2d 260 (E.D.N.Y. 2004) ........................................................................4

*Interdigital Tech. Corp. v. OKI Am., Inc.*,
   845 F. Supp. 276 (E.D. Pa. 1994) .............................................................................3

*Jackson v. Illinois Bell Tel. Co.*,
   No. 01 C 8001, 2002 WL 1466796 (N.D. Ill. July 8, 2002).......................................4

*KSR Int'l Co. v. Teleflex Inc.*,
   127 S. Ct. 1727 (2007) ................................................................................................7

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
   445 F.3d 1348 (Fed. Cir. 2006) ................................................................................11

*Limestone Dev. Corp v. Village of Lemont, Ill.*,
    520 F.3d 797 (7th Cir. 2008) ........................................................................................ 4, 5, 12

*Ludlow Corp. v. Textile Rubber & Chem. Co.*,
    77 F.R.D. 752 (N.D. Ga. 1978) .............................................................................................. 13

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) ............................................................................................... 5

*Minch v. City of Chicago*,
    486 F.3d 294 (7th Cir. 2007) ................................................................................................ 10

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
    287 F.3d 1062 (Fed. Cir. 2002) ............................................................................................. 11

*Ondeo Nalco Co. v. EKA Chems., Inc.*,
    No. Civ.A.01-537-SLR, 2002 WL 1458853 (D. Del. June 10, 2002) ...................................... 3

*Ormco Corp. v. Align Tech. Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006) ............................................................................................. 12

*Real v. Bunn-O-Matic Corp.*,
    195 F. R.D. 618 (N.D. Ill. 2000) .............................................................................................. 6

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) ............................................................................................. 11

*Stratoflex, Inc. v. Aeroquip Corp.*,
    713 F.2d 1530 (Fed. Cir. 1983) ............................................................................................. 14

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
    431 F. Supp. 2d 834 (N.D. Ill. 2006) ................................................................................. 6, 13

*View Eng'g, Inc. v. Robotic Vision Sys.*,
    208 F.3d 981 (Fed. Cir. 2000) ................................................................................................. 5

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
    442 F. 3d 1322 (Fed. Cir. 2006) ............................................................................................ 11

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 2

Fed. R. Civ. P. 11 ..................................................................................................................... 4, 5

Fed. R. Civ. P. 42(b) ...................................................................................................................... 6

I.   **INTRODUCTION**

Edge's opposition to Lehman's motion to dismiss confirms that dismissal is appropriate. Edge admits it has not identified, and cannot sufficiently identify, any infringing product or system. Edge's infringement allegations are vague, overly broad and cover conduct that Edge *concedes* does not infringe its patents, confirming that the pleading requirements of Rule 8 have not been met here. Edge effectively admits that it does not have a basis for its allegations, admitting that discovery is required for it to find such a basis. Edge's file-first, find-a-basis-later approach is improper, and the Complaint should be dismissed in order to avoid an unauthorized, inappropriate and costly fishing expedition.

If the Complaint is not dismissed, all invalidity and unenforceability issues should be bifurcated and tried before infringement and damages. Lehman has presented clear and convincing evidence that the patents-in-suit are invalid and unenforceable, and Edge's arguments in opposition are unavailing. *First*, Edge fails to rebut the substantial showing of invalidity and unenforceability that makes bifurcation efficient and economical. Edge did not, and cannot, distinguish the numerous invalidating prior art references, and contradicts its own infringement contentions in an effort to do so. Edge also fails to rebut the multiple incidences of inequitable conduct before the Patent Office, including Edge's failure to disclose a prior art system that was developed in Edge's own building and was used on the same exchange where a purported inventor and Edge's owner worked. *Second*, the potential overlap and delay that Edge predicts is speculative and unlikely, and any such issues are significantly outweighed by the benefits of bifurcation here. *Third*, Edge presents no evidence that it will suffer any unfair prejudice by bifurcation. Bifurcation will promote a just, speedy, and economical resolution of this litigation, and Lehman respectfully requests that its motion be granted.

II.  **EDGE'S OPPOSITION CONFIRMS THAT THE COMPLAINT IS DEFICIENT AND SHOULD BE DISMISSED**

Edge's arguments in opposition confirm that the Complaint does not give fair notice of the alleged infringement, if any. Instead, Edge effectively admits that it filed the Complaint seeking to obtain discovery into Lehman's operations with the hope of finding a basis for a claim. Rule 8 requires much more, and Edge's Complaint should accordingly be dismissed.

1

### A. Edge Admits That It Has Not Identified, And Cannot Identify, Any Allegedly Infringing Product Or System, Confirming That Dismissal Is Appropriate.

Edge admits that it has not identified any specific Lehman product or system that is accused of infringement, contending instead that the "proprietary" and "confidential" nature of Lehman's systems precludes identification of an accused system by name. D.E. 28, Opposition ("Opp.") at 4. Regardless, however, of whether an accused product or system has a commercial or trade *name* by which it can be identified, proper notice under Federal Rule of Civil Procedure 8(a)(2) requires sufficient identification of the accused instrumentality to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007). Edge has failed to meet this fundamental pleading requirement.

Rather than identify the specific systems that are accused of infringement, Edge broadly alleges infringement based on Lehman's purported "use of technology to perform automated/algorithmic trading of derivatives and/or underlying securities in this judicial district and elsewhere in the United States . . . ." D.E. 1, Complaint ("Compl.") at ¶ 17. Such an allegation does not provide Lehman with fair notice of infringement because it includes trading systems that Edge concedes in its opposition are not within the patents' scope.[1]

*First*, in its opposition, Edge asserts that the patents in suit cover "*fully automated*" trading systems. Opp. at 1 (emphasis added). Edge's Complaint and corresponding allegations, however, do not make any such distinction and broadly accuse "the use of technology to perform automated/algorithmic trading . . . ," *regardless* of whether such trading is *fully* (or *partially*) automated. Indeed, Edge attempts to distinguish a prior art system by arguing that the system is purportedly only *partially* automated, since "[h]uman traders decide what to trade, and at what price to trade" before the system automatically executes the trade. Opp. at 9; *see also* D.E. 21-2, Exh. 18 at 3 ("This market order is *automatically transmitted to the exchange system* . . . ."). If Edge alleges that the patents cover only those systems that are "*fully* automated," the Complaint

---

[1] Edge is, in essence, attempting to "amend" its insufficient allegations in its Complaint with arguments in its opposition. Edge cannot rely on contradictory statements in its opposition to amend its Complaint, while simultaneously arguing that the Complaint is sufficient and need not be amended.

2

cannot accuse the use of systems that are *less than fully automated* of infringement. Without such a distinction, and more specificity on the particular systems that are accused, the Complaint and Edge's overbroad accusations do not provide fair notice of the alleged infringement and thereby violate Rule 8. *See, e.g.*, *Hewlett-Packard Co. v. Intergraph Corp.*, No. C 03-2517 MJJ, 2003 WL 23884794, at *1 (N.D. Cal. Sept. 6, 2003) (dismissing overly broad accusation against "software and hardware products") (D.E. 21-2, Exh. 34).

*Similarly*, the Complaint and Edge's allegations also encompass the trading of "derivatives," "underlying securities," or *both*. Compl. at ¶ 17 ("trading of derivatives *and/or* underlying securities" (emphasis added)). Edge's opposition again confirms that this allegation is overbroad and apparently encompasses systems that Edge itself contends are not covered by its patents. Edge argues that the patents in suit do *not* cover the trading of *underlying securities*, such as equities, attempting to distinguish another prior art system on this very basis. *See* Opp. at 9 (distinguishing the Hull Group because it "used an automated equity [stocks] trading system" and had no evidence indicating it had "*derivatives* trading capability" (emphasis in original)). Of course, if Edge contends that its patents do not cover systems for trading underlying securities, the Complaint cannot accuse such systems. Conversely, for those systems that Edge *does* contend are covered, more specificity is required to provide fair notice of the alleged infringement. The Complaint and Edge's allegations simply do not provide adequate notice under Rule 8, and dismissal is therefore appropriate. *See, e.g.*, *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960 n.19 (S.D. Cal. 1996) (dismissing accusation against "products and/or kits"); *Ondeo Nalco Co. v. EKA Chems., Inc.*, No. Civ.A.01-537-SLR, 2002 WL 1458853, at *1 n.2-3 (D. Del. June 10, 2002) (dismissing vague accusation against "selling products") (D.E. 21-2, Exh. 33).

The cases on which Edge relies further confirm that Edge's allegations are insufficient and prove Lehman's point. In each case, the plaintiff included sufficient specificity to put the defendant on notice of the infringement, unlike here. *See, e.g.*, *Interdigital Tech. Corp. v. OKI Am., Inc.*, 845 F. Supp. 276, 283 (E.D. Pa. 1994) (accusing products that practiced a specific industry standard); *Asip v. Nielsen Media Research, Inc.*, No. 03 Civ. 5866, 2004 WL 315269, at *3 (S.D.N.Y. Feb. 18, 2004) (defendant Nielson conceded the infringement allegation complied

with Rule 8, but sought a more definitive statement under Rule 12(e) to name specific products) (D.E. 29, Tab 1). Several other cases on which Edge relies involved straightforward technology and conventional products that have household names. These cases provide little guidance here, where no specific product has been accused and the term "automated/algorithmic trading" is nebulous and appears to implicate a wide variety of products, systems and processes. *See, e.g.*, *Home & Nature Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004) (accusing specific types of jewelry); *Jackson v. Illinois Bell Tel. Co.*, No. 01 C 8001, 2002 WL 1466796, at *2 (N.D. Ill. July 8, 2002) (accusing "answering machines" and "voice mail systems," which implicate discrete, well-known commercial products) (D.E. 29, Tab 6). Here, Edge's allegations against any automated (***fully or partially***) trading of derivatives ***and/or their underlying securities*** is so broad and out of line with Edge's own interpretation of the patents that it fails to provide sufficient notice of what Lehman activity, if any, is alleged to infringe.

*Finally*, Edge does not contest that it alleges no facts to support its claims of contributory infringement and inducement infringement. *See* Compl. at ¶¶ 21, 24, 27 and 30. Accordingly, these claims should be dismissed for the reasons set forth in Lehman's opening brief. *See* Opening Br., D.E. 21 at 9.

### B. Edge Admits That Discovery Is Required To State A Claim, Confirming That There Is No Basis For Its Claims And That Dismissal Is Appropriate.

Edge effectively admits that it does not have an adequate basis for its allegations, requesting that the Court "allow Edge to engage in limited discovery of Lehman to obtain the necessary information, rather than dismiss Edge's patent infringement claims." Opp. at 5. The Seventh Circuit, however, has recognized that "a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp v. Vill. of Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008). Edge has failed to provide any such detail to show that it has a case, let alone a substantial one, whether in its Complaint or its opposition.

Edge nevertheless attempts to justify this failure by again contending that Lehman's systems are "proprietary" and "confidential," pointing out that Edge "cannot walk into a store, for example, and purchase an infringing system." Opp. at 4. Federal Rule of Civil Procedure 11, however, requires that Edge have done whatever is reasonable to establish a basis to believe that

4

Lehman's operations infringe at least one claim of each patent.[2] *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Edge's findings, if any, were required to be reflected in its allegations. *See Gen-Probe*, 965 F. Supp. at 962 ("Rule 11's requirement of certification of well-foundedness of the factual contentions of the complaint would be meaningless unless Rule 8(a)(2) required some minimum allegations of fact to support the claim.").

Edge has presented no such evidence or findings from any investigation of publicly available sources that provide information about Lehman's systems, such as Lehman's website, marketing materials, and SEC filings.[3] Edge likewise did not contact Lehman before filing suit, whether to discuss its claims or to otherwise seek to confirm a basis for its allegations. Instead, Edge appears to have adopted a file-first, find-a-basis-later approach, which is improper and should not be condoned here. To rule otherwise would permit a purported competitor to conduct a fishing expedition into the confidential business practices of Lehman in the hopes of establishing a claim—which is improper and unwarranted. *Limestone*, 520 F.3d at 802-03. Dismissal is, therefore, appropriate.

Indeed, Edge cites no case where a court has allowed such discovery. The lone case Edge does cite, *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007), is inapposite. *McZeal* involved a *pro se* plaintiff whose 94-page complaint was found sufficient (without discovery) under the less-demanding pleading standard for *pro se* litigants. *Id.* at 1356 ("Where, as here, a party appeared *pro se* before the trial court, the reviewing court may grant the *pro se*

---

[2] Rule 11 requires Edge to have identified, at a minimum, at least one claim from each patent that it contends Lehman infringes prior to filing suit. Edge apparently has not even satisfied the minimum requirements of Rule 11.

[3] Ironically, Edge's opposition criticizes Lehman's motion seeking bifurcation for failing to show that **each and every** claim is invalid. *See* Opp. at 9. Of course, Lehman set forth sufficient evidence on a set of representative claims to demonstrate that Lehman will succeed on its invalidity and unenforceability defenses and that bifurcation is appropriate. In response, Edge raised this criticism but failed to identify a ***single*** claim that it contends Lehman has infringed. Edge also failed to show how any such claim would apply to any Lehman activity, if at all. The absence of such information strongly suggests that Edge likely has not conducted the required analysis, and has no proof to support its sweeping infringement claims, notwithstanding the requirements of Rule 11.

5

litigant leeway on procedural matters, such as pleading requirements."). Of course, this standard does not apply here, and dismissal is appropriate.

### III. BIFURCATION IS APPROPRIATE, EFFICIENT, AND ECONOMICAL, AND EDGE'S ARGUMENTS IN OPPOSITION ARE MISPLACED.

Edge does not dispute that the Court has discretion under Federal Rule of Civil Procedure 42(b) to bifurcate invalidity and unenforceability from infringement and damages, only whether bifurcation is appropriate here. Edge's arguments in opposition are unavailing. *First*, Edge fails to rebut the substantial showing of invalidity and unenforceability that makes bifurcation efficient and economical. *Second*, the potential overlap and delay that Edge predicts is highly speculative and unlikely, and is outweighed by the substantial benefits of bifurcation. *Third*, Edge fails to establish that it will suffer any unfair prejudice by bifurcation.

#### A. Edge Does Not Provide Any Meaningful Response To The Clear And Convincing Evidence Of Invalidity And Unenforceability.

Unlike the cases on which Edge relies, this case presents a substantial likelihood of success that warrants bifurcating invalidity and unenforceability from infringement and damages. *See, e.g.*, *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 840 (N.D. Ill. 2006) (court denied request for separate trials for infringement and willfulness in part because defendants "have not demonstrated that . . . success is likely" in the proposed first trial); *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000) (finding that no extenuating circumstances warranted separate trials for infringement and willfulness and damages). Edge's arguments fall far short of rebutting the substantial case Lehman has demonstrated. Accordingly, bifurcating and trying invalidity and unenforceability before infringement and damages will promote judicial efficiency and economy.

##### 1. Edge Has Failed To Rebut The Substantial Showing of Invalidity.

Edge fails to provide any meaningful response to the numerous representative claim charts providing element by element analysis of invalidating prior art. Specifically:

- **STRIP**: Edge does *not* offer any response to the fact that this reference discloses all the elements of the representative claims shown in the charts. Edge essentially concedes that the representative independent claims read on this system, arguing instead that the reference merely does not address the *dependent* claims regarding speed. (Such claims may not even be asserted.) General technological advances, however, would likely

6

permit the STRIP system to achieve such speed, and this reference applies equally to the remaining claims.

- **Nimble/Alotta**: Edge argues that this system is distinguishable because it is a support system for open outcry trading. Edge, however, cites *no* support from *the reference* that indicates it is intended for that purpose. In fact, the reference's title states it is "an automated equity options market making system," and it does not include such a distinction. *See* D.E. 21-2, Exh. 12 at 387.

- **Swiss SWX**: Edge erroneously states that the Swiss SWX system is not automated, apparently attempting to draw a distinction between *fully* automated systems and those that include *human interaction*. While the Complaint makes no such distinction and accuses the use of *any* automated system, the human interaction in the SWX system merely involves pre-populating the look-up table prior to automated operation, which is also done in the '629 patent. *See, e.g.*, D.E. 21-2, Exh. 1, '629 patent at Col. 11:39-52.

- **Pang**: Edge does not dispute the materiality of the Pang patent, just that it was disclosed to the Patent Office. While the Pang patent was of record, it was disclosed late in the prosecution and was *never applied* by the Examiner despite its undeniable relevance.

- **Hull Group**: Edge attempts to distinguish this prior art reference based on the fact it relates to automated trading of equities, not "automated *derivatives* trading." Opp. at 9 (emphasis in original). Earlier in its opposition, however, Edge contends that its patents cover the trading of "underlying securities," which includes equities. *See* p. 3 *supra*; Opp. at 1 ("the technology covered by Edge's patents teach and enable fully automated trading systems and methods that . . . safely execute trade orders of . . . underlying securities . . . ."). Similarly, Edge's Complaint accuses such systems of infringing. *See* Compl. at ¶ 17 ("trading of derivatives *and/or underlying securities*" (emphasis added)).

Edge's other arguments are likewise unavailing. *First*, Edge's reliance on the presumption of validity is misplaced, as the Supreme Court has recognized that the presumption "seems much diminished" when the prior art was not of record before the Patent Office—as is the case with virtually *all the prior art here*.[4] *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1745 (2007). *Second*, Edge's complaint that Lehman does not provide claim charts for every claim of both patents is similarly unavailing, as Lehman was making a substantial showing of

---

[4] Edge states that its "patents underwent rigorous examination" before the Patent and Trademark Office, with the '833 patent examined for "over six years" and the '629 patent examined for "nearly eight years." Opp. at 1. However, little examination and prosecution occurred during this time, and much of the delay in issuance was a result of the applicants' *own failure* to move its applications along. These tactics not only delayed the patents' issuance, they resulted in the abandonment of Edge's rights, as Lehman will raise at a time that is appropriate under the Court's schedule. Nevertheless, virtually all of the prior art presented in Lehman's motion was *never* considered or applied by the Patent Office.

7

invalidity, not moving for summary judgment.[5] The representative claim charts illustrate the materiality and relevance of the numerous undisclosed and unapplied invalidating prior art references. These same references apply equally to each and every claim, and Lehman has included only a representative set of claims in order to avoid burdening the Court with hundreds of pages of claim charts at this preliminary stage.[6] The evidence of invalidity is clear and convincing, and Edge has not provided any meaningful response.

### 2. Edge Has Failed To Rebut The Substantial Showing of Unenforceability.

Edge's arguments do not diminish the substantial unenforceability case Lehman has set forth. *First*, Edge provides no adequate explanation as to why the applicants did not disclose the Nimble system, which was developed in the same building as Edge and was used on the same exchange where Mr. O'Donnell (a purported inventor) and Mr. Griffith (Edge's owner) worked during the relevant time period.[7] Withholding disclosure of the Nimble system is further suspect given that the applicants acknowledged in the patent specification that "[a]ttempts have been made to implement trading systems that automate decision-making," yet ***no prior uses were disclosed*** during prosecution. D.E. 21-2, Exh. 1, '629 Patent at Col 1:49-51. Edge's defense that "[t]rading practices and strategies are considered highly proprietary trade secrets in the industry and are generally not disclosed publicly" (Opp. at 12) does not excuse its failure. The Nimble System, as the Alotta reference describes, was openly used in the SBX pit of the CBOE and well-known by the traders. D.E. 21-2, Exh. 12 at 392-95. Since the details of the Nimble system

---

[5] This argument is particularly disingenuous given that Edge has failed to identify a ***single*** claim that it contends Lehman purportedly infringes, let alone provide any explanation as to how such a claim would apply to any Lehman system, if at all.

[6] Edge also asserts that the '629 patent was subject to review under the Supreme Court's landmark *KSR* decision, which lowered the bar to show obviousness. This is not the case. While *KSR* was decided on April 30, 2007, before issuance of the '629 patent, prosecution on the merits was closed on January 10, 2007, when the notice of allowance issued. Randall Reply Decl., Exh. 1. In addition, the PTO Guidelines directing examiners how to apply *KSR* did not issue until October 10, 2007, well after the '629 patent issued. D.E. 21-2, Exh. 5.

[7] Edge erroneously suggests that Mr. Griffith was not involved in the prosecution of the patent applications. Mr. Griffith, however, was assigned the '629 patent from International Specialists and subsequently assigned the patent to Edge Capture on April 30, 2003, during prosecution of the patents-in-suit. *See* Randall Reply Decl., Exhs. 2 and 3. To say Mr. Griffith was not involved and aware of the prosecution of the patents is disingenuous.

were disclosed publicly in the Alotta reference prior to the filing of the patents-in-suit, there is no excuse for the applicants' failure to disclose the art. D.E. 21-2, Exh. 12-13.

*Second*, Edge's failure to submit the Joubert article during prosecution is also inexcusable. The Examiner stated he was considering the Joubert article but that he did not have a copy. In response, the applicants stated they would include the Joubert article "in an Information Disclosure Statement filed herewith." D.E. 21-2, Exh. 21 at 10-11.[8] The applicants filed an Information Disclosure Statement ("IDS"), but withheld the Joubert article. At no point did the applicants make the Joubert article of reference in either application despite its undeniable materiality. Contrary to Edge's assertion, *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1383 (Fed. Cir. 2001) is indeed applicable and specifically relates to an applicant's duty to investigate when "counsel is on notice of the likelihood that specific, relevant, material information exists and should be disclosed." Here, the communication with the Examiner provided Edge with sufficient information to trigger the duty to investigate the material Joubert reference. Edge erroneously claims that a "different discussion" took place, and goes on to quote *its own comments* in response to the Examiner—*not* those of the Examiner. Opp. at 11. Edge misses the point; it is undisputed that the Examiner was intrigued by the Joubert article and wanted a copy, *see* D.E. 21-2, Exh. 21, and the applicants not only failed to investigate, they falsely represented that they submitted the article with an IDS.

*Third*, Edge's argument that the prior art references disclosed in the '833 application, but withheld in the '629 application, were cumulative is unsupported. Several of these references taught the use of look-up tables, which the notice of allowance stated was the point of novelty for multiple '629 claims. D.E. 21-2, Exh. 4 at 3. While Edge disclosed one reference that taught look-up tables in the context of currency conversions, the undisclosed references teach look-up tables in other material contexts. For example, the Kosaka patent teaches the use of look-up tables in the context of a receiving market information for securities and dealing conditions set by customers, like the '629 patent. *See* D.E. 21-2, Exh. 25, Kosaka, 5,267,148, Col. 7:55-69.

---

[8] The interview regarding the Joubert reference that is summarized by the applicants took place for both the '629 and the '833 patents simultaneously. The Joubert reference is noted in *both* applications by the Examiner. Accordingly, Edge's statement that the above quoted language is from the '833 file wrapper, and not the '629 file wrapper, is a distinction without any effect.

9

Such a reference is highly material, not cumulative to any other reference, and should have been disclosed.

*Fourth*, the addition of Thomas M. O'Donnell as an inventor at the eleventh hour indicates a suspect motive, not "candor before the U.S.P.T.O." as Edge suggests. Opp. at 10. Mr. O'Donnell was involved in the prosecution of the patents from day one but waited six years to decide he was an inventor, contrary to the sworn declarations of the other three inventors. *See* D.E. 21-2, Exh. 31. The addition of an inventor may be appropriate in limited instances (*e.g.*, where pending claims are substantially amended during prosecution to include subject matter that was allegedly invented by someone other than the originally-named inventors); however, no such circumstances exist here. While discovery will shed light on Mr. O'Donnell's belated addition, these facts alone suggest that it was for a purpose other than to add a true inventor.

The evidence of inequitable conduct is clear and convincing, and warrants being heard before initiating a fishing expedition and other proceedings on infringement and damages.

>   **B.  In Light Of Bifurcation's Benefits, Edge's Arguments Against Efficiency And Economy Are Unpersuasive And Highly Speculative.**

Edge argues that overlap between litigation phases, including claim construction and discovery issues, and decreased incentives for early resolution of the case, make bifurcation inefficient and uneconomical. These arguments are unpersuasive and highly speculative, and do not diminish the substantial benefits of bifurcation.

>   **1.  The Overlap Between Phases Is Minimal And Does Not Outweigh The Benefits Of Bifurcation, Contrary To Edge's Arguments.**

Edge's primary argument against bifurcation is that claim construction issues permeate different phases of the case and might need to be revisited with each phase. Also, Edge cites two Federal Circuit cases for the proposition that claim construction cannot happen without consideration of the accused systems and methods. Both of these arguments are misplaced.

Claim construction should not have to be revisited numerous times because claims must be given the same meaning and scope for both invalidity and infringement phases. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). While a court can revisit a claim construction ruling, generally decisions of a court will become law of the case and the parties will be bound to it throughout the litigation. *See Minch v. City of*

*Chicago*, 486 F.3d 294 (7th Cir. 2007); *Gen. Patent Corp. v. Hayes Microcomputer*, No. SA CV 97-429 GLT ANX, 1997 WL 1051899, at *1 (C.D. Cal. Oct. 20, 1997) (D.E. 21-2, Exh. 35). This is particularly true where the Federal Circuit has affirmed or altered a claim construction. *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 90 Fed. Appx. 540, 541 (Fed. Cir. 2004). With the possibility of revisiting claim construction unlikely, Edge's fears that multiple claim construction proceedings will prove costly and inefficient are unsupported and speculative.

Edge also erroneously argues that a full analysis of Lehman's accused instrumentality (assuming Edge is able to identify one) is required for claim construction. "A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (*en banc*) (emphasis in original). The recent Federal Circuit cases that Edge relies upon do not overrule the *en banc* pronouncement in *SRI* of the proper claim construction analysis. In those cases, the Federal Circuit was asked to determine whether stipulations regarding infringement were valid in light of claim construction challenges. Since the parties only submitted their arguments for their claim construction and not the basis for the stipulations, the Federal Circuit was viewing claim construction in a vacuum without the benefit of the accused products. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006) ("[I]n reviewing claim construction in the context of infringement . . . ."). The Federal Circuit's reasoning was guided by the concern of issuing "an advisory opinion on the scope of the . . . patent." *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006).

Such cases are distinguishable. Here, the Court will not review claim construction in a vacuum, but rather with a host of prior art systems that read on and provide context to the patents, as contemplated by *SRI*. *See also NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) (finding error where district court relied on accused device to construe term). Accordingly, there is no risk that this Court will issue a hypothetical claim construction, as Edge erroneously predicts. Given the number of cases that have bifurcated the issues of invalidity and unenforceability and stayed infringement proceedings, it is undoubtedly within the discretion of the Court to follow such a course here.

11

### 2. Bifurcation Would Streamline And Simplify Discovery, Contrary To Edge's Contentions.

Edge erroneously contends that discovery will not be streamlined by bifurcation because Edge would still be entitled to discovery into Lehman's operations through prior art and objective indicia of non-obviousness. Should Lehman rely on its own prior art, discovery will be discrete and will not implicate Lehman's current operations.

It is also unlikely that Lehman will possess any information regarding the objective indicia of non-obviousness that Edge relies upon. The patents offer nothing new and simply apply routine advances in technology to automate what traders have been doing for decades. As the patents concede, others had already automated these processes well before Edge filed its applications. *See, e.g.*, D.E. 21-2, Exh. 1, '629 Patent at Col. 1:49-51. With such systems already developed, there is no evidence of long-felt need or failure of others. Nor is there any evidence of copying since the patents did not issue until recently (after considerable delay in prosecution), and Lehman was not made aware of them until after the filing of this suit. Likewise, any commercial success would not be attributable to the patents.

Edge's argument that third party discovery into prior art systems will not be convenient and efficient because it will "invade trade secrets and proprietary information" is also misplaced. For systems to be considered prior art they generally must be publicly known, not the subject of trade secret. *See Ormco Corp. v. Align Tech. Inc.*, 463 F.3d 1299, 1305 (Fed. Cir. 2006) ("Art that is not accessible to the public is generally not recognized as prior art."). Accordingly, Lehman will not "take the parties on a fishing expedition by seeking discovery from any person who might have traded in the market"—a curious accusation given Edge's inadequate infringement allegations—but will limit discovery to parties with information on prior art systems.[9] Opp. at 13. Lehman does not foresee third party discovery being contentious, as Edge

---

[9] Edge's remark that Lehman is threatening to obstruct discovery is inappropriate. The fundamental pleading requirements have not been met here, and Lehman does not have fair notice as to what systems, if any, are at issue in this case. Edge admits as much, and requests the Court's approval to conduct a fishing expedition of "Lehman to obtain the necessary information" to find a basis for its claims. Opp. at 5. The case law is clear. Such fishing expeditions are improper and should not be permitted. *See Limestone*, 520 F.3d at 802-03.

speculates, because it is for the benefit of the securities industry to reclaim that which was in the public domain before the patent applications were filed.

### 3. Edge's Arguments Regarding Bifurcation Discouraging Early Resolution Of The Case Are Speculative And Illogical.

Edge's conjecture regarding Lehman's motivation to seek bifurcation is unavailing. Lehman seeks bifurcation to prevent a purported competitor from abusing the discovery process on unsubstantiated claims of infringement in an effort to assert patents that are invalid and unenforceable. Since bifurcation will resolve these issues promptly and efficiently, judicial economy is served by trying invalidity and unenforceability first. The fact that Edge may lose settlement leverage without the threat of broad discovery into Lehman's proprietary business operations is inconsequential and not a legitimate concern. Otherwise, bifurcation would never be appropriate because someone always loses leverage when a court rules.

### C. Edge Has Failed To Demonstrate Any Unfair Prejudice.

The speculative prejudice that Edge relies on, such as the overlap between phases adding additional expense, presumes that Edge will prevail on invalidity and unenforceability. The underlying premise of bifurcation, however, is that Lehman has made a substantial showing that the patents will be rendered invalid and unenforceable, and courts have rejected speculative arguments like the ones Edge raises here. *See, e.g.*, *Gen. Patent*, 1997 WL 1051899, at *2; *Ludlow Corp. v. Textile Rubber & Chem. Co.*, 77 F.R.D. 752, 753 (N.D. Ga. 1978).

Even assuming, *arguendo*, that Edge prevails on invalidity and unenforceability issues, Edge fails to demonstrate that it will be unfairly prejudiced.[10] *First*, any delay would be minimal because resolution of invalidity (an issue of law) and unenforceability (an equitable matter decided by the Court) are ripe for quick resolution compared to the fact-intensive issues of infringement and damages.

---

[10] The standard is not that "no party will be prejudiced by the bifurcation," as Edge alleges. Opp. at 6. Rather, as the case Edge relies upon states, the appropriate standard is that bifurcation "not ***unfairly*** prejudice the non-moving party" and that "the balance of potential prejudice weighs in favor of bifurcation." *Trading Techs.*, 431 F. Supp. 2d at 836-37 (emphasis added). While Edge fails to demonstrate any prejudice, any potential prejudice is outweighed by the prejudice Lehman will suffer if it must permit a purported competitor access to its business operations on unsubstantiated claims of infringement of invalid and unenforceable patents.

13

*Second*, Edge overstates the potential overlap between the invalidity and infringement phases. *See Gen. Patent*, 1997 WL 1051899, at *1 (dismissing similar argument and bifurcating invalidity and unenforceability claims). The prior art witnesses and exhibits will focus on systems that existed prior to the filing of the applications in 1999 and 2000, whereas the infringement phase of the case will center strictly on Lehman's operations after the patents issued in 2007. Any overlap in witnesses should be minimal (and likely limited to experts) and their testimony will be on two distinct issues. With minimal overlap, there should be no appreciable added expense in conducting two separate phases.[11]

*Third*, Edge will not be prejudiced by the minimal risk that evidence might spoil if bifurcation is granted. Edge allowed its patents to linger in the Patent Office for six to eight years without effort to prosecute in a timely fashion. In fact, Edge may have allowed the '629 patent to become abandoned by its delay in responding to an office action. To now argue that it will be prejudiced by a minor delay is disingenuous.

*Finally*, the possibility that separate juries will decide invalidity and infringement will cause no prejudice to Edge because they are distinct issues. In fact, it is advantageous to split complex issues of obviousness from infringement and damages to reduce jury confusion. *See C.R. Bard, Inc. v. M3 Sys., Inc.*, No. 93 C 4788, 1994 WL 362186, at *3 (N.D. Ill. July 11, 1994) (D.E. 21-2, Exh. 36). Courts, like this one, routinely manage their dockets and cases in this way, and bifurcation would allow the Court and the parties to reach an efficient and economical resolution to this case.

---

[11] Edge distorts the cases on which it relies, erroneously claiming that invalidity and infringement are "intertwined legal issues." Opp. at 14. In *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540-41 (Fed. Cir. 1983), the court merely stated that if both invalidity and infringement are **fully tried**, infringement should be determined even if the patents are found invalid in case invalidity is reversed on appeal. In *Clipco Ltd. v. Ignite Design, LLC*, No. 04 C 5043, 2005 WL 2861032, at *3 (N.D. Ill. Oct. 28, 2005) (D.E. 29, Tab 2), the bifurcation motion was directed to issues regarding two of defendants' accused products because one had already been found to infringe. The court did not rely on any overlap between invalidity and infringement in its determination; rather, it found that a four-day trial did not warrant bifurcation because the witnesses regarding the accused product would be relevant to the issues regarding the infringing product. *Id.* These cases do not support Edge's position—they undermine it.

## IV.  CONCLUSION

For the foregoing reasons, Lehman's motion to dismiss should be granted and the Complaint should be dismissed.  Alternatively, the Court should grant Lehman's motion to bifurcate invalidity and unenforceability from infringement and damages, with infringement and damages discovery stayed pending resolution of the issues of invalidity and unenforceability.

                      Respectfully submitted,

Dated:  July 15, 2008         By:     /s/ Albert L. Hogan
                                           Jeffrey G. Randall (admitted *pro hac vice*)
                                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                           525 University Avenue, Suite 1100
                                           Palo Alto, CA  94301
                                           (650) 470-4500

                                           Allan M. Soobert  (admitted *pro hac vice*)
                                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                           1440 New York Avenue, NW
                                           Washington, DC  20005
                                           (202) 371-7000

                                           Albert L. Hogan III
                                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                           333 West Wacker Drive
                                           Chicago, IL 60606
                                           (312) 407-0700

                                           *Attorneys for Defendants Lehman Brothers*
                                           *Holdings Inc. and Lehman Brothers Inc.*

**CERTIFICATE OF SERVICE**

I, Jeffrey G. Randall, hereby certify that on July 15, 2008, caused a true copy of the foregoing DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, TO BIFURCATE PATENT INVALIDITY AND UNENFORCEABILITY FROM INFRINGEMENT AND DAMAGES to be served via CM/ECF to the following attorneys of record:

| | |
|---|---|
| Ronald J. Schutz<br>Munir R. Meghjee<br>Sang Young A. Brodie<br>Gleena L. Gilbert<br>ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.<br>800 LaSalle Avenue, Suite 2800<br>Minneapolis, MN  55402<br>Phone: (612) 349-8500<br><br>*Attorneys* for *Plaintiffs Edge Capture L.L.C.*<br>*and Edge Specialists, L.L.C.* | Patrick G. Burns<br>Christopher J. McGeehan<br>GREER, BURNS & CRAIN, LTD.<br>300 South Wacker Drive, Suite 2500<br>Chicago, IL  60606<br>Phone: (312) 360-0080<br><br>*Attorneys* for *Plaintiffs Edge Capture*<br>*L.L.C.  and Edge Specialists, L.L.C.* |

Respectfully submitted,

Dated:  July 15, 2008

By:    /s/ Albert L. Hogan
Jeffrey G. Randall (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
(650) 470-4500

Allan M. Soobert  (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005
(202) 371-7000

Albert L. Hogan III
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive
Chicago, IL 60606
(312) 407-0700

*Attorneys for Defendants Lehman Brothers Holdings Inc. and Lehman Brothers Inc.*